## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN DOE,
c/o Engel & Martin, LLC
4660 Duke Drive, Ste 101
Mason, OH  45040

Plaintiff,

v.

MIAMI UNIVERSITY,
501 E. High St.
Oxford, OH 45056

SUSAN VAUGHN
9 Warfield Hall
451 E. Spring St.
Oxford, OH  45056-3629

STEVEN ELLIOTT
Farmer School of Business 2060
800 East High Street
Oxford, OH 45056

JAYNE BROWNELL
110 Warfield Hall
451 E. Spring St.
Oxford, OH 45056

MIKE CURME
110 Warfield Hall
451 E. Spring St.
Oxford, OH 45056

Defendants

Case No.      **1:17-cv-482**

Judge

COMPLAINT

AND

JURY DEMAND

## INTRODUCTION

1.  Plaintiff John Doe brings this action for a declaratory judgment, injunctive relief, violation of 42

    U.S.C. §1983, violation of Title IX, and other related claims.

2. This case arises out of the decision of the Miami University ("Miami") to impose disciplinary sanctions against John Doe in violation of constitutional and statutory rights.

**PARTIES**

3. Plaintiff John Doe ("Doe") is an undergraduate student at Miami.

    a. John Doe is an Ohio resident with a residence at [OMITTED]. Doe has completed four semesters of graduate coursework at Miami.  He is scheduled to graduate from his program with a Bachelor's Degree in 2019.

    b. The disclosure of John Doe's identity will cause the student irreparable harm as this case involves matters of the utmost personal intimacy, including education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34  CFR Part 99.

4. Defendant Miami is a public university created by the Ohio Legislature. Miami has a principal place of business at 501 E. High St., Oxford, OH 45056.

    a. Based on Fall 2016 enrollment, Miami has 16,981 undergraduates and 2,386 graduate students on the Oxford campus. Regional campuses in Hamilton, Middletown, and West Chester enroll 5,138 combined.

    b. The Miami Board of Trustees is the governing body of Miami.  The Board of Trustees consists of 11 members—nine voting members and two student nonvoting members. The nine voting members are appointed one each year for nine-year terms by the governor of Ohio, with advice and consent of the Senate. The two student nonvoting members are appointed for two-year staggered terms by the governor, with advice and consent of the Senate.

5. Defendant Susan Vaughn is the Director of the Office of Ethics & Student Conflict Resolution. She has a principal place of business at 9 Warfield Hall, Oxford, OH  45056-3629.

    a. Vaughn is sued in her official capacity for declaratory and injunctive relief.

    b. Vaughn is sued in her individual capacity for damages.

    c. On information and belief,, Vaughn has been acting under the policies, procedures, and practices of Miami and, in particular, those policies designed to implement Title IX.

    d. Vaughn is responsible for administering and operating the Miami Code of Student Conduct.

6. Defendant Dr. Steven Elliott is Associate Professor & Director of Undergraduate Studies. He has a principal place of business at Farmer School of Business 2060, Miami University, Oxford, OH 45056

    a. Elliott is sued in his official capacity for declaratory and injunctive relief.

    b. Elliott is sued in his individual capacity for damages.

    c. On information and belief, Elliott has been acting under the policies, procedures, and practices of Miami and, in particular, those policies designed to implement Title IX.

    d. Elliott is responsible for administering and operating the Miami Code of Student Conduct.

7. Defendant Dr. Jayne Brownell is the Miami Vice President for Student Affairs. She has a principal place of business at 110 Warfield Hall, 451 E. Spring St., Oxford, OH 45056

    a. Brownell is sued in her official capacity for declaratory and injunctive relief.

    b. On information and belief, Brownell has been acting under the policies, procedures, and practices of Miami and, in particular, those policies designed to implement Title IX.

    c. Brownell is responsible for administering and operating the Miami Code of Student Conduct.

8. Defendant Dr. Mike Curme is the Associate VP & Dean of Students. He has a principal place of business at 110 Warfield Hall, 451 E. Spring St., Oxford, OH 45056

    a. Curme is sued in his official capacity for declaratory and injunctive relief.

3

    b.   On information and belief, Curme has been acting under the policies, procedures, and practices of Miami and, in particular, those policies designed to implement Title IX.

    c.   Curme is responsible for administering and operating the Miami Code of Student Conduct.

9.   Defendants Vaughn, Elliott, Curme, and Brownell are referred to as the "Individual Defendants." On information and relief, the Individual Defendants are authorized to grant all of the injunctive relief sought in the Complaint.

## JURISDICTION AND VENUE

10.  This case arises, in part, under the laws of the United States, specifically 42 U.S.C. §1983 and Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq. Accordingly, this Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

11.  The injunctive relief sought in this matter is authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

12.  This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391. The defendant is a resident of the State in which this district is located and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

### THE MIAMI RESPONSE TO THE ISSUE OF
### SEXUAL MISCONDUCT ON CAMPUSES

13.  After years of criticism for being too lax on campus sexual assault, colleges and universities are relying on Title IX to crackdown on alleged perpetrators. Unfortunately, this crackdown has gone too far. Problems include: accused students effectively are presumed guilty; instead of requiring accusers to prove they were assaulted, the accused students have to prove they had consent; and schools apply the very lowest standard of proof — preponderance of the evidence.

14. On April 11, 2011, the U.S. Education Department, Office of Civil Rights ("OCR") sent a "Dear Colleague" to colleges and universities.

   a. The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and Universities must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct.

   b. Most notably, the Dear Colleague Letter required schools to adopt a relatively low burden of proof—"more likely than not"—in cases involving sexual misconduct, including assault. Several colleges had been using "clear and convincing," and some, like Stanford, applied the criminal standard, "beyond a reasonable doubt."

   c. The Dear Colleague Letter states that schools should "minimize the burden on the complainant," transferring alleged perpetrators, if necessary, away from shared courses or housing.

   d. The Dear Colleague Letter, while not completely ignoring due process concerns, suggested that schools should focus more on victim advocacy.

   e. The Dear Colleague Letter states that schools should give both parties the right to appeal a decision, which amounts to double jeopardy for an accused student.

   f. After the Dear Colleague Letter was published, many schools changed their sexual assault and sexual harassment policies and procedures.

15. OCR has been pressuring colleges and universities to aggressively pursue investigations of sexual assaults on campuses.

   a. The Dear Colleague letter was a step in the increased enforcement of Title IX on college and universities. NPR described the Dear Colleague Letter as the government's "first warning shot." Source: *How Campus Sexual Assaults Came To Command New Attention*, NPR, August 12, 2014.

5

b. The Washington Post reported in March 2015 that the Office of Civil Rights was seeking to hire up to 200 more investigators.

c. In May 2014, the federal Department of Education disclosed for the first time the names of colleges — 55 in all — under investigation for possibly violating federal rules aimed at stopping sexual harassment.

d. The Federal government is investigating at least 129 schools for possible Title IX violations, including notable schools such as University of Cincinnati, Miami (Florida), Berkeley, Stanford, Harvard, Brown University, Columbia University, Cornell University, Dartmouth College, Johns Hopkins University, the University of Chicago and many top state universities.

e. In February 2014, Catherine E. Lhanon, the assistant secretary of education who heads the department's Office for Civil Rights, told college officials attending a conference at the University of Virginia that schools need to make "radical" change. According to the Chronicle of Higher Education, college presidents suggested afterward that there were "crisp marching orders from Washington." Source: *Colleges Are Reminded of Federal Eye on Handling of Sexual-Assault Cases*, Chronicle of Higher Education, February 11, 2014.

f. Lhanon was quoted in the LA Times stating, "We don't treat rape and sexual assault as seriously as we should, . . . [There is] a need to push the country forward." David G. Savage and Timothy M. Phelps, *How a little-known education office has forced far-reaching changes to campus sex assault investigations,* LA Times August 17, 2015.

16. Schools, including Miami, are scared of being investigated or sanctioned by OCR, as OCR has the ability to revoke all federal funding for the schools.

a. The Federal government has created a significant amount of pressure on colleges and universities to treat all those accused of sexual misconduct with a presumption of guilt.

6

The Chronicle of Higher Education noted that "Colleges face increasing pressure from survivors and the federal government to improve the campus climate." Source: *Presumed Guilty: College men accused of rape say the scales are tipped against them,* Chronicle of Higher Education, September 1, 2014.  In the same article, the Chronicle noted that different standards were applied to men and women:  "Under current interpretations of colleges' legal responsibilities, if a female student alleges sexual assault by a male student after heavy drinking, he may be suspended or expelled, even if she appeared to be a willing participant and never said no. That is because in heterosexual cases, colleges typically see the male student as the one physically able to initiate sex, and therefore responsible for gaining the woman's consent."

b.  Lhanon told a national conference at Dartmouth in the summer of 2014, "I will go to enforcement, and I am prepared to withhold federal funds." Source: *How Campus Sexual Assaults Came To Command New Attention*, NPR, August 12, 2014.  In that same article, Anne Neal of the American Council of Trustees and Alumni was quoted as follows:  "There is a certain hysteria in the air on this topic, . . . It's really a surreal situation, I think."  She explained that schools are running so scared of violating the civil rights of alleged victims that they end up violating the due process rights of defendants instead.

c.  In June 2014, Lhanon told a Senate Committee, "This Administration is committed to using all its tools to ensure that all schools comply with Title IX . . ."  She further told the Committee:

> If OCR cannot secure voluntary compliance from the recipient, OCR may initiate an administrative action to terminate and/or refuse to grant federal funds or refer the case to the DOJ to file a lawsuit against the school. To revoke federal funds—the ultimate penalty—is a powerful tool because institutions receive billions of dollars a year from the federal government for student financial aid, academic resources and many other functions of higher education. OCR has not had to impose this severe penalty on any institution

7

recently because our enforcement has consistently resulted in institutions agreeing to take the steps necessary to come into compliance and ensure that students can learn in safe, nondiscriminatory environments.

d. Robert Dana, dean of students at the University of Maine, told NPR that some rush to judgment is inevitable. "I expect that that can't help but be true," he says. "Colleges and universities are getting very jittery about it." Source: *Some Accused Of Sexual Assault On Campus Say System Works Against Them*, NPR, September 3, 2014.

e. In July 2016, Vice President Biden suggested that schools that do not comply with administration guidelines could be stripped of federal funding. Source: *Obama, Biden Won't Visit Universities That Fall Short In Addressing Sexual Assault*, Huffington Post, July 4, 2016 ("The vice president said he'd like to take away federal funding from those universities.")

17. The change in administrations is unlikely to change the pressure felt by colleges and universities.

a. As of the date of this Complaint, the Trump Administration has not withdrawn the guidance in the Dear Colleague Letter.

b. One college President was quoted in the Chronicle of Higher Ed. suggesting that the crack-down would continue regardless of actions by the Trump Administration. Diane Harrison, president of California State University, Northridge, said, "There are rumors that they're going to lessen what we have to do. So we are potentially going to need to be far more assertive and far more vocal." Chronicle of Higher Ed., *Do Not Step Away*, January 16, 2017 (Available at: https://www.insidehighered.com/news/2017/01/26/college-leaders-discuss-future-title-ix-sexual-assault-prevention-efforts). The same article noted, "College presidents . . . were in agreement that they would continue to use the preponderance of evidence standard, even if the 2011 guidance were to be reversed. The majority of colleges were already using the standard prior to the Dear Colleague letter." *Id.*

    c. A separate article in the Chronicle of Higher Ed. noted, "even though colleges are likely to face much less pressure from the federal government, that doesn't mean they'll stop following the letter or the spirit of Title IX."  Chronicle of Higher Ed., *Trump Administration May Back Away From Title IX, but Campuses Won't*, Nov. 11, 2016 (available at: http://www.chronicle.com/article/Trump-Administration-May-Back/238382).  The article continues:  "Even though the particular manner of enforcement may change, Title IX will still be law, and regulations written to carry it out will still be obligatory. . . .  It hasn't been just the federal government but campus activists and advocacy groups, as well, that have pushed colleges to pay more attention and devote more resources to stopping sexual assault."

18. In response to pressure from OCR and the White House, educational institutions, like Miami, are limiting procedural protections afforded to male students, like John Doe, in sexual misconduct cases.  This is not political speculation.  The Association of Title IX Administrators published "2014 Whitepaper" entitled *Equity is Such a Lonely Word*, includes training materials presented to college Title IX departments and states: "victims have historically been accorded 3/5 of the rights of an accused individual (or less), and **victims are typically women**, equity may require institutions to recalibrate the pendulum to right the historical imbalance." (emphasis added).

19. In recent years, and during the period preceding the disciplinary actions against John Doe, there was substantial criticism of Miami, both in the student body and in the public media, accusing Miami of not taking seriously complaints of female students alleging sexual assault by male students.

    a. In 2012, Miami received significant national attention after a disturbing flier offering tips on how to rape women was found in the men's bathroom of a coed freshman dorm. The list, "Top Ten Ways to Get Away with Rape," told readers that "practice makes perfect,"

adding, "the more your rape, the better you get at it." Students told newspapers that Miami needed to do more in response to raise awareness. *See* NY Daily News, *Flier found at Miami University in Ohio advises 'Top Ten Ways to Get Away with Rape'*, October 15, 2012.

b. In 2015, the Miami student newspaper published a rport on sexual assault adjudications. The newspaper said: "The number of on-campus sexual assaults reported yearly at Miami University nearly tripled from 2011 to 2013, but there was no corresponding increase in the number of individuals disciplined." The article continues:

> The scarcity of disciplinary action in cases of sexual assault is leading some to question the effectiveness of the university adjudication process. Researcher and advocate with the national Title IX movement Nadia Dawisha said institutions' response to the crime is inadequate, not only at Miami, but across the nation.

The Miami Student, *Sexual Assault Reports Triple, But Punishments Remain Low*, April 3, 2015 (Available at: http://miamistudent.net/sexual-assault-reports-triple-but-punishments-remain-low/)

c. In June 2016, the Dayton Daily News published a Special Report: *Campus cases rarely lead to sex assault convictions.* Available at: http://www.mydaytondailynews.com/news/campus-sex-assaults-many-incidents-reported-prison-time/p8P2hN7AGZPfQutBeILRQL/ The series featured one student who was an alleged victim of sexual assault at Miami. She criticized the school for merely suspending her assailant: "People have gotten in more trouble for academic dishonesty than for sexual assault. If you get caught cheating or copying papers, you'll get expelled from school."

20. On information and belief, there is a pattern of decision-making at Miami that tend to show anti-male gender-bias.

a. The basis for this claim is an Affidavit filed in case No. 15-cv-00605-MRB by an attorney who practices law in Oxford, Ohio, where Miami is located. The attorney states: "Since

2013, I am aware of approximately 12 male Miami students that have been subjected to disciplinary procedures for allegedly violating Miami's policies and/or procedures regarding sexual misconduct with regard to interactions with female Miami students. I am not personally aware of any situation where Miami alleged a female Miami student violated Miami's policies and/or procedures regarding sexual misconduct with regard to her interactions with a male Miami student."

b. On information and belief, in virtually all cases of campus sexual misconduct by Miami students reported between 2011 and 2014 the accused student is male and the accusing student is female. During the Fall of 2013 and the Spring of 2014 every male student who was accused by a female of violating Miami's sexual misconduct policy to be 'responsible' for that alleged violation.

21. Specific cases filed against Miami could have impacted Plaintiff's disciplinary process.

a. In 2015, another Miami student filed a case in this Court, *Doe v. Miami*, 1:15-cv-00605-MRB. This case was dismissed by the Court and is currently on appeal.

b. Miami has, subsequent to the filing of the prior lawsuit against Miami, *Doe v. Miami*, 1:15-cv-00605-MR, become the subject of multiple investigations by OCR.

    i. On November 3, 2016, OCR notified Miami that it was investigating a complaint that the school failed to promptly and equitably respond to complaints of sexual violence. OCR Docket #15-16-2200.

    ii. On information and belief, on June 9, 2017 OCR notified Miami that it was investigating one or two additional complaints that the school failed to promptly and equitably respond to complaints of sexual violence. OCR Docket TBD.

    iii. A Cincinnati Enquirer article about the OCR investigation noted that there is a "a push in Cincinnati government to address sexual assault on college campuses."

11

http://www.cincinnati.com/story/news/crime/2017/01/17/students-claim-

Miami-mishandled-reports-sexual-violence-feds-investigate/96699870/

22. On information and belief, in 2014, Miami issued a mandate that individuals evaluating sexual misconduct always "believe" the allegations of students making these assault allegations. This demonstrates that university officials are biased in favor of the alleged victims of sexual assault claims.

23. Miami provides incoming students with training during orientation.

   a. All first-time incoming students on all campuses are required to take an online training program, Haven: Understanding Sexual Assault. Students are required to complete this program by the first day of classes.

   b. Incoming students and families at orientation have seen two presentations focused on relevant student issues and concerns, including such topics as alcohol, sexual assault and interpersonal violence issues, inclusion, and respect.

   c. All Residence Life Staff, including professional staff and resident assistants, receive training not only on responding to sexual and interpersonal violence but also on what resources are available for prevention, education, risk reduction, and awareness.

   d. In 2014, the Dean of Students office updated the Community Expectations presentation, which educates parents and students regarding sexual and interpersonal violence and alcohol.

24. Miami has adopted certain policies and procedures for the investigation and adjudication of alleged sexual misconduct, as required by Title IX.

25. One set of policies and procedures are found in the "Title IX Protocol-Sexual Misconduct Policy and Procedures for Students at Miami University" ("Sexual Misconduct Policy"). (A copy of the Sexual Misconduct Policy is attached as Exhibit A.)

26. The Sexual Misconduct Policy states that "Miami University seeks to eliminate all Title IX violations."

    a. Sexual Misconduct is defined as including "sexual assault," meaning "any sexual act directed against another person, without their consent, including instances where the person is incapable of giving consent."

    b. Consent is defined as "a knowing and voluntary verbal or non-verbal agreement between both parties to participate in each and every sexual act."

        i. The Sexual Misconduct Policy provides that effective consent can be given by words or actions so long as the words or actions create a mutual understanding between both parties regarding the conditions of the sexual activity.

        ii. The Sexual Misconduct Policy provides that a person "cannot legally give consent" when the "person is severely intoxicated due to alcohol or drugs, incapacitated, or unconscious."

27. The Sexual Misconduct Policy provides "limited amnesty" Limited Amnesty to students who claim to have been victims/survivors of sexual misconduct. Under this provision of the Sexual Misconduct Policy, Miami "will generally not seek to hold the student responsible for a violation of the law (e.g., underage drinking) or Code of Student Conduct during the period immediately surrounding the sexual misconduct or interpersonal violence."

28. The Sexual Misconduct Policy "encourages students who have been the victim/survivor of sexual misconduct or interpersonal violence to pursue criminal charges against the person or persons they believe to have committed the crime." However, a criminal charge and a University investigation may be pursued at the same time.

13

a. Upon receipt of a report, a Deputy Title IX Coordinator will provide written notification to alleged victims about available assistance, including counseling, victim advocacy, legal assistance, and financial aid.

b. An alleged victim may obtain interim accommodations, such as changing academic, residential, working, and transportation circumstances from the Deputy Title IX Coordinator. The Sexual Misconduct Policy provides that Miami "will make such accommodations or provide such protective measures if the victim/survivor requests them and if they are reasonably available." The accommodations may also include financial assistance.

29. The Sexual Misconduct Policy provides that allegations of sexual misconduct involving accused students will be investigated by the Office of Ethics and Student Conflict Resolution (OESCR).

a. The investigation is "designed to provide a prompt, fair and impartial investigation of the report" and should be "conducted by persons who receive annual training on issues related to Title IX violations and on conducting an investigation that protects the safety of students and promotes accountability."

b. During the investigation and any subsequent adjudicatory hearings, both the complainant and the accused student have the right to be accompanied by an advisor, including an attorney or advocate, to any related meeting or proceeding. However, this role is limited; the Sexual Misconduct Policy provides, "the role of the advisor is only to be present to advise; they will not be provided documentation or permitted to interject during the meeting."

c. During the investigation, both the complainant and the accused student may file a written statement, submit information, and identify relevant witnesses.

14

    d.  At the conclusion of the investigation, the investigator will prepare a written report of the findings of the investigation.

30. The standard of review used to determine whether there is a violation of the Sexual Misconduct Policy is a "preponderance" standard. The Sexual Misconduct Policy provides, "This determination is based on the greater weight of the information and does not require a standard beyond a reasonable doubt."

31. The Sexual Misconduct Policy provides that an accused student "will be given timely and equal access to information that will be used during any subsequent disciplinary meetings and hearings."

32. If the investigation finds reasonable cause to believe that a Title IX violation occurred, disciplinary action will be initiated against the accused student.

    a.  Disciplinary hearings for Title IX violations will be held before a trained Administrative Hearing Panel (two faculty and one staff member.)

    b.  At a disciplinary hearing, an accused student has certain rights, including:

        i.  The ability to file a written statement, to submit information;

        ii.  The right to present witnesses and other information;

        iii.  The right of access to information that will be used at the hearing; and

        iv.  The right to the presence of a "support person" and "an advisor (including an attorney or advocate)." However, the support person and advisor is not permitted to participate in any hearing.

33. The Sexual Misconduct Policy states that "The questioning of the parties will be conducted through the Administrative Hearing Panel." The Sexual Misconduct Policy does not contain ay provisions for the questioning of witnesses.

34. The standard of review used to determine responsibility is a "preponderance" standard.

35. Both the complainant and an accused student have the right to appeal on the basis of alleged procedural error, new information and/or inappropriate sanction using the appeal process in the Code of Student Conduct.

36. Possible sanctions for Title IX violations include: dismissal, suspension, removal from campus housing, educational intervention, no-contact orders, and/or restrictions from participating in intercollegiate athletics or co-curricular activities.

37. The policies, procedures, and sanctions outlined in the Code of Student Conduct apply to all violations of the Sexual Misconduct Policy. (A copy of the Code of Student Conduct is attached as Exhibit B.)

    a. The Code of Student Conduct provides that a "process coordinator" from OSECR should be present at any hearing involving sexual misconduct. "The role of the process coordinator is to ensure that due process procedures and the recommended hearing guidelines are being heeded." The process coordinator may answer "procedural questions" but should not be present during deliberations.

    b. The Chair of the Hearing Panel has the authority to determine the "acceptability" of testimony and other information.

38. The Code of Student Conduct provides that an accused student has the right to "question witnesses who testify in the matter." The questioning of the alleged victim and the accused student is conducted through the Hearing Panel.

39. Written statements are permitted under the Code of Student Conduct in lieu of live testimony. The Code of Student Conduct provides: "If the University elects to accept a witness's written statement in lieu of live testimony, the identity of the witness and his or her statements shall be fully disclosed to the other parties, and they shall be given the opportunity to respond to such statements."

16

40. A unanimous decision is not necessary.  "In the event there is no consensus, a majority vote (the Chair voting) will determine the outcome."

41. If the Hearing Panel determines that a violation of the Code of Student Conduct has occurred, sanction(s) will be imposed.

42. An accused student found responsible by the Hearing Panel has the right to an appeal.

   a. A written appeal is presented to the University Appeals Board

   b. Appeals may be filed for the following reasons:

      i. Inappropriate sanction;

      ii. Procedural defect, but "a new hearing will be ordered only if the defect is found to be substantial enough to have changed the outcome of the original hearing";  and

      iii. The discovery of new evidence, but "a new hearing will be ordered only if the new evidence is found to be substantial enough to change the outcome of the original hearing.

   c. If the Appeals Board finds the sanction to be inappropriate, the Appeals Board may increase or reduce the sanction.

   d. If the Appeals Board finds that there was a defect in the procedure or new evidence was presented which was sufficiently substantial to have affected the outcome, the Appeals Board will order a new hearing.

   e. In cases where a student faces suspension or dismissal, further review by the Vice President for Student Affairs or designee is available, subject to the same standards as an appeal to the Appeals Board.  The decision of the Vice President or designee to sustain the finding of the Appeals Board is final.

43. In practice, a student accused of sexual misconduct under the Miami policies faces a system that is biased at every step towards finding the student "responsible" and imposing significant discipline. At the beginning of the process, Miami often imposes restrictions and punishments— sometimes referred to as "interim measures"—based solely on an allegation without allowing for any hearing or even conducting any investigation. The investigatory process focuses on hearsay statements instead of physical evidence and is aimed at finding evidence to support the charges.

44. On information and belief, students at Miami who make allegations of sexual assault or sexual harassment obtain accommodations in the form of changes in homework deadlines, grades, class, schedules, and examination schedules.

   a. These accommodations create a significant incentive for students to fabricate allegations of sexual assault.

   b. These accommodations create a significant incentive for students to continue to pursue allegations of sexual assault even if the evidence does not support the allegations.

   c. These accommodations are not disclosed to the Hearing Panel, even though the accommodations are relevant to the credibility of the testimony.

45. On information and belief, Miami investigators do not make any inquiries or efforts to determine what, if any, accommodations are received by students who claim to be victims of sexual misconduct.

46. On information and belief, Miami "advocates" spend hours helping alleged victims of sexual assault prepare for hearings. No such accommodations or assistance have been offered in any meaningful way to those accused of sexual assault in the past.

47. The hearings at Miami are nothing more than mock hearings in which the principles of law and justice are disregarded or perverted.

18

a.  The hearings are characterized by irresponsible, unauthorized, or irregular status or procedures in which students are prevented from putting forth a meaningful defense.

b.  On information and belief, the Hearing Panel members approach the hearings with the foregone conclusion that the student accused of sexual assault will be found responsible. This is shown through the unwillingness of Hearing Panel members to apply the actual Miami policies to the facts of cases, the reliance on unreliable hearsay evidence, and the prohibition of effective cross-examination of the complainants and witnesses.

### THE FALL 2016 INCIDENT

48. John Doe is facing a two year suspension from Miami for events that allegedly occurred beginning on the evening of November 17, 2016 (the "Incident").

49. On the night of the Incident, John Doe, Jane Roe, and some of there friends made plans to meet at a bar in Oxford, Ohio. They were there to celebrate a friend's birthday. They arrived at the bar about 10:00 pm and started drinking and talking. They then proceeded to a second bar. There was no plan to get drunk. John Doe had a flight to Washington D.C. the next morning and others in the group had exams the next day.

50. John Doe left the bar a little after midnight. Jane Roe and another friend accompanied him on the walk home; the other friend went a different direction about half-way during the walk home.

51. John Doe and Jane Roe engaged in consensual sexual activity.

a.  John Doe and Jane Roe spoke about "hooking up." Jane Roe said to John Doe that she did not "want to have sex." She added, "But we can do other things."

b.  John Doe and Jane Roe slipped inside some bushes and started kissing. John Doe then asked Jane Roe if he could perform oral sex on her. She responded by moving forward and indicated consent by continuing to kiss John Doe. John Doe then performed oral sex on Jane Roe; she did not object.

19

     c.   After John Doe performed oral sex on Jane Roe, Jane Roe began rubbing his crotch.  John Doe started to unzip his pants, but Jane Roe said, "not here," indicating to a nearby window.

     d.   John Doe and Jane Roe could not go to John Doe's room because John Doe' roommate was sleeping.  Instead they decided to walk towards a bathroom near John Doe's room.  Jane Roe was kissing John Doe in the elevator and followed him into the bathroom.  In the bathroom, Jane Roe again rubbed John Doe's crotch.  The two discussed having sex.  They decided to not have sex because they did not have a condom available.  Jane Doe voluntarily performed oral sex on John Doe.

52. Following the sexual activity, John Doe walked Jane Roe back to her dorm.  At about 1:00 am John Doe texted Jane Roe asking, "Are you ok??"  Jane Roe responded, "No.  I'm gonna be sick."  Jane Roe never stated that John Doe had sexually assaulted her.

53.  On Saturday, November 19, 2016 Jane Roe texted John Doe.

     a.   She said, "That was fucked up.  I'm absolutely disgusted . . . I was so so drunk . . . You need to understand the gravity of your actions."  John Doe responded, "I'm so sorry – I was hammered too and feel absolutely horrible. . . "  He added, "Neither of us were thinking clearly."  He also texted, "Drunk people made horrible decisions and we made a horrible decision and I know apologizes [sic] can't do anything . . ."

     b.   John Doe explained that he sent these texts because he was upset that he had engaged in sexual activity with Jane Roe because Jane Roe had been in a relationship with one of his friends.  He believed it was a mistake to risk that relationship.

54. Jane Roe never reported any alleged sexual misconduct to the police.

## THE DISCIPLINARY PROCEEDINGS
## AGAINST JOHN DOE

55. On or about April 4, 2017 and April 7, 2017, Jane Roe, almost five months after the Incident, reported to Miami that she had been sexually assaulted by John Doe.

    a. Jane Roe accused John Doe of plotting to have sex with her. She said that "his intent for the act was made even more apparent as the months went on." She elaborated: "I have witnesses that can confirm that his intent was to have ex with me by the end of the night which he concluded could be done after at least buying me $28 in alcoholic beverages."

    b. Jane Roe did not provide any evidence or elaboration for her claim that John Doe had intended to commit an offense.

    c. Jane Roe did not provide any explanation for her delay in reporting the alleged assault.

56. On April 5, 2017, the OESCR provided John Doe with a "Notice of Alleged Violation(s) of Student Conduct Regulations." The Notice said:

> The OESCR is in receipt of a report from [Jane Roe.] Specifically, on November 17, 2016, you allegedly penetrated her with your fingers and performed unwanted oral sex of her in an alleyway by Bishop Hall. You allegedly continued even when she showed resistance. Furthermore, [Jane Roe] reported that she had to use the restroom and, as she entered the restroom in Bishop Hall, you allegedly entered with her, holding her head down to perform oral sex on you.

57. Upon receipt of Jane Roe's complaint, Miami obtained statements and information directly from John Doe and Jane Roe, but did not otherwise conduct any investigation. John Doe did not provide a formal statement. The investigator did not make any effort to determine what, if any accommodations Jane Roe had received from Miami as a result of her claim to have been a victim of sexual assault.

58. A Summary Suspension Hearing was held to determine whether John Doe posed a direct threat to the student body. Curme, acting as the Dean of Students, presided over the hearing and

determined that John Doe presented no threat to the student body and was permitted to remain on campus during the disciplinary process.

59. Jane Roe presented evidence to the OESCR in the form of witnesses statements.

    a. Jane Roe provided a statement indicating that she had been drinking on the night of the Incident and that John Doe coerced her into sexual activity.

    b. Jane Roe provided witness statements people present with John Doe and Jane Roe shortly before the Incident. The witness statements also contained a significant amount of hearsay.

        i. Jane Roe Jo presented a written statement from a witness JR. This witness was present with John Doe and Jane Roe on the night of the incident. JR never provided an opinion that Jane Roe was severely intoxicated. JR stated that he observed Jane Roe drinking. He said, "[Jane Roe] was stumbling a bit still able to walk on her own."

        ii. Jane Roe Jo presented a written statement from a witness RR. This witness was not present with John Doe and Jane Roe on the night of the incident, but observed Jane Roe when she returned to her dorm room. RR never provided an opinion that Jane Roe was severely intoxicated. RR stated that Jane Roe was "sobbing," "slurring her words," and "unable to walk in a straight line."

        iii. Jane Roe presented a written statement from a witness AS. This witness was present with John Doe and Jane Roe on the night of the incident. AS provided an opinion that Jane Roe was "extremely drunk." AS described Jane Roe as "stumbling and slurring her words."

    c. None of the written statements provided by Jane Roe were notarized or signed. In fact, Jane Roe admitted that she wrote the name of the witnesses on their statements.

60. John Doe presented evidence to the OESCR in the form of witnesses statements, photographs, and receipts.

    a. The witness statements included some character witnesses and witnesses who could only present hearsay.

    b. The witness statements included some people present with John Doe and Jane Roe shortly before the Incident.

        i. John Doe presented a written statement from a witness MS. This witness was present with John Doe and Jane Roe on the night of the incident. MS stated that she observed Jane Roe "being flirtatious with" John Doe an "that she made the effort to sit by him that night."

        ii. John Doe presented a written statement from a witness OS. This witness was present with John Doe and Jane Roe on the night of the incident and walked part of the way home with John Doe and Jane Roe. He said, "I can say without a doubt [John Doe] was not forcing [Jane Roe] to walk with him or come back with him."

    c. The statements provided by John Doe were signed and notarized.

61. On April 13, 2017 John Doe was informed that a hearing would occur on April 28, 2017. Vaughn, and two other faculty members/administrators were members of the Hearing Panel.

62. On April 28, 2017, Miami held a hearing to determine if John Doe had violated the Sexual Misconduct Policy and the Code of Student Conduct.

    a. John Doe and Jane Roe appeared for the hearing.

    b. The Hearing Panel was provided a copy of the written submissions from John Doe and Jane Roe prior to the hearing. This document is referred to as the "Hearing Packet."

63. John Doe told the Hearing Panel that all of the sexual activity during the Incident was consensual and that Jane Roe was not severely intoxicated.

64. Jane Roe told the Hearing Panel that she was "extremely drunk" and that the sexual activity was not consensual.  She also engaged in numerous personal attacks against John Doe, including:

    a.  Jane Roe noted that John Doe was her friend "Until the night of November 17th when [John Doe] returned my friendship and showed me his true colors."

    b.  Jane Roe suggested that John Doe "had a plan before we even got to the first bar that night.  And he worked very hard to make sure he was successful.  [John Doe] thinks that this behavior is funny."

65. The Hearing Panel gave Jane Roe the opportunity to call witnesses.  She did not call any witnesses but, instead, relied on the written statements in the Hearing Packet.  Vaughn, acting as the chair of the Hearing Panel on a number of occasions remarked at the inability for John Doe to question the witnesses who provided information in support of Jane Roe's claim.

    a.  Vaughn said:

> There are no witnesses that are going to show in person. So let's go to the material that you submitted which is the last section here of the packet. The panel obviously cannot ask questions of the witnesses, so everyone that's read these I don't know if everyone is familiar. Okay. Everyone had the packet so was able to have read everything that was in here.

    b.  Vaughn said:

> Okay. So no other witnesses. And there'll be no questioning of your witnesses so we're going to go to witnesses that you have, [John Doe].

    c.  Vaughn indicated that not being able to question the witnesses who provided witness statement put John Doe at a disadvantage and that being able to ask questions of witnesses was "valuable."  She further indicated that the Hearing Panel would accept as true statements from witnesses who were not cross examined.  She said:

> . . . when [Jane Roe] had three witness statements, it truly disadvantages everyone if you can't ask questions. So if we can't ask questions, I have to take this as fact. That all is true.

66. John Doe presented a number of witnesses who testified that Jane Roe was not severely intoxicated and otherwise contradicted her allegations.

   a. JB testified that he was asleep in a room outside of the bathroom where Jane Roe performed oral sex on John Doe. In response to Jane Roe's claim that she yelled at John Doe and was crying, JB said: "I didn't hear anything."

   b. MS testified that Jane Roe was flirting with John Doe. MS also testified that Jane Roe and was not severely intoxicated:

   > [Q]: And it didn't look like there was any indication that anybody needed help or anybody was intoxicated?
   > [A]: No. I thought everybody was still in charge, like able to make their own actions, decisions.
   > [Q]: That does lead to a follow-up. How do you define needing help? What would that mean if you believed someone needed help?
   > [A]: If someone was stumbling like unable to walk by themselves, slurring their words . . .
   >
   > . . .
   >
   > [Q]: So [Jane Roe] was perfectly straight in all of her movements during the night?
   > [A]: I don't remember anyone like stumbling around. That's a behavior that I would have like really recognized, like seen and since I do not remember anyone stumbling on any of the walks or on any time of getting up.

   c. OS testified that he walked out of the bar with John Doe and Jane Roe. He testified that Jane Roe was not stumbling or slurring her words:

   > [Q]: Did you observe her stumbling or slurring her words at any point during either of our walks?
   > [A]: No.
   >
   > OS further testified that Jane Roe was slightly, but not severely, intoxicated:
   >
   > [Q]: So was [Jane Roe] also intoxicated?
   > [A]: We were all drinking that night, but we were all the same like threshold.
   > [Q]: So she had the same amount as you and she was at the same threshold as you?
   > [A]: Yes.
   > [Q]: And you were slightly intoxicated?
   > [A]: Yes.

    d.   LG testified. She did not have any personal knowledge of the night of the Incident, but described a phone call between John Doe and one of Jane Roe's friends. She testified:

> [Q]: Did [John Doe] ever indicate that anybody was more intoxicated than a level that would allow them make decisions on their own?
> [A]: Absolutely not.

    e.   BG testified even though he did not want to appear voluntarily. John Doe told the Hearing Panel he preferred to rely on BG's written statement. However, Vaughn believed that asking him questions would be "valuable," so he was compelled to appear and testify about a conversation he had with Jane Roe. BG did not possess any firsthand knowledge of the Incident and did not want to be involved. He explained:

> [A]: I expressed on multiple occasions that I had no interest in getting involved with this hearing. And I didn't want to give any testimony on his behalf or anything. I just wanted to stay away from it

67. On a number of occasions, questions from the members of the Hearing Panel suggested that the Hearing Panel was applying a standard of merely "under the influence" instead of attempting to apply the Miami policy which states that consent cannot be given if a person is "severely intoxicated."

    a.   Vaughn asked one witness the irrelevant question of whether "[Jane Roe] was under the influence of alcohol that night?" Vaughn similarly asked John Doe the irrelevant question, "Were you drunk?"

    b.   A panel member observed in a question to John Doe: "alcohol impairs your ability to make . . . decisions." Another panel member asked Jane Roe, "how would you define blacked out?"

    c.   A panel member referenced a training provided to Miami students and suggested that any amount of alcohol consumption means a person cannot consent. That led to this exchange between John Doe and Vaughn:

> [John Doe]: So with that definition -- I'm honestly just asking, but that definition if everybody on this campus who takes a drink of alcohol and kisses their boyfriend or girlfriend, is that nonconsensual?
> VAUGHN: Potentially, yes.

    d. John Doe appeared to apply the correct standard by acknowledging some alcohol use and, even, that he was drunk but observing, "Do I think we could have made rationale decisions about things that we were doing that night or things that we did that night, yes."

68. Jane Roe never testified hat she was "severely intoxicated" as required by the Miami Sexual Misconduct Policy. She said simply, "I think I was very intoxicated."

69. Jane Roe never testified about the reason that she decided to report the alleged sexual misconduct in April, 2017.

    a. The Hearing Panel did not receive any information about what, if any, accommodations Jane Roe received as a result of her claim to have been a victim of sexual assault.

    b. Jane Roe testified, "I came forward because I wanted justice and because I feel like I have a duty to do everything in my power to stop you [John Doe] from doing this again . . ." John Doe did not have any information available to effectively cross-examine Jane Roe about this claim.

70. On May 1, 2017, John Doe received a letter from Vaughn indicating that the Hearing Panel had found him responsible for committing sexual assault in violation of Section 103A of the Code of Student Conduct.

    a. The letter indicates that the Hearing Panel had concluded, by the preponderance of the evidence, that John Doe had "engaged in sexual conduct with [Jane Roe] on two occasions that evening without her knowingly being able to consent." The Hearing Panel reached this conclusion while acknowledging that Jane Roe's "recollection of the reported assaults was less clear."

    b.  John Doe was informed that he was suspended from Miami from April 6, 2017 through May 15, 2019. During this time, he is unable to earn credits from another institution and is prohibited from entering the campus. He also received additional sanctions, including probation for the remainder of his time at Miami.

71. On May 9, 2017, John Doe submitted an appeal. This appeal raised a number of issues, including:

    a.  New evidence had been discovered that was substantial enough to change the outcome of the hearing.

    b.  John Doe was denied his due process rights by the failure of the Hearing Panel to pride him with an opportunity to cross-examine the witnesses who presented statements on behalf of Jane Roe.

72. On May 31, 2017, John Doe received a letter from Dr. Alana Van Gundy-Yoder, the chair of the University Appeal Board. The letter indicated that John Doe's appeal had been denied.

    a.  The University Appeal Board rejected the appeal based on new evidence. The letter indicates that the University Appeal Board "unanimously agreed that the information presented does not directly impact that fact that [Jane Roe] was not capable of providing consent at the time in question.

    b.  The University Appeal Board rejected the appeal based on procedural issues. The letter indicates that the University Appeal Board reasoned that "each case is decided on a case by case basis based upon the Code of Conduct that every student must abide."

73. John Doe submitted a further appeal to Elliott. This appeal raised the same issues as the original appeal.

74. On June 16, 2017, John Doe received a letter from Elliott. On information and belief, Elliott was designated by the Vice President of Student Affairs to review John Doe's Appeal. The letter indicated that his further appeal had been denied.

a. Elliott rejected the appeal based on procedural errors.  Elliott wrote, "I find none of the alleged defects, alone or in combination, was substantial enough to have changed the outcome of the hearing."

b. In rejecting the appeal based on the inability of John Doe to cross-examine adverse witnesses, Elliott noted that Miami rules permit the Hearing Panel to "accept a witness's written statement in lieu of live testimony."  He added:  "There is nothing in University procedures that requires the written statements to be signed and notarized."

c. Elliott incorrectly stated that the "Hearing Panel via Ms. Vaughn made it clear that written statements are not given the same weight as witnesses who appear as the Hearing Panel is not able to ask questions of the witnesses."  This is in direct contradiction to the statements of the Hearing Panel chair during the hearing that the Hearing Panel had to "take [the statements] as fact. That all is true."

d. Elliot affirmed the original sanctions, including suspension from April 6, 2017 through May 15, 2019.

75. On information and belief, Miami, from the outset, presumed that John Doe was responsible in order to look good for the Department of Education and advocates.

a. On information and belief, the Miami administration was cognizant of, and sensitive to, criticisms by students and the media (including the Internet) about the manner in which Miami resolved allegations of sexual misconduct.  As a result, Miami's decision-makers were motivated to favor the accusing female over the accused male, so as to protect themselves and Miami from accusations that they had failed to protect female students from sexual assault.

b. Miami was heavily invested in protecting female accusers even when there is no evidence of wrongdoing by males in order to avoid scrutiny from the Department of Education.

This is illustrated, in part, by the persistence of Miami in pursuing the investigation of the Incident even though the matter occurred months prior to any report.

c.  On information and belief, Miami imposed sanctions on John Doe because it was afraid of an investigation from the Department of Education and/or a Title IX lawsuit from the complainant.

76. The Defendants' continued actions against John Doe are causing substantial, immediate, and continuing damages. Suspension from Miami will cause John Doe to be denied the benefits of education at his chosen school, damaged his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career.

**COUNT I
(DECLARATORY JUDGMENT – VIOLATION OF DUE PROCESS PROVISIONS
OF UNITED STATES AND OHIO CONSTITUTIONS)**

77. Plaintiff repeats and incorporates all of the allegations of this Complaint, as if fully set forth herein.

78. This Count is brought against the Individual Defendants.

79. The Fifth Amendment to the United States Constitution, made applicable to the State of Ohio by the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law."

80. The Fourteenth Amendment to the United States Constitution provides that no state shall deprive "any person of life, liberty, or property, without due process of law."

81. Section 16, Article I, Ohio Constitution, guarantees that every person injured in his lands, goods, person or reputation shall have remedy by "due course of law."

82. The Due Process Clauses of the Ohio and United States Constitutions are implicated by higher education disciplinary decisions, including the disciplinary decisions under the Miami Code of Student Conduct.

83. Miami has a constitutional obligation to provide a fundamentally fair and reliable hearing process.

84. John Doe is entitled under the Constitutions of Ohio and the United States to the opportunity to be heard in a meaningful manner at the Panel Hearing.

85. John Doe's interests in the results of the Panel Hearing are significant.

   a. Suspension from Miami would deny him the benefits of education at his chosen school.

   b. Suspension and other sanctions would also damage John Doe's academic and professional reputation.

   c. Suspension and other sanctions are likely to affect the John Doe's ability to enroll at other institutions of higher education and to pursue a career.

86. The Defendants have violated John Doe's due process rights in the following manner:

   a. Miami failed to provide John Doe with adequate notice of the nature of his alleged violation. In particular, John Doe was not informed that the focus of the proceedings would be on the intoxication of Jane Roe. Instead, John Doe was given notice that led him to believe that that the focus on the hearing with his engaging in sexual conduct through force or threat of force.

   b. The Hearing Panel was biased against students accused of sexual assault.

   c. Miami administrators involved in the adjudicatory and appeal process were biased against students accused of sexual assault.

   d. Miami permitted the use of hearsay evidence at the hearing without providing John Doe the opportunity to effectively cross-examine witnesses. In particular, John Doe was not permitted to cross-examine three witnesses who submitted written statements in support of Jane Roe.

   e. John Doe was denied the effective assistance of an attorney or other advisor. An advisor was permitted to be present, but the advisor was not permitted to participate.

87. The Plaintiff and the Individual Defendants acting in their official capacity have a dispute about whether the Sexual Misconduct Policy and the Code of Student Conduct, as applied to John Doe, violates the Due Process Clauses of the United States Constitution, the Due Course of Law Clause of the Ohio Constitution.

88. The Individual Defendants have both a duty to enforce the provisions of the Sexual Misconduct Policy and the Code of Student Conduct and have actually enforced those provisions against John Doe.

89. John Doe is entitled to a declaration that the Sexual Misconduct Policy and Code of Student Conduct, as applied to John Doe, violates the Due Process Clauses of the United States Constitution, the Due Course of Law Clause of the Ohio Constitution.

90. Pursuant to 42 U.S.C. §1988, John Doe is entitled to his attorney's fees incurred in bringing this action.

**COUNT II**
**(42 U.S.C. §1983 -- VIOLATION OF DUE PROCESS PROVISIONS OF UNITED STATES CONSTITUTION)**

91. Plaintiffs repeat and incorporate all of the allegations of this Complaint, as if fully set forth herein.

92. This count is brought against the Individual Defendants in their Official Capacity for injunctive relief.

93. This count is brought against the Individual Defendants in their individual capacity for damages.

94. The Defendants have acted under color of law in violating the Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitutions.

95. The Defendants have acted intentionally and with callous disregard for the Plaintiff's clearly established constitutional rights.

96. As a direct and proximate result of the Defendants' violations of the Plaintiffs' constitutional rights, John Doe, in the absence of injunctive relief will suffer severe and substantial damages.

These damages include diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

97. The Defendants continued actions against the Plaintiff under the Miami Code of Student Conduct are causing substantial, immediate, and continuing damage to the Plaintiffs.

98. Pursuant to 42 U.S.C. §1983, the Plaintiff is entitled to an Injunction from this Court prohibiting the imposition of, or reporting of, any disciplinary actions under the Miami Code of Student Conduct against the Plaintiff.

99. Pursuant to 42 U.S.C. §1988, the Plaintiff is entitled to his attorney's fees incurred in bringing this action.

**COUNT III**
**(TITLE IX)**

100. Plaintiffs repeat and incorporate all of the allegations of this Complaint, as if fully set forth herein.

101. This count is brought against Miami.

102. Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations, 34 C.F.R. Part 106, prohibit discrimination on the basis of sex in education programs or activities operated by recipients of Federal financial assistance. Title IX provides in pertinent part: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

103. Miami is an education program or activity operated by recipients of Federal financial assistance.

104.     Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline.

105.     Miami committed impermissible gender bias against the Plaintiff in the investigation and adjudication of Jane Roe's accusations.

106.     Particular circumstances suggest that gender bias was a motivating factor behind the erroneous findings and the decision to impose discipline upon John Doe. These circumstances include:

    a.   A general atmosphere at Miami where those who lodge a complaint of sexual assault are immediately treated as "survivors."

    b.   The failure of Miami to conduct full and fair investigations, including the failure to include significant evidence that tended to exonerate accused students.

    c.   The failure of the Hearing Panel to afford accused students the ability to effectively cross-examine their accusers under the auspices of "protecting" victims.

    d.   The failure of Miami to require the presence of key witnesses at hearings.

107.     Miami committed impermissible gender bias against John Doe in the investigation and adjudication of the Complainant's accusations.

    a.   The Hearing Panel, and the reviewing administrators reached conclusions that were incorrect and contrary to the weight of the evidence.

    b.   There has been substantial criticism of Miami, both in the student body and in the public media (including the Internet), accusing Miami of not taking seriously complaints of female students alleging sexual assault by male students. On information and belief, the Miami administration was cognizant of, and sensitive to, these criticisms. As a result, Miami's decision-makers were motivated to favor the accusing female over the accused male, so as to protect themselves and Miami from accusations that they had failed to protect female students from sexual assault.

c. On information and belief, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Miami was motivated in this instance to accept the female's accusation of sexual assault so as to show the student body and the public that Miami is serious about protecting female students from sexual assault by male student. The investigator, hearing panel, and administration adopted a biased stance in favor of the accusing female and against the defending male in order to avoid further fanning the criticisms that Miami turned a blind eye to such assaults.

d. Subsequent to the filing of the prior lawsuit against Miami, *Doe v. Miami*, 1:15-cv-00605-MR, become the subject of multiple investigations by OCR.

108. Miami, encouraged by federal officials, has instituted solutions to sexual violence against women that abrogate the civil rights of men and treat men differently than women.

109. Miami officials and administrators who had the authority to institute corrective measures had actual notice of and failed to correct the misconduct. The imposition of discipline on John Doe is the result of a flawed and biased hearing process. This resulted in a deprivation of access to educational opportunities at Miami.

110. The decisions of the hearing process and the appeal process for John Doe were erroneous outcomes which were the direct result of a flawed and biased proceeding.

a. In a fair and unbiased system, whether someone is a "victim" is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning. Miami has reversed this process and assumed that John Doe was guilty because he was a male accused of sexual assault rather than evaluating the case on its own merits.

b. On information and belief, women rarely, if ever, are accused of sexual harassment by Miami.

111.    Miami has discriminated against John Doe because of sex. This discrimination is intentional and is a substantial or motivating factor for Miami's actions in this case.

112.    As a direct and proximate result of Miami's violations of John Doe's rights under Title IX, John Doe has suffered severe and substantial damages. These damages include diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

113.    Miami is liable to John Doe for his damages.

114.    Pursuant to 42 U.S.C. §1988, John Doe is entitled to his attorney's fees incurred in bringing this action.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

- On Count I, Judgment Declaring that the Sexual Misconduct Policy and Code of Student Conduct, as applied to John Doe, violates the Due Process Clauses of the United States Constitution, the Due Course of Law Clause of the Ohio Constitution that any hearing process be consistent with the customs of a free society.
- On Counts II and II, Judgment in favor of John Doe awarding damages in an amount to be determined at trial
- An Injunction restoring John Doe as a student and prohibiting further disciplinary proceedings in a manner that violates the contract between the parties.
- Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by 42 U.S.C. §1988.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

# Title IX Protocol-Sexual Misconduct Policy and Procedures for Students at Miami University

(Student Handbook 4.12)

<div style="float:right;">

Exhibit A

</div>

- I. Introduction
- II. Definitions -Title IX Violations
- III Duty to Report
- IV. Reporting Violations
- V. Confidentiality
- VI. Crime Alerts/Emergency Notification
- VII. Resources and Support Services
- VIII. Investigation and Disciplinary Action
- IX. Legal Options
- X. Education and Prevention
- Appendix A- Ohio Criminal Offenses

# I. Introduction

Miami University is committed to maintaining a healthy and safe learning, living, and working environment and to creating an environment that promotes responsibility, dignity, and respect in matters of sexual and interpersonal conduct. Sexual misconduct, domestic violence, dating violence, stalking and sexual harassment (Title IX violations) are strictly prohibited and will not be tolerated. Any person, regardless of gender, can be a victim/survivor. This Protocol applies to both on-campus and off-campus conduct, academic, educational, co-curricular, athletic, study abroad, and other University programs. By providing resources for prevention, education, support, investigation, and a fair disciplinary process, Miami University seeks to eliminate all Title IX violations. The University is dedicated to preventing Title IX violations by providing:

- Education and prevention programming informing the community about the risks and myths that contribute to sexual misconduct and interpersonal violence, bystander training.
- Assistance and support, including interim support measures and accommodations.
- Processes for reliable and impartial investigation and adjudication that include appropriate disciplinary sanctions for those who commit Title IX violations including suspension and dismissal.
- When a Title IX violation does occur, the University will take appropriate steps to end the harassment, prevent its recurrence and remedy the discriminatory effect on the reporter (or victim/survivor if different from the reporter) and others, as appropriate.

Miami's Protocol is designed to comply with applicable state and federal laws. Miami University reserves the right to modify or deviate from this Protocol when, in the sole judgment of the University, circumstances warrant, in order to protect the rights of the involved parties or to comply with the law. This Protocol is not intended to and will not be enforced so as to infringe upon First Amendment rights, including the right to academic freedom.

This Protocol describes how the University typically responds to reports of Title IX violations involving students. It also:

- Provides guidance for students who have been the victim/survivor of a Title IX violation.
- Outlines the University's student disciplinary response to alleged conduct violations.
- Identifies the relevant places within the University responsible for the Protocol and programs associated with it.

# II. Definitions -Title IX Violations

## A. Sexual Misconduct

1. Sexual assault is any sexual act directed against another person, without their consent, including instances where the person is incapable of giving consent. Examples include:
   - Any non-consensual sexual intercourse, defined as any sexual penetration however slight, with any body part or object by any person upon any person without consent (commonly referred to as rape.) Non-consensual sexual intercourse includes rape, inces,t and statutory rape.
   - Any non-consensual sexual contact, defined as any intentional sexual touching, with any body part or object by any person upon any person without consent including forcible fondling. Non-consensual sexual contact includes the touching of any body part for sexual gratification, without consent or where the person is incapable of giving consent because of age or temporary or permanent mental incapacity

2. Sexual exploitation is taking non-consensual, unjust or abusive sexual advantage of another. Examples include non-consensual video or audio recording of sexual activity, going beyond the boundaries of consent (such as knowingly allowing another to surreptitiously watch otherwise consensual sexual activity) and engaging in non-consensual voyeurism.
3. Indecent exposure is the exposure of the private or intimate parts of the body in a lewd manner in public or in private when the accused student(s) may be readily observed.

## B. Consent for Sexual Conduct

Consent is when a person agrees or gives permission to another person to engage in certain sexual acts.

1. **What is consent?**

- Consent is a knowing and voluntary verbal or non-verbal agreement between both parties to participate in each and every sexual act.
- Consent to one sexual act does not imply consent to other or all sexual acts.
- Conduct will be considered "non-consensual" if no clear consent, verbal or non-verbal, is given. The absence of "no" does not mean "yes."
- A person has the right to change one's mind at any time. In other words, consent can be withdrawn at any point, as long as the person clearly informs the other party of the withdrawal.
- Taking drugs or consuming alcohol does not relieve the obligation to obtain consent.
- A person is not required to physically or otherwise resist an aggressor.

2. **Effective Consent**

- Effective consent can be given by words or actions so long as the words or actions create a mutual understanding between both parties regarding the conditions of the sexual activity ask: "do both of us understand and agree regarding the who, what, where, when, why, and how this sexual activity will take place?"

- When a person affirmatively demonstrates that (1) they do not want to have sex, (2) they want to stop any sort of the sexual acts, or (3) they do not want to go any further, the other party must stop completely. Continued pressure after that point can be coercive.

3. **Consent in Relationships**

- Current or past sexual relationships or current or past dating relationships are not sufficient grounds to constitute consent.
- Regardless of past experiences with other partners or a current partner, consent must be obtained.
- Consent can never be assumed, even in the context of a relationship. A person has the right to say "no" and has the right to change their mind at any time.

4. **A person cannot legally give consent (no matter what they might say), when:**

- The person is severely intoxicated due to alcohol or drugs, incapacitated, or unconscious.
- The person is physically or mentally disabled or incapacitated.
- The person was coerced due to force, threat of force, or deception or when the person was beaten, threatened, isolated, or intimidated.

# C. Interpersonal Violence

## Dating Violence

Dating Violence is an act of violence committed by a person who is or has been in a social relationship of an intimate or romantic nature with the victim.

The existence of such a relationship shall be determined based on consideration of the following factors:

- Length of the relationship.
- Type of relationship.
- Frequency of interaction between the persons involved in the relationship.

## Domestic Violence

Domestic Violence is an act of violence committed by a current or former spouse or intimate partner of the victim or a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner or person similarly situated, or by a parent with whom the victim shares a child in common.

## Stalking

Stalking is engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others or suffer substantial emotional distress. Stalking includes repeatedly following, harassing, threatening, or intimidating another by telephone, mail, electronic communication, social media, or any other action, device or method that purposely or knowingly causes substantial emotional distress or reasonable fear of bodily injury or death. For the purpose of this definition:

- Course of conduct means two or more acts, including but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, or interferes with a person's property.

- Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.
- "Reasonable person" means a reasonable person under similar circumstances and with similar identities to the victim.

A person who has experienced stalking should retain all communications from the accused individual, including email, voicemail, text-messages, social media communication, etc.

## D. Sexual Harassment

Sexual Harassment is unwelcome sex or gender based verbal or physical conduct that unreasonably interferes with a student's work or educational experience or creates an intimidating, hostile or offensive working, educational or campus residential environment. Sexual harassment includes sex or gender based conduct that is sufficiently severe or pervasive that it unreasonably interferes with, denies, or limits a student's ability to participate in or benefit from the University's educational programs and activities. The more severe the conduct, the less need there is to show a repetitive series of incidents to demonstrate a hostile environment. In fact, a single severe incident may be sufficient to create a hostile environment. Sexual Harassment exists when:

- There are unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct and submission to such conduct is made explicitly or implicitly a term or condition of a student's employment or academic status.

- The submission or rejection of such conduct is used as the basis for employment or academic decisions..

- There is verbal or physical sexual conduct that is sufficiently severe or persistent that it unreasonably interferes with a student's work performance or creates an intimidating, hostile or offensive work, educational or campus residential environment.

# III. Duty to Report

All employees who become aware of an alleged Title IX violation, including sexual misconduct, interpersonal violence or sexual harassment, or retaliation are required to report it to one of the University's Deputy Title IX Coordinators. The duty to report includes administrators, supervisors, managers, faculty and staff.

Graduate Assistants (GAs), Residential Assistants (RAs), Orientation Leaders (SOULS) and student managers in Housing, Dining, Recreation and Business Services (HDRBS) are also required to report.

Exemptions:

1. Employees with a legal privilege of confidentiality under Ohio law (including doctors and licensed counselors acting in their capacity as counselors) are not required to report when the information is obtained in the course of a confidential communication.
2. Employees are not required to report information disclosed at public awareness events (e.g., "Take Back the Night," "candlelight vigils," "survivor speak-outs," or other public forums or discussions in which students do not intend to make a report of discrimination or harassment.) Information about students' Title IX rights and available University and community resources and support should be provided at public awareness events. In the classroom,

instructors should remind students that faculty are required to report Title IX violations and any report that is not general or hypothetical may be required to be reported.

3. Researchers are not required to report if the information is disclosed by a subject during participation in an Institutional Review Board-approved human subjects research protocol (IRB Research.) The University's Institutional Review Board (IRB) may, in appropriate cases, require researchers to provide such information to all subjects of the IRB approved research.

**Note:** In addition to reporting Title IX violations, information regarding alleged retaliation must also be reported. Retaliation against any person(s) who in good faith reports a crime, makes a report of an alleged Title IX violation, brings a disciplinary complaint, pursues legal action, or participates in an investigation or is a witness in any investigation or proceeding is strictly prohibited and will not be tolerated. Those who engage in retaliation will face University disciplinary action up to and including suspension or dismissal. Allegations of retaliation should be reported to a Deputy Title IX Coordinator.

## Limited Amnesty

While the University does not condone underage drinking or violation of other University policies, it considers reporting sexual misconduct and interpersonal violence to be of paramount importance. To encourage reporting and adjudication of sexual misconduct and interpersonal violence, Miami University extends limited amnesty to students who have been victims/survivors of such conduct. The University will generally not seek to hold the student responsible for a violation of the law (e.g., underage drinking) or Code of Student Conduct during the period immediately surrounding the sexual misconduct or interpersonal violence

# IV. Reporting Violations

All reports or concerns about conduct that may violate Title IX should be reported to:

## Deputy Title IX Coordinator for Students

Ms. Rebecca Getson serves as the University's Deputy Title IX Coordinator for Students and Sexual Assault Response Coordinator for matters related to Oxford and Luxembourg campus Title IX violations. This includes sexual misconduct, interpersonal violence and sexual harassment. Ms. Getson may be reached at 104 Health Services Center, Miami University, Oxford, Ohio 45056, 513-529-1870 or getsonra@MiamiOH.edu.

## Deputy Title IX Coordinator for Regional Campus Students

Ms. Bennyce Hamilton, Regional Director of Diversity and Multicultural Services, is the University's Deputy Title IX Coordinator for matters related to regional campus student Title IX violations. This includes sexual misconduct, interpersonal violence, and sexual harassment.  Ms. Hamilton may be reached at 117 Rentschler Hall, 1601 University Boulevard, Hamilton, Ohio 45011, or 144 Johnston Hall, 4200 N. University Boulevard, Middletown, Ohio 45042, 513-785-3283 or hamiltbe@miamioh.edu.

Miami University encourages students who have been the victim/survivor of  sexual misconduct or interpersonal violence to pursue criminal charges against the person or persons they believe to have committed the crime. A criminal charge and a University investigation may be pursued at the same time. Victim/survivor support and resources are available regardless of criminal charges, University investigations, or University disciplinary action.

If the victim/survivor is incapacitated for any reason and unable to report, a report should be made on behalf of the victim/survivor. Reports may be made by victims/survivors or others on their behalf.

Anonymous reports will be accepted; however, the University's options for investigating or resolving anonymous reports may be limited because of the unique challenges presented.

***Important Personal Safety Note:*** *If a person is dealing with a stalking or domestic/dating violence situation, it is important to take precautions when accessing any kind of support. In some circumstances, stalkers and/or abusers may access phone or computer records. When possible, people in these situations may want to use public computers or phones to seek out information. It is also good to safeguard your information by frequently changing passwords to random, unpredictable ones. It may also be helpful to think about steps that can be taken to keep information away from individuals (e.g., keeping things with a friend or getting mail at a different address.)*

## Romantic and Sexual Relationships in the Instructional and Supervisory Contexts

The University discourages romantic and sexual relationships between supervisor and employee or employee and student. In the event of an allegation of sexual harassment, the University will carefully scrutinize any defense based on a claim that the relationship was consensual when the facts establish that an academic or employment power differential existed within the relationship. (See Romantic and Sexual Relationships, http://blogs.miamioh.edu/miamipolicies/?p=2195)

# V. Confidentiality

Miami University will preserve the student's and other necessary parties' confidentiality to the extent possible and allowed by law.

## A. Confidential Reporting

A person may speak confidentially with certain persons in legally protected roles including the following:

- Women Helping Women (rape crisis counselors) are available 24 hours a day at 513-381-5610 or toll-free at 877-889-5610 and on campus during office hours at the Shriver Center or 513-431-1111 (call or text).
- Counselors at Miami's Student Counseling Service (513-529-4634); after hour's emergencies by calling the Miami University Police at 513-529-2222 or 911 and asking for the on-call counselor.
- Medical staff at Miami's Student Health Center (513-529-3000).
- Off-campus with clergy, counselors, and physicians, including McCullough-Hyde Memorial Hospital (513-523-2111), where a Sexual Assault Nurse Examiner (SANE) is available.

A confidential report will not result in a report to law enforcement or a University investigation. It will not be reported to the Title IX Coordinator, a Deputy Coordinator, or to the Office of Ethics and Student Conflict Resolution.

**B. Non-Confidential Reporting and Recordkeeping**

Ohio law requires those not in a legally protected role with knowledge of a felony to report it to law enforcement. Miami personnel including the Title IX Coordinator, Deputy Title IX Coordinators, Resident Assistants and professional residence life staff, are required to  notify the Miami University Police  of any report of  sexual misconduct or interpersonal violence, Conduct reported to the Miami University Police that may be a Title IX  violation, will, be reported it to the  appropriate

Deputy Title IX Coordinator. A report to the Miami University Police or other law enforcement agency does not require the victim/survivor to pursue criminal charges. A victim/survivor is not under an obligation to speak with the authorities, even when the conduct is reported to the authorities. Miami University will comply with a student's request for assistance in notifying authorities.

For sexual misconduct or interpersonal violence that may also constitute a criminal offense that **occurred on the Oxford campus**, contact the Miami University Police Department directly at 911 (or 9-911 from a campus phone) or 513-529-2222 (non-emergency) to file a police report. Miami University Police officers will respond quickly, with sensitivity and compassion (See Promises to Victims of Crime at http://miamioh.edu/police/services/victimservices/index.html). Regional Campus students should report to local law enforcement (Hamilton Campus- Hamilton Police at 513-868-5811, Middletown Campus- Middletown Police 513-425-7700, VOA- West Chester Police, 513-777-2231, Greentree Health Science Academy- Middletown Police, 513-425-7700, Luxembourg- Police Grand-Ducale, Luxembourg, +352 4997-1)

To report a criminal offense that **occurred off-campus**, contact the local police in the area the offense occurred or call 911 (emergency).

Upon request, a Deputy Title IX Coordinator and Miami University Police will assist victims/survivors in obtaining protection or restraining orders.

Upon request, a Deputy Title IX Coordinator, or the Miami University Police will assist students in notifying the Oxford Police or other appropriate police department of an off-campus offense.

For definitions of criminal offenses, please see Appendix A.

The Miami University Police, the Deputy Title IX Coordinators and the Oxford Police Department share information on a need-to-know basis under an Information Sharing Agreement that may be found at http://miamioh.edu/_files/documents/police/Mutual_Aid_OPD_MUPD_Info_Sharing_508.pdf.

Please note, a delay in reporting to police could weaken or result in a loss of evidence used to determine whether an individual is responsible for a criminal offense. In the State of Ohio individuals may have up to 20 years to file a sexual assault report with the police.

Even if a victim/survivor does not specifically request their information remain confidential, the University will seek to protect the confidentiality of the victim/survivor. When possible, the University will complete publicly available recordkeeping without personally identifying information about the victim/survivor (e.g. first and last name, home or physical address, contact information email, telephone, and fax, social security number, driver's license number, passport number, student identification number, date of birth, racial or ethnic background or religious affiliation.). The Annual Security Report, Crime Log, and any other publicly available documents will not disclose the victim/survivor's name, address, contact information, social security number, license/passport/student identification number, or any other personally identifiable information.

## Police Reports

Police reports are open for inspection and copying under Ohio's Public Records Act. The extent to which Miami University can protect the identity of a victim/survivor contained in police reports is not absolute; however the University uses its best efforts to protect the identity of the victim/survivor and the intimate details of the report. Ohio law specifically permits the University to withhold the identity of an uncharged suspect.

Initial police incident reports and Campus Security Authority reports do not include personally identifying information ( e.g. first and last name, home or physical address contact information email, telephone and fax, social security number, driver's license number, passport number, student identification number, date of birth, racial or ethnic background or religious affiliation of the victim.)

A student arrested for certain criminal offenses, including rape, sexual battery, gross sexual imposition and domestic violence may be subjected to a "1219" proceeding. "1219" refers to the section of Ohio law in which provides for the suspension and dismissal of students arrested and convicted of crimes of violence that occur on or affecting University persons or property. The initiation of a "1219" proceeding against a student does not prohibit the University from investigating and taking University disciplinary action against the same student under the Code for the same conduct that gave rise to the "1219" proceeding. Additional information about "1219" procedures is in the Student Code of Conduct.

## University Records-FERPA

The Family Educational Rights and Privacy Act (FERPA) protects students' educational records, including reports made to the Title IX Coordinator, a Deputy Title IX Coordinator or the Office of Ethics and Student Conflict Resolution. FERPA prohibits the University from releasing these records to persons outside the institution without the student's consent except in response to a lawful subpoena or as otherwise required by law. However, if the student is found responsible for violating the Code of Student Conduct-Sexual Misconduct and Interpersonal Violence or in some instances Physical or Mental Abuse or Harm, the University may release the following information to anyone:

- Name of the student-offender (but not the identity of the victim/survivor)
- Code of Student Conduct violation (e.g., Section 103A)
- Sanctions imposed as a result of the disciplinary proceedings

# C. Requests for Confidentiality

Reporters (or the victim/survivor if different from the reporter) may request confidentiality. The University takes such requests seriously; however, such requests may severely limit the University's ability to investigate and take reasonable action in response to a report. In such cases, the Deputy Title IX Coordinator, in consultation with the Title IX Coordinator, will evaluate the request for confidentiality in the context of the University's commitment to provide a reasonably safe and non-discriminatory environment.

In order to evaluate a request for confidentiality, the Deputy Title IX Coordinator, in consultation with the University's Title IX Coordinator, Ms. Kenya Ash, Director of the Office of Equity and Equal Opportunity, Hanna House, 513-529-7157 or ashkd@miamioh.edu, may conduct a preliminary review into the alleged violation and weigh the request against the following factors:

- Seriousness of the alleged violation (including whether the violation involved the use of a weapon, other illegal activity, illegal drug or intoxicant, multiple accused persons, etc.).
- Whether there have been other complaints/reports made regarding the accused (e.g., a history of arrests, a record of misconduct at Miami or other institutions).
- Accused's right to access the complaint/report including the victim/survivor's identity.
- Applicability of any laws requiring disclosure.
- Availability of other information to support the alleged violation.
- Whether the circumstances suggest there is an increased risk of the accused committing additional Title IX violations (e.g., a pattern of behavior).

- Whether the alleged perpetrator has threatened the victim/survivor or others.
- Safety of the reporter and victim/survivor.

If the reporter (or victim/survivor if different from the reporter) insists that their privacy be protected and that their name or other identifiable information not be disclosed to the accused, the Deputy Title IX Coordinator will advise the reporter and/or victim/survivor of the University's limited ability to respond to the report. An accused has a right to know the name of the reporter (or victim/survivor if different from the reporter) and information regarding the nature of the allegations in order to defend against the report; thus the University may not be able to both investigate a report and maintain the confidentiality of the reporter (or victim/survivor if different from the reporter). If the request for confidentiality is granted, the University will not conduct a formal investigation. However, the University may take other steps to end the harassment, limit the effects of the alleged harassment or discrimination and prevent its recurrence. Under some circumstances, the Title IX coordinator and Deputy Title IX Coordinator may determine the University has an obligation to formally investigate a report, such as when there is a risk to the campus community. The victim/survivor will be informed of the decision to formally investigate.

# VI. Crime Alerts/Emergency Notification

If a report of a sexual misconduct or interpersonal violence indicates there is an immediate threat to the health or safety of persons on campus or that an on-going serious or continuing threat to the campus community exists, an Emergency Notification or a Campus Crime Alert will be issued. The purpose of a Campus Crime Alert is to enable persons to protect themselves, heighten safety awareness, and seek information that will lead to an arrest and conviction of the perpetrator. **The Emergency Notification or Crime Alert will not include the victim's/survivor's name and other personally identifying information.**

For more information on the Clery Act, Campus Crime Alerts, and Emergency Notifications, go to http://miamioh.edu/campus-safety/annual-report/index.html.

Statistics regarding reports of sexual misconduct and interpersonal violence are included in the Annual Security and Fire Safety Report/Crime Statistics at http://miamioh.edu/campus-safety/crime-stats/index.html.

# VII. Resources and Support Services

Miami University provides a number of resources and support services to any student who has been the victim/survivor of a sexual misconduct or interpersonal violence. Students are encouraged to seek support and obtain medical attention.

Upon receipt of a report, the Deputy Title IX Coordinator provides written notification to students about existing counseling, health, mental health, victim advocacy, legal assistance, visa and immigration assistance, student financial aid, and other services available to victim both within the University and the community. The University provides written notification to victim/survivors about options for and available assistance in, and how to request changes to academic, living, transportation and working situation or protection measures.

## A. Medical and Counseling Resources

**Medical Treatment**

A person who has been the victim/survivor of sexual misconduct or dating or domestic violence is urged to seek appropriate medical evaluation immediately, ideally within 96 hours (4 full days) of the incident.

For life-threatening conditions, call 911 (9-911 from a campus phone) or go to the nearest hospital emergency department. In Oxford, McCullough-Hyde Memorial Hospital has a trained Sexual Assault Nurse Examiner (SANE) who can help. Most area hospitals have a Sexual Assault Nurse Examiner (SANE) that will respond.

## Medical—Legal Evidence Collection

A person who has experienced a violation is encouraged to request collection of medical/legal evidence. Prompt collection of physical evidence is essential should a person later decide to pursue criminal prosecution and/or a civil action. Collection of evidence may involve interaction with police and a police report. It is the decision of the victim/survivor whether to speak with the police or not, even if the police are notified about the alleged violation.

If the sexual assault occurred within 96 hours (4 full days), a free and confidential exam can be administered at most local hospitals. The sooner the sexual assault is reported, the more likely evidence will still be present. "Date rape" drugs, including rohypnol and GHB, may still be present in the victim/survivor's system and should be tested for if the victim/survivor believes they may have been drugged. To help preserve evidence that may assist in proving the alleged violation/offense or obtaining a protection order, the victim/survivor is encouraged to put any soiled clothes in a paper (not plastic) bag, and to refrain from the following:

- Bathing or douching
- Washing hands or face
- Urinating
- Drinking any liquids
- Smoking, eating, or brushing teeth (including mouthwash and flossing)

If an individual is uncertain about whether or not they want to report what has occurred, they can still have evidence collected. In cases of sexual assault or severe injuries, the police will be called to the hospital. The victim/survivor can decide whether or not to speak with the police at that time to officially report what has happened.

While evidence may be collected anonymously (i.e., without the victim/survivor's name attached to it) and/or when there is no report made to police, these cases are handled differently. A discussion about the merit of collecting evidence "anonymously" and in instances where the victim/survivor does not want to report should be discussed with medical personnel and/or an advocate.

Questions about evidence collection can be directed to Women Helping Women to at 513-381-5610 or 877-889-5610 or the Sexual Assault Nurse Examiner (SANE).

SANE of Butler County provides medico-legal examination and treatment of reported sexual assault cases. SANE of Butler County responds to area hospitals, including:

- Fort Hamilton Hospital, 630 Eaton Ave, Hamilton, OH 45013, (513) 867-2000
- McCullough Hyde Memorial Hospital, 110 N. Poplar St, Oxford, OH 45056, (513) 523-2111
- Mercy – Fairfield Hospital, 3000 Mack Rd, Fairfield OH 45014
- West Chester Hospital, 7700 University Dr, West Chester Township, OH 45069, (513) 298-3000
- Atrium Medical Center, 1 Medical Center Dr, Middletown, OH 45005, (513) 424-2111

## Confidential Counseling/Advocacy Resources

Counselors at a variety of agencies both on and off campus can help a person decide what steps to take, such as seeking medical attention, preserving evidence, obtaining counseling, and reporting to authorities. Information, support and advice are available for anyone who wishes to discuss issues related to Title IX violations, whether or not a Title IX violation has actually occurred, whether or not the person seeking information has been a victim/survivor of a Title IX violation, has been accused of a Title IX violation, or is a witness or other affected person.

**On Campus\***

- Oxford Campus Student Counseling Service, 513-529-4634 (normal business hours)
- Hamilton Campus Counseling, 513-785-3211
- Middletown Campus Counseling, 513-727-3431
- On-call University counselors (through University police dispatcher), 513-529-2222

*\* Professional staff members who are legally obligated to maintain confidentiality work at these offices. Meeting with one of these staff members does not begin the reporting process (see Section IV).* Student counseling services are available to victims/survivors, accused students and witnesses.

Counselors at their discretion may inform those they counsel of procedures for reporting crimes voluntarily for inclusion in Miami's annual security report.

In addition, confidential support for victim/survivors of sexual misconduct, stalking, dating violence, and domestic violence is available on campus through Women Helping Women at 6 S. 2nd Street, Floor 8, Hamilton, OH 45011, 24-hour Hotline: 1-877-899-5610 and on campus during office hours at the Shriver Center or 513-431-1111 (call or text).

**Off-Campus Victim/Survivor Advocacy**

Crisis intervention and assistance in reporting is available to victims/survivors 24 hours a day by calling the independent Women Helping Women at 513-381-5610 or toll-free at 877-889-5610 and on campus during office hours at the Shriver Center or 513-431-1111 (call or text). Women Helping Women advocates for and supports victims/survivors of all genders.

The National Sexual Assault Telephone hotline is available 24 hours a day at 800-656-HOPE (4673). This hotline, operated by RAINN, connects a caller with a local RAINN affiliate organization based on the first six digits of the caller's phone number.

Domestic violence, dating violence and stalking services for victim/survivors including assistance in reporting, advocacy, and groups is available through the Dove House, YWCA Hamilton, 244 Dayton St., Hamilton, OH at 1-800-618-6523.

Ohio's Sexual Violence Helpline is available at 1-844-OHIO-HELP (1-844-644-6435). This helpline is a confidential, statewide hotline dedicated to serving survivors of sexual assault and relationship violence.

# B. Support Services

Miami University provides a number of support services, upon request, to students who have been victims/survivors of Title IX violations. Students may, upon request, obtain interim support services, such as changing academic, residential, working, and transportation circumstances from the Deputy Title IX Coordinator. The University will make such accommodations or provide such protective measures if the victim/survivor requests them and if they are reasonably available. **No police**

**report, disciplinary complaint or investigation need occur before this option is available. The Deputy Title IX Coordinator will exercise discretion and sensitivity about sharing the identity of the victim/survivor when arranging for interim support services. A victim/survivor can access these services at any time, even if the student initially declined the service.**

**The Deputy Title IX Coordinator will maintain as confidential any support services or protective measures provided to the victim/survivor to the extent that maintaining such confidentiality would not impair the ability of the University to provide the support services or protective measures.** There may be times when the University must disclose some information about the victim/survivor to a third party in order to provide accommodations or protective measures. This information will be limited only to what and who is needed to complete the accommodation/protective measure. The Deputy Title IX Coordinator will consult with the Dean of Students or Regional Dean of Students to determine what information will be disclosed and to whom based upon the accommodation/protective measure information including: specific request, expressed need, availability, and limiting the sharing of information. When possible, the Deputy Coordinator will consult with the victim/survivor regarding what and with whom the information will be shared prior to sharing the information.

A determination of a Health and Safety Emergency under FERPA will take priority over accommodations and protective measure confidentiality determinations.

Upon receipt of a report, the Deputy Title IX Coordinator will reach out to meet with the victim/survivor in order to:

- Assist the student in immediately attending to any medical needs. The Deputy Coordinator can arrange for a professional to accompany the student to the hospital if requested by the student.
- Assist the student in contacting a support person such as a friend or parent if desired.
- Assist the student in obtaining a University no contact order or a court-issued restraining order or other lawful order of protection.
- Provide information on medical and psychological resources available.
- Provide a temporary safe space within the University residence halls (available to Oxford students).
- Change residence hall assignments so that the parties do not share the same residence hall (available to Oxford residential students).
- Change class assignments so that the parties do not share the same classes (available to instructional staff and students).
- Provide academic support services including tutoring.
- Change working conditions.
- Provide transportation/parking options.
- Assist the student in filing a complaint with the Miami University Police if on-campus and Oxford Police or other appropriate police department if off-campus. The Deputy Coordinator is required by law to notify appropriate law enforcement authorities of any sexual assault, or interpersonal violence reported to her.
- Inform the student of the right to have an investigation through the Office of Ethics and Student Conflict Resolution. If the accused is someone other than a student (e.g., a University employee, vendor, contractor or subcontractor), the Deputy Coordinator will inform the student of the right to have an investigation by the Office of Equity and Equal Opportunity. The University's processes address a much broader range of conduct than the criminal law.
- If the accused is a student at another college or university, the Deputy Coordinator will assist the student in reporting the conduct to the accused's home school.

For support services involving Oxford campus and Luxembourg students, contact the Deputy Title IX Coordinator, Ms. Rebecca Getson at 104 Health Services Center, 421 S. Campus Avenue, Oxford, Ohio, 45056, getsonra@miamioh.edu or 513-529-1870. She is available during regular business hours throughout the year to meet with students who need information or guidance about Title IX violations.

For support services involving Regional Campus students, VOA and Greentree students contact the Ms. Bennyce Hamilton may be reached at 117 Rentschler Hall, 1601 University Boulevard, Hamilton, Ohio 45011, or 144 Johnston Hall, 4200 N. University Boulevard, Middletown, Ohio 45042, 513-785-3283 or hamiltbe@miamioh.edu.Students will become aware of support, medical services, and reporting options.

## C. Immigrants or International Student Visa Information

There are certain legal protections available to immigrants or international students in the form of Visas, particularly the U visa and the T visa. The U visa provides temporary legal status and work eligibility for victim/survivors of certain crimes (including domestic violence, sexual assault, human trafficking, involuntary servitude, and other violations). The T visa provides victim/survivors of human trafficking and immediate family members with temporary legal status and work eligibility. These visas can be applied for when agreeing to assist law enforcement, unless an individual meets one of the exceptions. Additional information is available through the U.S. Department of Homeland Security U.S. Citizenship and Immigration Services: www.uscis.gov. For assistance, with this or other immigrant status questions, please contact Women Helping Women, 513-381-5610 or toll-free at 877-889-5610, or Legal Aid Society of Southwest Ohio, 513-241-9400 or toll-free 1-800-582-2682.

## D. Legal Assistance

Legal Aid Society of Southwest Ohio, 513-241-9400 or toll-free 1-800-582-2682. The Legal Aid Society of Southwest Ohio provides legal services to those struggling to recover from domestic violence, sexual assault, and stalking. Legal services include restraining orders, child support, custody, divorce, visitation restrictions, visa adjustments, and division of debts and property.

## E. Protection Orders and No Contact Orders

Women Helping Women (513-381-5610), the Center for Family Solutions (513-887-4303), the Miami University Police Department, (911(emergency) or 513-529-2222), and the Deputy Coordinator (513-529-1870) are all available to assist the student in obtaining an order of protection, a "no contact" order, a restraining order, or a similar lawful order issued by a criminal, civil, or tribal court, and/or a University no-contact order.

An individual who believes they have been the victim of a crime can request a court-issued order from the jurisdiction in which the crime took place and/or the accused individual is located.

- Criminal
    - Criminal Temporary Protection orders can be requested through the appropriate police departments and/or criminal court. These orders can typically be issued during an active criminal case against an alleged offender for a specific duration.
    - For additional information or to request a criminal protection order contact:
        - Police Departments: Miami University Police Department, Police Services Center, Oxford, 513-529-2222; Oxford Police Department, 11 S. Poplar St., Oxford, 513-523-4321; Hamilton Police

Department, 331 S. Front St, Hamilton, 513-868-5811; Middletown Police Department, 1 Donham Plaza, Middletown, 513-425-7700.

- Criminal Courts: Butler County Area I Court, 118 High St, Oxford, OH, 513-523-4748, Butler County Area II Court, 101 High St, Hamilton, 513-887-3459; Butler County Area II Court, 9577 Beckett Rd, West Chester, 513-867-5070; Hamilton Criminal & Traffic Court, 345 High St, Hamilton, 513-785-7300.

- Civil
    - An individual who has experienced or believes they are at risk of experiencing violence, threats, or abuse may apply for a civil protection order.  Protection order types generally include: domestic violence and stalking or sexually-oriented offense. There is no cost for obtaining a civil protection order.  Civil protection orders can be obtained through local courts, depending upon the location of the incident/accused individual.
    - In Butler County, an individual can petition for themselves or a family or household member at the following locations:
        - Domestic Violence petitions can be obtained and filed with the Domestic Relations Division, Butler County Court of Common Pleas, Government Services Center, 2nd Floor, 315 High Street, Hamilton, 513-887-3278.
        - Stalking or Sexually-Oriented Offense petitions can be obtained online or at the Clerk of Courts Office, Government Services Center, 5th Floor, 315 High Street, Hamilton, 513-887-3278.
        - Additional information regarding Butler County court-issued orders can be found at: http://www.butlercountyclerk.org/index.cfm?page=Legal_protectOrder.

After a court order is issued, the protected party should provide a copy of the court order to the Deputy Coordinator or the Dean of Students Office, 110 Warfield Hall, Miami University, Oxford and the Miami University Police Department.  Miami University will comply with a lawful Order of Protection upon receipt of the Order.

Any violation of a court-issued order should be promptly reported to the police.

A Miami University No Contact Order can be requested upon the initiation of or at any point during an investigation and/or hearing process. This request can be made to the Deputy Title IX Coordinator or directly to the Investigator/Conduct Officer.

Any violation of the Miami University No Contact Order should be reported immediately to the Office of Ethics and Student Conflict Resolution (OESCR), 9 Warfield Hall, 513-529-1417, oescr@miamioh.edu for action.  A violation of a No Contact Order may result in additional Code of Student Conduct charges..

## F. Protecting Directory Information

An individual's directory information can be protected and/or limited in two ways: online or through Miami's One Stop office.  To modify information online: log in to miamioh.edu/directory and choose which information to be hidden or viewable.  Through One Stop, an individual can opt out of the directory information (which prevents sharing with outside third parties) by making a request to the University's One Stop.

**Oxford Campus**
Campus Avenue Building, 301 S. Campus Ave., Oxford, OH 45056
OneStop@MiamiOH.edu, Phone: 513-529-0001, Fax: 513-529-0003

**Hamilton Campus**

102 Mosler Hall, 1601 University Blvd., Hamilton, OH 45011

RegOneStop@MiamiOH.edu, Phone: 513-217-4111, Fax: 513-727-3427

**Middletown Campus**

114 Johnston Hall, 4200 N. University Blvd., Middletown, OH 45042

RegOneStop@MiamiOH.edu, Phone: 513-217-4111, Fax: 513-727-3427

## G. Financial Assistance

A student may be financially impacted by a Title IX violation.  Financial services may be available through the following resources:

- Ohio Attorney General's Victims Compensation is available for "innocent victims of a violent crime." Individuals can obtain additional information and/or apply online through the Attorney General's website: http://www.ohioattorneygeneral.gov/VictimsCompensation.aspx
- For information regarding Miami University's financial aid, please see the financial aid website: http://miamioh.edu/finaid/

# VIII. Investigation and Disciplinary Action

## A. Investigation and Review

Alleged Title IX violations involving accused students will be investigated by the Office of Ethics and Student Conflict Resolution (OESCR).  Alleged Title IX violations involving accused non-students will be investigated by the Office of Equity and Equal Opportunity (OEEO). The University will not mediate allegations of sexual misconduct or interpersonal violence.

The investigation is designed to provide a prompt, fair and impartial investigation of the report. The investigation is conducted by persons who receive annual training on issues related to Title IX violations and on conducting an investigation that protects the safety of students and promotes accountability.  The reported victim/survivor is not required to discuss issues directly with the accused. The investigator will contact all parties and witnesses to establish interview times and locations. Contact between the parties will be limited to necessity.

The complainant (or reported victim/survivor if different from the complainant) and the accused have the right to be accompanied by an advisor, including an attorney or advocate, to any related meeting or proceeding. The role of the advisor is only to be present to advise; they will not be provided documentation or permitted to interject during the meeting. If the advisor is determined to be unreasonably interfering with the investigation, they may be asked to leave.

The complainant (or the reported victim/survivor if different from the complainant) and the accused are entitled to the same opportunity to file a written statement, to submit information, and to identify relevant witnesses. Confidential medical/counseling records and information regarding the reported victim/survivor's sexual history with others will not be provided to the accused without the written consent of the victim/survivor.

The purpose of the investigation is to ascertain whether reasonable cause exists to believe a Title IX violation occurred and what responses need to occur. The standard of review used to determine responsibility on campus is a "preponderance" standard. This determination is based on the greater weight of the information and does not require a standard beyond a

reasonable doubt. At the conclusion of the investigation, the investigator will prepare a written report of the findings of the investigation.

During any stage of the investigation, if the investigator reasonably suspects that the accused poses an imminent threat of harm or disruption to the campus community, the investigator will notify the Miami University Police, the Deputy Title IX Coordinator, and the Dean of Students, who may initiate the summary suspension process under the Code of Student Conduct to immediately remove the accused from campus and/or impose other restrictions.

The reported victim/survivor and the accused will simultaneously be provided with a copy of the investigative report. The parties will be given timely and equal access to information that will be used during any subsequent disciplinary meetings and hearings.

## Remedial Actions

If the investigation finds reasonable cause to believe that a Title IX violation occurred, the University will take immediate steps to stop the misconduct, prevent any further Title IX violations, remedy the effects of the misconduct and prevent retaliation. Remedial action includes providing support services (see Section VII.B) to the reported victim/survivor. Other remedial measures include training on Title IX violations, increasing security in a designated space, no-contact orders, no shared classes or labs, and/or required education/training of the accused.  If the accused is a student, disciplinary action will be initiated against the accused student.

If the investigator is unable to conclude that the information obtained establishes a reasonable basis to believe that a Title IX violation occurred, the reported victim/survivor may still initiate a disciplinary complaint against the accused under Section VIII. B. below.

If the investigator finds there is no reasonable cause to believe that a violation of Title IX occurred no disciplinary action may be initiated. The failure to find reasonable cause is not equivalent to a false allegation.

# B. Disciplinary Action – Office of Ethics and Student Conflict Resolution

If the investigation finds reasonable cause to believe a Title IX violation occurred or is unable to conclude a Title IX violation occurred and the   reported victim/survivor desires to proceed a disciplinary complaint will be filed following the investigation with the Office of Ethics and Student Conflict Resolution (OESCR), at 11 Warfield Hall, Miami University, Oxford, Ohio 45056, 513-529-1417. The University reserves the right to pursue disciplinary action if the University believes there is sufficient information to proceed without the participation of the reported victim/survivor.

## Summary Suspensions

An accused student may be summarily suspended from campus pending the investigation or disciplinary proceedings. Summary suspensions may prohibit the student from all or part of University property and activities or permit the student to remain only under specified conditions (e.g., no-contact orders.) See the Code of Student Conduct for full details on Summary Suspensions without Prior Notice or Hearing and Summary Suspension With Notice and Hearing.

## Disciplinary Hearings

Disciplinary hearings for Title IX violations will be held before a trained Administrative Hearing Panel (two faculty and one staff member.) The hearings are designed to provide a prompt, fair and impartial resolution of the disciplinary complaint. The hearings are conducted by people who receive annual training on issues related to Title IX violations and on conducting a hearing process that protects the safety of students and promotes accountability. Training is defined in section C below.

Both the complainant and the accused are entitled to the same opportunity to file a written statement, to submit information, and to present relevant witnesses. Both the complainant and the accused are entitled to access information that will be used at the hearing, to present relevant witnesses and other information and to have others present, including a support person and an advisor (including an attorney or advocate) of their choice, during the hearing, and to appeal. The role of the support person and advisor is only to be present; they will not be provided documentation or permitted to interject during the disciplinary hearing. If a support person or advisor is determined to be unreasonably interfering with the hearing, they may be asked to leave.

Confidential medical/counseling records and information regarding the victim/survivor's sexual history with others will not be provided to the accused and is not admissible at any disciplinary proceeding without the victim/survivor's written consent. The questioning of the parties will be conducted through the Administrative Hearing Panel.

The University will accommodate concerns for personal safety, well-being, and/or concerns regarding confrontation among the complainant (and the victim/survivor if different from the complainant), the accused student(s) and other witnesses by providing separate facilities, by using a visual screen or permitting participation by closed circuit TV, video conferencing, written statement or other means.

Both the complainant and the accused will be simultaneously informed in writing of the outcome of each stage of the disciplinary proceedings and of their right to appeal. The parties will be notified of the procedures for appeal, the results of any appeal, any change to the result and when such results become final. The result will include rationale for the result and any sanctions.

For more information see-Expectations for Complainants and Accused Persons

## Standard of Review

The standard of review used to determine responsibility is a "preponderance" standard. This determination is based on the greater weight of the information and does not require a standard beyond a reasonable doubt. The policies, procedures, and sanctions outlined in the Code of Student Conduct apply to all violations of the Code of Student Conduct. The Code of Student Conduct can be found in the Student Handbook on the University's website at http://miamioh.edu/student-life/oescr/code-of-conduct/index.html.

## Disciplinary Sanctions

Sanctions against a student include suspension and dismissal and vary depending on the severity of the violation and the accused's conduct history. The recommended sanction for Title IX violations is often dismissal. Possible sanctions for Title IX violations include: dismissal, suspension, removal from campus housing, educational intervention, no-contact orders, and/or restrictions from participating in intercollegiate athletics or co-curricular activities.

## Possible Code of Student Conduct Sanctions:

- **2.2.A Dismissal and Suspension/Revocation of Recognition:**
  - **Dismissal** is a sanction which permanently separates the student from the University without any opportunity to re-enroll in the future. Suspension is a sanction that terminates the student's enrollment for a specified period of time. The Dean of Students or designee will determine the effective date of the suspension (either at the conclusion of the disciplinary process or at the close of the current semester/term) for a minimum of either fall or spring semester and may also include summer and/or winter term. (*Note that a student may not be suspended solely for either summer and/or winter term.*)

- **Suspension** of a student organization or fraternity or sorority is a revocation (withdrawal) of University recognition. During a period of revocation, a student organization or fraternity or sorority forfeits all the rights and privileges afforded to them by University policy. A student organization or fraternity or sorority whose recognition has been revoked must petition for reinstatement of recognition. Conditions for reinstatement of recognition will typically be outlined in the original sanction.

- **2.2.B Conditions of Suspension and Dismissal**

  - A student who has been dismissed or suspended from the University is denied all privileges afforded a student and must vacate campus at a time determined by the Dean of Students or designee. In addition, students who are dismissed or suspended may not enter any Miami University campus/or other University property at any time for any reason in the absence of the express written consent of the Dean of Students or designee. To seek such permission, a suspended or dismissed student must file a written petition with the Office of Ethics & Student Conflict Resolution for entrance for a limited, specific purpose. Academic credit earned elsewhere during a period of suspension will not be accepted in transfer. A student who has been suspended must petition for re-enrollment. Incomplete grades may not be removed during periods of suspension or dismissal.

- **2.2.C Disciplinary Probation**

  - Disciplinary Probation indicates the behavior of a student, student organization, fraternity or sorority has resulted in a sanction that is close to suspension. It is imposed for a definite period of time and may include disciplinary restrictions. A student or representatives of an organization, fraternity or sorority on probation may be required to meet periodically with a person designated by the Office of Ethics and Student Conflict Resolution.

- **2.2.D Disciplinary Restrictions**

  - Disciplinary Restrictions may be imposed with or without suspension, revocation of recognition, or probation. Disciplinary Restrictions include but are not limited to:

1. Restrictions from participating in intercollegiate athletics, extracurricular activities, and residence life activities;
2. Restrictions in the right of access to campus facilities, including residence halls;
3. Monetary payments for purpose of restitution or to cover the expense of educational sanctions;
4. Required University service;
5. No-contact/restraining orders;
6. Denial of financial assistance from programs funded by the University;
7. Removal from or reassignment of University housing;
8. Required attendance at educational/assessment programs, such as anger management workshops and comprehensive substance abuse assessments;
9. Administrative hold on access to specified University documents;
10. Loss of University privileges including, but not limited to, parking and computing/email resources;
11. Revocation of the right to the use of University facilities, University funding, or other privileges for a defined period of time;
12. Planning of and attendance at educational programming;
13. Prohibition of participation in or sponsorship of social, intramural, or other activities or events.

# Appeal Process

Both the complainant and accused have the right to appeal on the basis of alleged procedural error, new information and/or inappropriate sanction using the appeal process in the Code of Student Conduct.

## Interests of the Accused

It must be recognized that the accused person in a University investigation has legal and other rights, and that complaints in which each of the parties are members of the campus community are the most ethically and legally complex. A presumption of responsibility should not be made as the result of any allegations. In the event that a student is accused of a Title IX violation and a disciplinary complaint is filed, the accused will be encouraged to seek guidance from a member of the University community and is entitled to the same information as the complainant. Counseling and/or support are available to the accused student through the University's Student Counseling Service. An accused student has a right to know the name of the reporter (and victim/survivor if different from the reporter) and information regarding the nature of the allegations in order to respond to the complaint; thus the University may not be able to pursue discipline and maintain the confidentiality of the reporter (and victim/survivor if different from the reporter). The University may take other steps to end and remedy the effects of the alleged harassment or discrimination and prevent its recurrence.

## Timeline

The University is committed to addressing all complaints of Title IX violations in a prompt and equitable manner.

A typical investigation and disciplinary action will take approximately 60 calendar days following receipt of the report. This will vary depending on such factors as the complexity of the investigation and the severity and extent of the alleged violation. When the following time frames cannot be met in an individual case the parties will be informed when and why they will not be met:

- Investigation of the report to be conducted within 30 days,
- Disciplinary hearing to determine responsibility to be held within 20 days
- A determination of the actions the University will take to eliminate the hostile environment, prevent its recurrence, and remedy its discriminatory effects, including imposing sanctions against the accused and providing remedies for the victim /survivor and University community, as appropriate, and issue a written notice of the decision to be issued within 10 days.

The timeline may also be affected by the unavailability of witnesses, holidays, winter or spring break periods and summer or winter terms.

**See the Code of Student Conduct for full details on the Office of Ethics and Student Conflict Resolution process.**

It is a violation of this Protocol to knowingly make a false allegation of a Title IX violation. However, failure to prove a claim is not equivalent to making a false allegation. It is also a violation of this Protocol for an accused or other person to knowingly make a false statement as part of the investigation or disciplinary hearing.

# C. Annual Investigation Training

Officials who investigate, are involved in conduct decision-making, or conduct proceedings regarding sexual assault, dating violence, domestic violence, stalking and sexual harassment receive annual training regarding the following:

- Relevant evidence and how it should be used.
- Proper techniques for questioning witnesses.
- Basic procedural rules for conducting a proceeding and/or investigation.
- Avoiding actual and perceived conflicts of interest.
- Role of drugs and/or alcohol.

- Standard of evidence.
- Conducting hearings that protect the safety of victims and promote accountability.
- Effects or use of medical/forensic information and criminal/civil proceedings.
- Dynamics and impacts of domestic violence, dating violence, sexual assault, and stalking.
- Trauma reactions.

# IX. Legal Options

In addition to University disciplinary action, a person who engages in a Title IX violation may be the subject of criminal prosecution and/or civil litigation. A police report must be made for criminal prosecution to be considered by the local prosecuting attorney. The chances of successful prosecution are greater if the report is timely and is supported by the collection of medical and/or legal evidence.

The Legal Aid Society of Southwest Ohio, 513-241-9400 or toll-free 1-800-582-2682, provides legal services to those struggling to recover from domestic violence, sexual assault, and stalking.

Complaints may also be filed with the United States Department of Education Office for Civil Rights or by consulting an attorney at the person's own expense. See http://www2.ed.gov/about/offices/list/ocr/docs/howto.html.

# X. Education and Prevention

The Division of Student Affairs creates, supports, and evaluates education and support programs aimed at the eradication of Title IX violations involving the Miami community. To support these programs, the Deputy Coordinator will coordinate Title IX violation education, awareness, and prevention programs. Through this commitment, the Division of Student Affairs shall educate students about the following:

- Title IX Protocol and the University's commitment to enforce it.
- Code of Student Conduct and *MUPIM*, where applicable.
- Miami University prohibits the crimes of dating violence, domestic violence, sexual assault, and stalking as those terms are defined for purposes of the Clery Act.
- Steps to minimize individual risk of sexual assault, sexual misconduct, domestic violence, dating violence and stalking, including crime alert reduction tips, safety tips, and healthy relationship education.
- Process and responsibility for reporting Title IX violations.
- Awareness and resources for students who have been victim/survivors of Title IX violations and for those accused of Title IX violations.
- How to be a knowledgeable and supportive peer presence, including bystander intervention education that provides safe and positive options through recognizing, evaluating, and determining one of three options: direct action, distraction, or delegation.
- On-going wellness promotion programs that address issues including but not limited to sexual health and wellness, healthy relationships, violence prevention, and drug and alcohol education.
- Comprehensive, ongoing, universal campus-wide campaign: It's On Us.  This campaign is committed to creating an environment that promotes responsibility, dignity, and respect conveying that each one of us has the power to prevent violence, can step up to help each other, and has the ability to demonstrate love and honor by supporting and caring for our fellow Miamians.

Miami University requires all new incoming students to complete an online education program, *Haven-Understanding Sexual Assault*, through the education technology company Everfi. All other incoming students can access this prevention and awareness program, even if not required to take it. *Haven* uses a population-level approach to educate all students on the issues, primary prevention, and awareness associated with sexual assault and interpersonal violence, taking into account their unique perspectives and experiences, providing:

- Key definitions and statistics.
- Reflective and personalized content.
- Bystander skills and confidence-building strategies.
- Campus-specific policies, procedures and resources.
- Rich data summaries to inform future programming.

The Miami University Police foster a safe campus environment by doing the following:

- Providing safety and security patrols as part of regular University police/regional campus security responsibilities.
- Including Title IX Protocol information on its website and directly to victim/survivors who elect to file a police report.
- Accurately maintaining and reporting statistics of Title IX violations as required by the Jeanne Clery Campus Security Act.
- Working with Facilities Management to provide adequate lighting on campus.
- Working with Telecommunications to provide sufficient emergency phones on campus.

Other information sources including the following:

- Annual Security and Fire Safety Report
- Sexual Assault and Interpersonal Violence

- If It Happens to You or Someone You Know
- Acquaintance Rape Resource Guide

- No-Hate Initiative
- No-Hazing Policy
- Drug Free Policy
- Office of Student Wellness

# Appendix A -Ohio Criminal Offenses

## <u>Sex Offenses</u>

**There is currently no definition of "Sexual Assault" in the Ohio Revised Code.**

### Ohio Revised Code 2907.02 – Rape

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or

deception.

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

## Ohio Revised Code 2907.03 – Sexual Battery

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

(3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

(4) The offender knows that the other person submits because the other person mistakenly identifies the offender as the other person's spouse.

(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

(6) The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person.

(7) The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school.

(8) The other person is a minor, the offender is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the other person is enrolled in or attends that institution.

(9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.

(10) The offender is a mental health professional, the other person is a mental health client or patient of the offender, and the offender induces the other person to submit by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes.

(11) The other person is confined in a detention facility, and the offender is an employee of that detention facility.

(12) The other person is a minor, the offender is a cleric, and the other person is a member of, or attends, the church or congregation served by the cleric.

(13) The other person is a minor, the offender is a peace officer, and the offender is more than two years older than the other person.

## Ohio Revised Code 2907.04 – Unlawful Sexual Conduct w/a Minor

(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

## Ohio Revised Code 2907.05 – Gross Sexual Imposition

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

(2) For the purpose of preventing resistance, the offender substantially impairs the judgment or control of the other person or of one of the other persons by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(3) The offender knows that the judgment or control of the other person or of one of the other persons is substantially impaired as a result of the influence of any drug or intoxicant administered to the other person with the other person's consent for the purpose of any kind of medical or dental examination, treatment, or surgery.

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

(B) No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

## Ohio Revised Code 2907.06 – Sexual Imposition

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.

(3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.

(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.

(5) The offender is a mental health professional, the other person or one of the other persons is a mental health client or patient of the offender, and the offender induces the other person who is the client or patient to submit by falsely representing to the other person who is the client or patient that the sexual contact is necessary for mental health treatment purposes.

## Domestic Violence

### Ohio Revised Code 2919.25 – Domestic Violence

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

(B) No person shall recklessly cause serious physical harm to a family or household member.

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

## Dating Violence

**There is currently no definition of "Dating Violence" in the Ohio Revised Code.**

### Ohio Revised Code 2903.11 – Felonious Assault

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

(B) No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly do any of the following:

(1) Engage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct;

(2) Engage in sexual conduct with a person whom the offender knows or has reasonable cause to believe lacks the mental capacity to appreciate the significance of the knowledge that the offender has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome;

(3) Engage in sexual conduct with a person under eighteen years of age who is not the spouse of the offender.

# Stalking

## Ohio Revised Code 2903.211 – Menacing by Stalking

(A)

(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

(2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, r-computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:

(a) Violate division (A)(1) of this section;

(b) Urge or incite another to commit a violation of division (A)(1) of this section.

(3) No person, with a sexual motivation, shall violate division (A)(1) or (2) of this section.

# Consent

Ohio Law does not define consent for sexual conduct. In general, non-consensual sexual conduct may constitute a crime. Ohio law includes the following regarding consent*:

- If the offender substantially impairs the victim's judgment or control by administering any drug, intoxicant or controlled substance to the other person surreptitiously or by force, threat of force or deception.
- The victim's ability to judge the nature of or control their own conduct is substantially impaired.
- The victim is coerced.
- The offender uses force or threat of force.
- The victim is unaware the act is being committed (e.g. unconscious).
- The victim's ability to consent is substantially impaired because of a mental or physical condition or because of advanced age.

*This is a non-exhaustive list and is not intended to provide legal advice. Persons should consult with law enforcement and prosecutors for advice.*

The following is a list of additional specific offenses under Ohio law that may fall under the broader categories identified above. This list is not exhaustive and, depending upon the circumstances of the crime and the individuals involved, other offenses could fall into these categories:

- Ohio Revised Code 2903.12 – Aggravated Assault
- Ohio Revised Code 2903.13 – Assault

- Ohio Revised Code 2903.14 – Negligent Assault
- Ohio Revised Code 2905.01 – Kidnapping
- Ohio Revised Code 2905.02 – Abduction
- Ohio Revised Code 2905.03 – Unlawful Restraint
- Ohio Revised Code 2917.11 – Disorderly Conduct
- Ohio Revised Code 2903.21 – Aggravated Menacing
- Ohio Revised Code 2903.22 – Menacing
- Ohio Revised Code 2917.21 – Telecommunications Harassment


- [If It Happens to You or Someone You Know](#)
- [Resource Guide](#)

*Translations*

- [汉语/漢語](#)
- [Español](#)


Revised 2017; Revised 2016

# Miami University Policy Library

Official administrative policies and procedures for Miami University

Exhibit B



## Code of Student Conduct

(Student Handbook 2.0/Graduate Student Handbook 1.6)

 

## Introduction

The Code of Student Conduct at Miami University is intended to foster and protect the central purpose of the University: the free and open exchange of ideas. This Code applies to Miami's undergraduate and graduate students, and student organizations, including Greek organizations. Students are subject to this Code of Student Conduct beginning at summer orientation, during academic terms for which they are enrolled, during breaks between terms, during University holidays and vacations, and during periods of suspension. The Code of Student Conduct outlines the rights and responsibilities of students, behaviors prohibited on and off campus, possible sanctions, and the procedural rights of students and student organizations.



The Code embraces several important values: the rights of free speech and peaceable assembly; the freedom of inquiry and the right to make constructive criticism; the central importance of honesty to this community; and the desire that all students participate on campus in an environment that respects differences of culture, gender, religion, race, age, sexual orientation, gender identity, national origin and ability.

The University is deeply committed to maintaining a disciplinary process that fully protects the rights of the institution, the complainant (and alleged victim if different from the complainant), and the accused student(s). The University reserves the right to supplement or alter the procedures in this Code at any time the University deems appropriate to protect the constitutional rights of the parties or to comply with state and/or federal law.

We expect every member of our community to conduct their affairs with integrity and high ethical standards. These expectations are best captured by the Miami Values Statement, adopted by the Miami University Board of Trustees in 2002:

"Miami University is a scholarly community whose members believe that a liberal education is grounded in qualities of character as well as of intellect. We respect the dignity of other persons, the rights and property of others, and the right of others to hold and express disparate beliefs. We believe in honesty, integrity, and the importance of moral conduct. We defend the freedom of inquiry that is the heart of learning and combine that freedom with the exercise of judgment and the acceptance of personal responsibility."

These values are at the very heart of this Student Code of Conduct. When students deviate from these ideals, our primary goal is to assist students in better understanding, internalizing, and acting on these values. In short, this Code assumes that members of our community are of high character and are committed to a life of integrity. In this spirit, we are committed as a community to help those who made poor decisions "get back on track."

Students who have questions about the Code of Student Conduct should call the Office of Ethics and Student Conflict Resolution at (513) 529?1417. All references to University offices are deemed reference to the most closely analogous offices at Miami University Hamilton (Student Services), and Miami University Middletown (Student Affairs), and the Voice of America Learning Center (Director's Office).

# The Code of Student Conduct

This Code applies to Miami's undergraduate and graduate students, and student organizations, including Greek organizations. The Code of Student Conduct primarily prohibits misconduct on University premises (buildings or grounds owned, leased, operated, controlled, or supervised by the University, including the Oxford campus, Miami University Dolibois European Center [see Appendix B], the Miami University Hamilton campus, the Miami University Middletown campus, and the Voice of America Learning Center; but may address off-campus conduct when the behavior or the presence of the individual, in the University's sole judgment, impairs, obstructs, or interferes with the mission, processes, or functions of Miami University. Students should be aware that Miami University reserves the right to review and take disciplinary action based on conduct occurring off campus or between academic periods. Additionally, while Miami University does not routinely monitor social networking sites and other electronic media, students should be aware that behavior on such sites when reported to the University may be investigated and adjudicated.

If a student, student organization, fraternity or sorority breaks a law that also violates Miami University Standards of conduct, that student may be held accountable by both civil authorities and the University. The University may at its sole discretion elect to pursue disciplinary action against the student in the absence of criminal charges, at the same time as criminal charges are pending, even if the criminal charges involving the same incident are not complete, have been reduced or are dismissed.

Any student, student organization, fraternity or sorority that is found responsible for violating the Code will be assessed an administrative fee of $50 per incident.

# Organizational Responsibility

Student organizations (defined in Part 5, Chapter 1, Section 5.1.A of *The Student Handbook*) and fraternities and sororities (defined in Part 5, Chapter 3, of *The Student Handbook*) are subject to the same conduct standards as individual students. Organizations are subject to this Code of Student Conduct at all times including, but not limited to, breaks between terms, during University holidays and vacations, and during periods of suspension of recognition.

An organization may be held responsible for a violation of University policy or rule when:

1. one or more of its officers, members, or authorized representatives acting as a member of the organization commit the violation;
2. the misconduct occurs at an event that is sponsored, financed, or endorsed by an organization where it is reasonable to believe that the organization's members knew or should have known that one or more of the participants engaged in conduct that is in violation of this Code;
3. the misconduct occurs on the premises owned, leased, or operated by the organization where it is reasonable to believe that the organization's members knew or should have known that one or more of the participants engaged in conduct that is in violation of this Code;

# Standards of Conduct

In order to promote a safe and civil campus environment, Miami University expects each student, organization, and fraternity and sorority to follow the standards of conduct. The severity of the offense, prior disciplinary history, whether an offense was committed against a person intentionally selected by reason of their sex (including sexual harassment, sexual violence, sexual misconduct, domestic violence, dating violence, or stalking), race, color, religion, national origin, disability, age, sexual orientation, gender identity, pregnancy, military status, or veteran status, and other relevant circumstances will be considered in determining the appropriate disciplinary action.

# "1219" Procedures

Ohio Revised Code Sections 3345.22 and 3345.23 procedures are commonly referred to as "1219" proceedings. The initiation of a "1219" proceeding against a student does not prohibit the University from taking University disciplinary action against that same student under the Code for the same conduct that gave rise to the "1219" proceeding. A student arrested for any of the defined offenses will automatically be subjected to the "1219" proceedings which are summarized below.

After a hearing which will be held no more than five days after arrest (continuances may be granted, which may not exceed a total of ten days), students arrested for one of the offenses defined in Ohio Revised Code 3345.23(D) are subject to immediate suspension from the University. Students convicted of any of the offenses enumerated in Ohio Revised Code 3345.23(D) are subject to automatic dismissal from Miami University. Students suspended or dismissed under these "1219" procedures are not permitted on University property without the express permission of the President or the Board of Trustees. Students dismissed upon conviction may be readmitted or admitted to any other Ohio tax-supported college or university, at the discretion of the college or university's board of trustees, but only after the lapse of one calendar year following dismissal and only upon terms of strict Disciplinary Probation (see Ohio Revised Code 3345.22 and 3345.23 for full text of the statutes and see Appendix B of the *Code of Student Conduct* for list of defined offenses of violence).

# Student Conduct Regulations

Offenses

Sanctions

Hearing Procedures

Appeals

Miscellaneous

Appendix – Supplementary Disciplinary Procedures

Revised 2015

Search Policies

SEARCH | OK

Notice

How to use the new Miami University Policy Library

## New/Revised Policies

2016-2017

Drug-Free Workplace

Minors on Campus

Nursing Mothers

Tuition Promise Appeals Committee

2015-2016

Electronic Records and Signatures

Infectious Disease

Miami University's Tuition Promise Guarantee

©2015 Miami University. All rights reserved.

POWERED BY PARABOLA & WORDPRESS.

# Miami University Policy Library

Official administrative policies and procedures for Miami University

☰

## Offenses

(Student Handbook 2.1)

A student may be suspended or dismissed for a single violation. Multiple violations or additional violations of the Code of Student Conduct may result in more severe sanctions. More than one sanction may be imposed for a single violation.* A single act may constitute a violation of more than one conduct regulation. Being under the influence of drugs or alcohol will not diminish nor excuse a violation of the Student Conduct Regulations.

The standard used to determine responsibility is a "preponderance" standard. The standard is met by the information that has the most convincing force; the greater weight of credible information. We consider all the information presented at the hearing (including any incident report, statements from the accused student(s) and the alleged victim, if applicable, and statements of witnesses or others with knowledge). A student is found responsible for violating the Code of Student Conduct if he or she accepts responsibility for the violation or the information demonstrates by a preponderance of the available information that the person is responsible. A Student Conduct hearing is an educational meeting—not a legal proceeding. This standard  essentially asks, "Is it more likely than not that our policy was violated?"

*Please note that there are minimum penalties in the case of alcohol-related offenses, hazing, and dishonesty offenses.*

## Interfering with a University Function (101) (Student Handbook 2.1.A)

Universities functions, on or off campus, are defined to include teaching, research, administration, disciplinary proceedings, University activities, public safety, and public service functions. This section also includes authorized non-university functions when the act occurs on University premises. Actions that interfere with, obstruct, or disrupt University functions are prohibited (see *The Student Handbook*, Part 5, Chapter 6, guaranteeing the right of expression of students).

## Dishonesty (102)* (Student Handbook 2.1.B)

Students are expected to act with honesty and integrity.  Students are expected to respond fully and truthfully to University officials acting in the course of their duties.  Lying or misleading university officials is prohibited. Failure to provide correct information or cooperate with University official (including the Dean of Students and Residence Life staff) when such officials are performing their duties, is prohibited.  Furnishing false information to any University official, faculty member, department, or office is also prohibited.  Interfering with a University investigation or student conduct proceedings by failing to provide requested information , by providing false testimony or by otherwise obstructing the investigation or proceedings is also prohibited.

Intentionally furnishing false information or omitting relevant or necessary information to gain a benefit, to injure, or to defraud is prohibited. Using or possessing false or altered identification (including driver's licenses and Miami University identification cards) is prohibited. Students may not use another person's University identification card for

any purpose. Examples of prohibited behavior include forgery, alteration, or falsification of any University documents or records, or misrepresentation of University credentials. These include grade transcripts, student identification, computer records, and other official documents. Using a forged or altered document is also prohibited, even if someone else made the changes. Student identification cards are University property and must be shown or surrendered when requested by a University official in performance of his or her duty.

*If the student has been found responsible for a previous act of academic dishonesty or for previously violating Section 102 (Dishonesty) of the Code of Student Conduct, the minimum sanction will be suspension for a minimum of either fall or spring semester and may also include summer or winter term (Note that a student may not be suspended solely for either summer and/ or winter term).*

# Interpersonal Violence (103) (Student Handbook 2.1.C)

## *Sexual Misconduct (103A) (Student Handbook 2.1.C.1)*

Any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent.

Consent

Consent is when a person agrees or gives permission to another person to engage in certain sexual acts.

What is consent?

- Consent is a knowing and voluntary verbal or non-verbal agreement between both parties to participate in each and every sexual act.
- Consent to one form of sexual activity does not imply consent to other or all forms of sexual activity.
- Conduct will be considered "non-consensual" if no clear consent, verbal or non-verbal, is given. The absence of no does not mean yes.
- A person has the right to change their mind at any time. In other words, consent can be withdrawn at any point, as long as the person clearly informs the other party of the withdrawal.
- Taking drugs or consuming alcohol does not relieve the obligation to obtain consent.
- A person is not required to physically or otherwise resist an aggressor.

Effective Consent

- Effective consent can be given by words or actions so long as the words or actions create a mutual understanding between both parties regarding the conditions of the sexual activity–ask, "do both of us understand and agree regarding the who, what, where, when, why, and how this sexual activity will take place?"
- When someone affirmatively demonstrates that (1) they do not want to have sex, (2) they want to stop any sort of the sexual acts, or (3) they do not want to go any further, the other party must stop completely. Continued pressure after that point can be coercive.

Consent in Relationships

- Current or past sexual relationships or current or past dating relationships are not sufficient grounds to constitute consent.
- Regardless of past experiences with other partners or your current partner, consent must be obtained.
- Consent can never be assumed, even in the context of a relationship. You have the right to say "no" and you have the right to change your mind any time.

By law, a person cannot legally give consent (No matter what they might say), when:

- The person is severely intoxicated due to alcohol or drugs, incapacitated, or unconscious

- The person is physically or mentally disabled or incapacitated

- The person was coerced due to force, threat of force, or deception or when the person was beaten, threatened, isolated, or intimidated

Examples of Sexual Misconduct include but are not limited to:

- Non-consensual sexual intercourse, defined as any sexual penetration however slight, with any body part or object by any person upon any person without consent.

- Non-consensual sexual contact, defined as any intentional sexual touching, with any body part or object by any person upon any person without consent.

- Sexual exploitation, defined as taking non-consensual, unjust or abusive sexual advantage of another. Examples include, but are not limited to non-consensual video or audiotaping of sexual activity, going beyond the boundaries of consent (such as knowingly allowing another to surreptitiously watch otherwise consensual sexual activity) and engaging in non-consensual voyeurism.

- Indecent exposure, defined as the exposure of the private or intimate parts of the body in a lewd manner in public or in private premises when the accused student(s) may be readily observed.

***Note:** An accused student, who after having a hearing for a violation of Section 2.1.C.1, Sexual Misconduct  or 2.1.C.2 Dating Violence, Domestic Violence or Stalking, is found not responsible, may be found responsible and sanctioned for a violation of Section 2.1.C.3, Other Physical or Mental Abuse or Harm.*

## *Dating Violence, Domestic Violence or Stalking  (For full definitions see Appendix A) (103A)* *(Student Handbook 2.1.C.2)*

Stalking, dating violence and domestic violence are prohibited.

**Stalking**– Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others or suffer substantial emotional distress.

**Dating Violence**– Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

Information Regarding Alleged Violations Involving Sexual Misconduct, Domestic Violence, Dating Violence or Stalking

**Domestic Violence-** An act of violence committed by a spouse or intimate partner of the victim or  who or who is cohabitating as a spouse or intimate partner or person similarly situated, by a parent  with whom the victim shares a child in common.

Information Regarding Alleged Violations Involving Sexual Misconduct, Domestic Violence, Dating Violence or Stalking

**Limited Amnesty.** While the University does not condone underage drinking or violation of other University policies, it considers reporting sexual misconduct, domestic violence, dating violence or stalking to be of paramount importance.  To encourage reporting and adjudication of sexual misconduct, domestic violence, dating violence or stalking, Miami University will extend limited amnesty to a student who has been the alleged victim of interpersonal violence.  The University will generally not seek to hold the student responsible for his/her own violations of the law (e.g., underage drinking) or the Code of Student Conduct in which he or she may have been involved during the period immediately surrounding the sexual misconduct, domestic violence, dating violence or stalking.

Miami University also has developed a **Title IX Protocol** that explains how incidents of sexual misconduct, domestic violence, dating violence and stalking are handled. Miami University will make changes in the victim's academic and living conditions upon request. Both the complainant (and the victim if different from the complainant) and the accused student(s) are entitled to the same opportunity to have others present during the disciplinary proceeding.

Both the complainant (and the alleged victim if different from the complainant) and the accused student(s )are entitled to the same opportunity for access to information that will be used at the hearing, to present relevant witnesses and other evidence, and to have others present during the hearing. Confidential medical/counseling records and information regarding the alleged victim's sexual history will not be provided to the accused student(s) and is not admissible at any disciplinary proceeding. All parties have the right to appeal. The alleged victim and the accused student(s) are prohibited from having contact with the other during the pendency of the process.  The University will not mediate allegations of sexual misconduct, domestic violence, dating violence or stalking.

Copies of the Title IX Protocol are available in the Office of Ethics and Student Conflict Resolution, Women's Center, Office of the Dean of Students, the Miami University Police, the Oxford Police Department, and the Sexual Assault Prevention Program Office. The full Protocol can also be found at: http://www.miamioh.edu/campus-safety/sexual-assault/protocol.html.

**Interim Measures.** In cases of alleged sexual misconduct, domestic violence, dating violence or stalking, the Dean of Students or designee may, in addition to a summary suspension of the accused (see Section 2.2.H), impose Interim Measures upon receipt of a complaint and request of the alleged victim. Interim Measures include:

- Providing the alleged victim with a temporary safe space within the University residence halls (available to Oxford residential students).
- Moving the accused student or the alleged victim so he/she does not share the same residence or dining hall (available to Oxford residential students).
- Changing class assignments so that the accused and the alleged victim do not share the same classes (available to instructional staff and students).
- Providing the alleged victim with academic support services, including tutoring (available to students); and/or
- Prohibiting the accused from having any contact with the alleged victim (available to faculty, staff, and students).

**Additional Remedies.** In the event the accused is found responsible, the University will impose remedial action which may include disciplinary action against the accused and remedies for the complainant and others. In any instance in which the victim did not take advantage of a specific Interim Measure Service (e.g., counseling) when offered as an Interim Measure, the victim is still entitled to appropriate final remedies that may include services the victim declined as an Interim Measure.

**Timeline.** The University is committed to addressing all complaints of sexual misconduct, domestic violence, dating violence or stalking in a prompt and equitable manner.  Upon receipt of a complaint, the Office of Ethics and Student Conflict Resolution will generally conduct its initial review and assessment within one week. The University uses its best efforts to resolve all complaints within sixty calendar days. This timeline may be extended based upon the complexity, severity and extent of the misconduct. The timeline may also be affected by the winter or spring break period and summer or winter terms. This timeline does not include appeals.

For definitions of Title IX Offenses, please see Appendix A.

## *Other Physical or Mental Abuse or Harm (103B)* *(Student Handbook 2.1.C.3)*

Intentional or reckless acts that cause or reasonably could cause physical or mental harm to any person are prohibited. Actions that threaten or reasonably could cause a person to believe that the offender may cause physical or mental harm are also prohibited. Some examples of prohibited behavior include murder, assault, battery, telephone

harassment, computer harassment, threats, intimidation, physical assault or abuse, verbal abuse, and any other conduct that threatens the health or safety of any person.

## Damage, Theft, Trespass, or Unauthorized Use of Property (104)

(Student Handbook 2.1.D)

Intentional or reckless conduct that results in damage (including tampering or defacing), theft, trespass, or unauthorized use of property of the University or of any other person or entity is prohibited. The unauthorized use of University property for personal gain is also prohibited. Students may not use University property for any activity prohibited by federal, state, or local law or these regulations. Examples of prohibited behavior include gambling on University property, theft, vandalism, and possession of property known to be stolen.

## Alcohol Abuse (105) (Student Handbook 2.1.E)

### Intoxication (105A) (Student Handbook 2.1.E.1)

Any student who is intoxicated or exhibits negative behavior associated with intoxication after using alcohol is in violation of this policy.

### Prohibited Use of Alcohol (105B) (Student Handbook 2.1.E.2)

Alcohol may be consumed and/or possessed only by those of legal drinking age and only in authorized locations. On-campus use of alcoholic beverages is restricted in accordance with applicable city and state laws, both in residence halls and in designated facilities. Students are not permitted to have kegs or beer balls of alcoholic beverages or parties with alcohol in residence hall rooms. Underage possession, consumption, consumption in unauthorized locations, or furnishing of alcoholic beverages to any person under legal age to drink such beverages is prohibited.

***Note***: *Because of Miami University's commitment to the responsible consumption of alcohol, mandatory minimum penalties will be imposed upon a finding of a violation of this policy.*

*The University will notify by email or regular U.S. mail the parents of students under the age of 21 who have been found responsible for violating the Code of Student Conduct regarding the use or possession of alcohol or drugs.*

*A student who after having a hearing for a violation of Section 2.1.E.1, Intoxication, is found not responsible, may be found responsible for a violation of Section 2.1.E.2, Prohibited Use of Alcohol. See Section 2.2.E for penalties (see Part 4, Chapter 4 for Policy on Alcohol Use).*

*A student who after having a hearing for a violation of Section 2.1.E.2, Prohibited Use of Alcohol, is found not responsible may be found responsible for a violation of Section 2.1.N, Complicity.*

## Drug Use (106) (Student Handbook 2.1.F)

### Prohibited Use of Drugs (106A) (Student Handbook 2.1.F.1)

The use, offer for sale, sale, distribution, possession, or manufacture of any controlled substance or drug except as expressly permitted by law is prohibited. The use, offer for sale, sale, distribution, possession, or manufacture of chemicals, products, or materials for the purpose of use as an intoxicant except as expressly permitted by law is also prohibited. Examples of prohibited behavior include huffing or sniffing glue or paint and the use of nitrous oxide (whip-its).

### Possession of Drug Paraphernalia (106B) (Student Handbook 2.1.F.2)

Possession of drug paraphernalia is also prohibited. Drug paraphernalia as it applies in this section means any equipment, product, or material of any kind that is used in propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.

*A student who after having a hearing for a violation of either part of Section 2.1.F, Drug Use, is found not responsible may be found responsible for a violation of Section 2.1.N, Complicity.*

## Weapons (107) (Student Handbook 2.1.G)

Possession or use of a dangerous weapon on campus is prohibited. A dangerous weapon is defined as any instrument, device, or object capable of inflicting physical harm or death and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon. Examples of dangerous weapons include firearms, explosive devices, dangerous chemicals, knives, fireworks, compressed air guns, pellet guns, stun or zip guns, Tasers, BB guns, and paint ball guns.

## Discrimination/Harassment (108)(Student Handbook 2.1.H)

Discrimination or harassment in University education programs on the basis of sex, race, color, religion, national origin, disability, age, sexual orientation, gender identity, pregnancy, military status, or veteran status is particularly repugnant to the mission of Miami University. Miami University prohibits the unequal treatment in University education programs of a person on the basis of sex, race, color, religion, national origin, disability, age, sexual orientation, gender identity, pregnancy, military status, or veteran status (see *The Student Handbook*, Part 5, Chapter 14).

## Hazing (109)(Student Handbook 2.1.I)

Coercing another, including the victim, to do any act of initiation into, or as a condition of participation in, a student organization, fraternity or sorority, or activity that causes or creates a substantial risk of causing physical or mental harm to any person is prohibited. Examples of prohibited behavior include forced drinking of alcohol or water, paddling, creation of fatigue, physical shocks, degrading or humiliating games, physical harassment, branding, public stunts, and forced tattoos (see Appendix C of the *Code of Student Conduct* for additional examples and discussion).

*Note: Because of Miami University's commitment to maintaining an environment free from hazing, mandatory minimum penalties will be imposed upon a finding of violation of this policy.*

## Violation of Law (110) (Student Handbook 2.1.J)

Conduct that violates any federal, state, or local law is prohibited. The University will review any conduct reported by members of the University community, law enforcement personnel, or citizens as being in violation of the law. If in review the University determines, in its sole judgment, that the alleged conduct interferes with the University's exercise of its mission, processes, or functions, appropriate disciplinary action will be taken.

## Failure to Comply/False Reports (111) (Student Handbook 2.1.K)

### *Failure to Comply (111A) (Student Handbook 2.1.K.1)*

A failure to comply with the directions of law enforcement, failure to comply with an order of dispersal, incitement to panic or riot is prohibited. Examples of prohibited behavior include withholding information regarding an alleged criminal act, violation of the Code of Student Conduct or other University policy.

### *False Report (111B) (Student Handbook 2.1.K.2)*

Initiation of any false report, warning, threat of fire, threat of explosion, or other emergencies on University premises or at any University-sponsored activity is also prohibited. Examples of prohibited behavior include tampering with, impairing, disabling, or misusing fire protection systems such as fire detectors, sprinklers, alarms, and extinguishers.

## Abuse of Computing Resources (112) (Student Handbook 2.1.L)

Students are responsible to know and abide by the regulations outlined in the guide, *Responsible Use of Computing Resources at Miami*. University Computing Resources include hardware, software, and data owned, licensed, or developed by Miami University, students, or employees. Theft or other abuse of University Computing Resources is prohibited. Examples of prohibited behavior include, but are not limited to:

1. Unauthorized entry into a file, to use, read, or change the contents, or for any other purpose; or unauthorized transfer of a file;
2. Unauthorized access to, use of, or control of University Computing Resources including circumvention of computing system safeguard;
3. Unauthorized use of another individual's identification or password;
4. Use of University Computing Resources to interfere with the work of another student, faculty member, or University official;
5. Unauthorized copying of computer software that is owned or licensed to the University;
6. Use of University Computing Resources to interfere with normal operation of the University computing system or educational process;
7. Violation of software copyrights, license agreements, or trade secrets;
8. Activities for personal financial gain except as provided for by other University policy;
9. Using University Computing Resources to violate federal, state, or local law.

## Disorderly Conduct (113) (Student Handbook 2.1.M)

Conduct which is disorderly, lewd, or indecent or which breaches the peace (e.g., causes alarm, annoyance, or nuisance) is prohibited. Disorderly conduct includes, but is not limited to, any unauthorized use of electronic or other devices to make an audio or video record of any person while on University premises without his or her prior knowledge, or without his or her effective consent when such a recording is likely to cause injury or distress. This includes, but is not limited to, surreptitiously taking pictures of another person in a gym, locker room, classroom, or restroom.

## Complicity (114) (Student Handbook 2.1.N)

Conspiracy to commit, solicitation of another to commit, aiding or abetting the commission of, or attempting to commit any conduct which is prohibited under Offenses of the Student Conduct Regulations is prohibited. This includes, but is not limited to, being present in a residence hall room or with a group of persons where the prohibited use of alcohol or drugs is occurring.

## Retaliation (115) (Student Handbook 2.1.O)

Retaliation is strictly prohibited. Any retaliatory action or conduct by any person against a person who has filed a complaint, served as a witness, assisted, or participated in an investigation or in any other manner under this Code of Student Conduct, the University's Policy on Reporting and Addressing Illegal Activity and Misconduct, or the University's Policy Prohibiting Harassment or Discrimination, is strictly prohibited and will be regarded as a separate and distinct violation of the Code of Student Conduct. This protection against retaliation extends to any person who opposes acts of sexual harassment or discrimination, sexual violence, sexual misconduct, domestic violence, dating violence, or stalking, or who testifies, assists, or participates in any manner in an investigation, proceeding, or hearing relative to harassment or discrimination.

## Violation of Sanctions (116) (Student Handbook 2.1.P)

Violation of any terms of disciplinary restrictions, probation, or suspension is prohibited. Failure to satisfactorily complete sanctions is a violation of University policy.

## Violation of University Policy (117) (Student Handbook 2.1.Q)

Students are expected to follow all University policies, procedures, and regulations. Failure to follow University policies, procedures, or regulations is prohibited. Such policies, procedures, and regulations include:

1. Residence Hall Contracts and Guide to Residence Hall Living Rules and Regulations;
2. Signs, Posters, and Banners; Solicitation and Political Canvassing Regulations (see *The Student Handbook*, Part 5, Chapters 7 and 8);
3. Smoke- and Tobacco-Free Environment Policy;
4. *The Miami Bulletin—General Edition*;
5. Recreational Sports Rules and Regulations;
6. Housing, Dining, Recreation, and Business Services Rules and Regulations.

## Unauthorized Use of University Keys or Access Cards (118) (Student Handbook 2.1.R)

The unauthorized use, distribution, duplication, or possession of any access device including keys or access cards issued for any University building, laboratory, facility, or room is prohibited.

## Search Policies

SEARCH    | OK |

## Notice

How to use the new Miami University Policy Library

## New/Revised Policies

2016-2017
Drug-Free Workplace

Minors on Campus

Nursing Mothers

Tuition Promise Appeals Committee

2015-2016

[Electronic Records and Signatures](#)

[Infectious Disease](#)

[Miami University's Tuition Promise Guarantee](#)

©2015 Miami University. All rights reserved.

POWERED BY PARABOLA & WORDPRESS.

# Miami University Policy Library

Official administrative policies and procedures for Miami University

## Sanctions

(Student Handbook 2.2)



Sanctions may be imposed singly or in combination on individuals, student organizations, and fraternities or sororities. A student may be suspended or dismissed for a single violation. Multiple violations or additional violations of the Code of Student Conduct may result in more severe sanctions.

**No sanction will be imposed until all appeals are completed (see Chapter 4 Appeals).** Failure to complete a sanction will result in a hold on the student's ability to register for subsequent semesters or to change a class schedule. Students are permitted to drop and withdraw as provided in *The Student Handbook*. Student organizations and fraternities and sororities will not be reinstated until all sanctions are completed.



**Students should be aware that disciplinary records may be reviewed by others within the University and may have adverse consequences for those seeking the second-year residency exemption and/or enrollment in study-abroad opportunities.**

The various sanctions are:

## Dismissal and Suspension/Revocation of Recognition (Student Handbook 2.2.A)

**Dismissal** is a sanction which permanently separates the student from the University without any opportunity to re-enroll in the future.

Suspension is a sanction that terminates the student's enrollment for a specified period of time. The Dean of Students or designee will determine the effective date of the suspension (either at the conclusion of the disciplinary process or at the close of the current semester/term) for a minimum of either fall or spring semester and may also include summer and/or winter term. (*Note that a student may not be suspended solely for either summer and/or winter term.*)

**Suspension** of a student organization or fraternity or sorority is a revocation (withdrawal) of University recognition. During a period of revocation, a student organization or fraternity or sorority forfeits all the rights and privileges afforded to them by University policy. A student organization or fraternity or sorority whose recognition has been revoked must petition for reinstatement of recognition. Conditions for reinstatement of recognition will typically be outlined in the original sanction.

## Conditions of Suspension and Dismissal (Student Handbook 2.2.B)

A student who has been dismissed or suspended from the University is denied all privileges afforded a student and must vacate campus at a time determined by the Dean of Students or designee. In addition, students who are dismissed or suspended may not enter any Miami University campus/or other University property at any time for any reason in the absence of the express written consent of the Dean of Students or designee. To seek such permission, a suspended or dismissed student must file a written petition with the Office of Ethics & Student Conflict Resolution for entrance for a limited, specific purpose. Academic credit earned elsewhere during a period of suspension will not

be accepted in transfer. A student who has been suspended must petition for re-enrollment. Incomplete grades may not be removed during periods of suspension or dismissal.

## Disciplinary Probation (Student Handbook 2.2.C)

Disciplinary Probation indicates the behavior of a student, student organization, fraternity or sorority has resulted in a sanction that is close to suspension. It is imposed for a definite period of time and may include disciplinary restrictions. A student or representatives of an organization, fraternity or sorority on probation may be required to meet periodically with a person designated by the Office of Ethics and Student Conflict Resolution.

## Disciplinary Restrictions (Student Handbook 2.2.D)

Disciplinary Restrictions may be imposed with or without suspension, revocation of recognition, or probation. Disciplinary Restrictions include but are not limited to:

1. restrictions from participating in intercollegiate athletics, extracurricular activities, and residence life activities;
2. restrictions in the right of access to campus facilities, including residence halls;
3. monetary payments for purpose of restitution or to cover the expense of educational sanctions;
4. required University service;
5. no-contact/restraining orders;
6. denial of financial assistance from programs funded by the University;
7. removal from or reassignment of University housing;
8. required attendance at educational/assessment programs, such as anger management workshops and comprehensive substance abuse assessments;
9. administrative hold on access to specified University documents;
10. loss of University privileges including, but not limited to, parking and computing/email resources;
11. revocation of the right to the use of University facilities, University funding, or other privileges for a defined period of time;
12. planning of and attendance at educational programming;
13. prohibition of participation in or sponsorship of social, intramural, or other activities or events.

## Penalties for Alcohol Violations (Student Handbook 2.2.E)

### Intoxication or Negative Behavior Involving the Use of Alcohol (Student Handbook 2.2.E.1)

(see Section 2.2.E.2 for disciplinary procedures for Prohibited Use of Alcohol). Any student who is intoxicated or exhibits negative behavior after using alcohol is in violation of this policy.

Minimum Penalties:

1. **First Offense**. The minimum penalty for a first offense is mandatory attendance at a four-hour substance abuse education program and a minimum fee of $200 to the student for the program as well as mandatory participation in a comprehensive substance abuse assessment and a minimum fee of $250 to the student for the assessment. Further intervention and an opportunity to participate in group sessions may be recommended by the counselor. There will be no additional fee to the student for participation in the group sessions at the Student Counseling Service.
2. **Second Offense.** Suspension from the University, either immediately or at the close of the current semester/term, for a minimum of either fall or spring semester and may also include summer and/or winter

term. *(Note that a student may not be suspended solely for either summer and/ or winter term.)*

If a student is suspended as a result of alcohol violations and subsequently returns to Miami University, another violation of the alcohol policy may result in dismissal. Registration for subsequent semesters will be withheld until the student complies with the penalties assessed for the first offense. If a student has been officially found to have committed an alcohol offense and two calendar years have elapsed without a subsequent finding for such an offense, a prior offense will be considered in determining the current penalty but the minimum penalty is not mandatory. For multiple violations of the Student Conduct Regulations, additional penalties may be warranted and imposed in accordance with normal University disciplinary procedures.

*Good Samaritan Policy – In the event the student incurs an alcohol violation during the twelve- month period following the Good Samaritan report, the prior file may be reviewed as part of the sanctioning process but will not be counted as a prior alcohol offense for the purpose of imposing mandatory minimum sanctions.*

## Prohibited Use of Alcohol *(Student Handbook 2.2.E.2)*

Minimum Penalties:

1. **First Offense.** The minimum penalty for a first offense is required attendance at a two-hour substance abuse program designed to acquaint students with their civil and legal responsibilities as well as the personal and career implications of alcohol and other substance abuse. There will be a minimum fee of $150 to the student for the program.
2. **Second Offense.** The minimum penalty for a second offense is mandatory participation in a comprehensive substance abuse assessment and a minimum fee of $250 to the student for the assessment. Further intervention and an opportunity to participate in group sessions may be recommended by the counselor. There will be no additional fee to the student for participation in the group sessions at the Student Counseling Service.
3. **Third Offense.** Suspension from the University, either immediately or at the close of the current semester/term, for a minimum of either fall or spring semester and may also include summer and/or winter term. *(Note that a student may not be suspended solely for either summer and/ or winter term.)*

If a student is suspended as a result of alcohol violations and subsequently returns to Miami University, another violation of the alcohol policy may result in dismissal. Registration for subsequent semesters will be withheld until the student complies with the penalties assessed for the first or second offenses. If a student has been officially found to have committed an alcohol offense and two calendar years have elapsed without a subsequent finding for such an offense, a prior offense will be considered in determining the current penalty, but the minimum penalty is not mandatory. For multiple violations of the Student Conduct Regulations, additional penalties may be warranted and imposed in accordance with normal University disciplinary procedures.

## Multiple Alcohol Violations Involving Prohibited Use of Alcohol and Intoxication *(Student Handbook 2.2.E.3)*

The minimum penalty for any combination of three alcohol violations is suspension from the University; either immediately or at the close of the semester/term for a minimum of either fall or spring semester and may also include summer and/or winter term. *(Note that a student may not be suspended solely for either summer and/or winter term.)*

## Sanctions for Alcohol Violations by Student Organizations and Fraternities and Sororities (105B) *(Student Handbook 2.2.E.4)*

Minimum Penalties:

1. **First Offense**. The minimum penalty for a first offense is required attendance of members of the organization at a two-hour substance abuse program designed to acquaint organization members with their civil and legal responsibilities as well as the personal and organizational implications of alcohol and other substance abuse. Programs must be pre-approved by the Office of Ethics and Student Conflict Resolution. Attendance requirements will be established by the Office of Ethics and Student Conflict Resolution.

2. **Second Offense**. No less than two semesters of Disciplinary Probation and one or more of the following Disciplinary Restrictions:

   A. No events with alcohol for a time period to be specified by the Office of Ethics and Student Conflict Resolution;

   B. Evidence of a risk management plan for organization sponsored events—if applicable, provide proof of national organization involvement in the development of or approval of the risk management plan;

   C. Denial of the ability to host events for a time period to be specified by the Office of Ethics and Student Conflict Resolution;

   D. Additional substance abuse education as specified by the Office of Ethics and Student Conflict Resolution;

   E. Restriction of access to University controlled space or resources;

   F. Community service approved by the Office of Ethics and Student Conflict Resolution;

   G. Required meeting(s) with an appropriate University official; or

   H. Restriction from participation in University-sponsored events.

3. **Third Offense**. Revocation of recognition, either immediately or at the close of the semester/term for a minimum of either fall or spring semester and may also include summer and/or winter term. (Note that a student organization, fraternity, or sorority may not be suspended solely for either summer and/or winter term.) Disciplinary Probation for a minimum of two semesters following the period of revocation of recognition will also be imposed.

If at least three calendar years have elapsed from the date of the last incident, a prior offense will be considered in determining the sanction, but does not require the imposition of the minimum sanction.

## Penalties for Dishonesty Violations (Student Handbook 2.2.F)

Minimum Penalties:

### First Offense (Student Handbook 2.2.F.1)

The minimum penalty for a first offense is completion of an ethics and integrity education program and a minimum fee of $200 to the student for the program.

### Second Offense* (Student Handbook 2.2.F.2)

Suspension from the University, either immediately or at the close of the current semester/term for a minimum of either fall or spring semester and may also include summer and/or winter term. (Note that a student may not be suspended solely for either summer and/or winter term.)

*If the student has been found responsible for a previous act of academic dishonesty or for previously violating Section 102 (Dishonesty) of the Code of Student Conduct, the automatic sanction will be suspension for at least one semester.

If a student is suspended as a result of dishonesty violations and subsequently returns to Miami University, another violation of the dishonesty policy may result in dismissal. Registration for subsequent semesters will be withheld until the student complies with the penalties assessed for the first offense.

# Written Reprimand(Student Handbook 2.2.G)

Written reprimand is an official notification that the behavior of the student, student organization, fraternity or sorority has been unacceptable. Authorized staff members of the Office of Ethics and Student Conflict Resolution or the Dean of Students Office may issue a written reprimand without a hearing for violation of regulations. Written reprimands will be placed in the official disciplinary file.

# Summary Suspension (Student Handbook 2.2.H)

## *Summary Suspension without Prior Notice or Hearing (Student Handbook 2.2.H.1)*

When the Dean of Students or designee has reasonable cause to believe that the student's or student organization's , fraternity's or sorority's presence on University premises or as a University-related or registered student organization activity poses an immediate and significant risk of substantial harm to the safety or security of themselves, others, or to property, the student, student organization, fraternity or sorority may  be  immediately suspended from all or any portion of University premises, University-related activities or registered student organization activities. This temporary suspension will be confirmed by a written statement and shall remain in effect until the conclusion of the disciplinary process. The student, student organization, fraternity or sorority may, within three working days of the imposition of the suspension, petition the Dean of Students or designee for reinstatement. The petition must be in writing and must include supporting documentation or evidence that the student, student organization, fraternity or sorority does not pose, or no longer poses, a significant risk of substantial harm to the safety or security of themselves, others, or to property. A decision on such petition will be made without undue delay by the Dean of Students or designee.

## *Summary Suspension with Notice and Hearing (Student Handbook  2.2.H.2)*

The Dean of Students or designee may summarily suspend a student, student organization, or fraternity or sorority; prohibit the same from any or all appropriate portions of University premises, University-related activities, or registered student organization, fraternity or sorority activities; and/or permit the student, student organization, or fraternity or sorority to remain only under specified conditions during the disciplinary process if the Dean of Students determines that the student's, student organization's, or fraternity's or sorority's continued presence endangers themselves, others, or property.

Before making such a determination, the Dean of Students or designee will notify the student, student organization, fraternity or sorority of the reasons that the summary suspension is being considered and provide the student, student organization, fraternity or sorority with an appropriate opportunity to meet with the Dean of Students or designee prior to the decision. The purpose of the meeting is to address:

1. the reliability of the information concerning the conduct of the student, student organization, fraternity or sorority; and
2. whether or not the conduct and surrounding circumstances reasonably indicate endangering behavior.

*Endangering behavior means taking or threatening action that endangers the safety, physical or mental health, or life of any person or creates a reasonable fear of such action. Sexual misconduct, domestic violence, dating violence and stalking may constitute endangering behavior.*

# Sanctions for Hazing Violations (Student Handbook 2.2.I)

Minimum Penalties

## *First Offense (Student Handbook 2.2.I.1)*

The minimum penalty for a first offense shall include at least two of the following sanctions:

1. evidence of a risk management plan for organization-sponsored events; if applicable, provide proof of national organization involvement in the development of or approval of the risk management plan;.

2. denial of the ability to recruit new members for a time period to be specified by the Office of Ethics and Student Conflict Resolution;

3. education as specified by the Office of Ethics and Student Conflict Resolution;

4. restriction of access to University controlled space and resources;

5. Disciplinary Probation for a period of no less than two semesters;

6. suspension for a minimum of one semester; or

7. any other disciplinary restrictions permitted under Section 2.2.D.

## Second Offense *(Student Handbook 2.2.I.2)*

The minimum penalty for a second offense is revocation of recognition from the University; either immediately or at the close of the semester/term, for a minimum of two semesters and may also include summer and/or winter term. Disciplinary Probation for at least two semesters following the reinstatement of recognition will also be imposed.

If an organization or fraternity or sorority has been found to have committed a hazing offense and three calendar years have elapsed from the date of the incident without a subsequent finding for such an offense, a prior offense will be considered in determining the current penalty, but the minimum penalty is not mandatory.

## Search Policies

SEARCH  OK

## Notice

How to use the new Miami University Policy Library

## New/Revised Policies

2016-2017

Drug-Free Workplace

Minors on Campus

Nursing Mothers

Tuition Promise Appeals Committee

2015-2016

Electronic Records and Signatures

Infectious Disease

Miami University's Tuition Promise Guarantee

©2015 Miami University. All rights reserved.

POWERED BY PARABOLA & WORDPRESS.

# Miami University Policy Library

Official administrative policies and procedures for Miami University

---

# Hearing Procedures

(Student Handbook 2.3)

 

## Complaint and Notice (Student Handbook 2.3.A)

### Complaint (Student Handbook 2.3.A.1)

Any person, agency, organization or entity may make a written complaint to the Office of Ethics and Student Conflict Resolution alleging a violation of a regulation by a student, student organization, or fraternity or sorority. The University will treat a police report or citation as a complaint. Any individual who knowingly files a false complaint under this Code, who knowingly provides false information to University officials, or who intentionally misleads University officials who are involved in an investigation or resolution of a complaint may be subject to disciplinary action.



### Notice (Student Handbook 2.3.A.2)

The Office of Ethics and Student Conflict Resolution or designee, after reviewing a complaint or on its own initiative, may initiate the disciplinary process by giving the accused student(s), student organization, fraternity or sorority written notice of the alleged violation(s). The notice will be sent to the student's University-assigned email address listed with the University information system or the address on the complaint. Notice also may be delivered in person by law enforcement personnel or by University staff. The written notice shall describe the alleged violation(s) and inform the student, student organization, or fraternity or sorority about the reported circumstances underlying the alleged violation(s).

For complaints alleging violations in which suspension is not a proposed sanction, the student will not be afforded an opportunity for a procedural review.

The notice for alleged violations for which suspension or dismissal is not recommended will contain the proposed sanction(s) for the violation and the opportunity for a hearing before Student Court or an administrative hearing officer.

The notice will also inform the complainant (and the alleged victim if different from the complainant) and the accused student(s) or authorized representative of the accused student organization, fraternity or sorority that they are entitled to be advised at all times by another person of their choice. They are each entitled to bring an attorney, at their own expense, to any meeting, the procedural review, and hearing. The attorney may act as an advisor to the complainant (and/or alleged victim if different from the complainant), the accused student(s), student organization, fraternity or sorority subject to the constraints imposed by the administrative hearing officer, panel, or disciplinary board.

## Procedural Review (Student Handbook 2.3.B)

The purpose of the procedural review is to review the complaint, provide an explanation of the disciplinary process, discuss the student's, student organization's, fraternity's or sorority's options and advise the student, student

organization, or fraternity or sorority regarding the potential sanction(s) for the alleged violation(s). In cases alleging a violation of Section 2.1.C.1 Sexual Misconduct or 2.1.C.2 Dating Violence, Domestic Violence or Stalking, both the complainant (and the alleged victim if different from the complainant) and accused student(s) will be provided with the opportunity for a procedural review. The accused student(s) or an authorized student representative of the student organization, fraternity or sorority shall attend the procedural review, which will be conducted by a judicial staff member in the Office of Ethics and Student Conflict Resolution on the Oxford campus or designee on other campuses. In the Office of Ethics and Student Conflict Resolution, the judicial staff member will be the Director or Associate Director of Ethics and Student Conflict Resolution or designee.

The judicial staff member shall determine and advise the accused students, student organization, or fraternity or sorority of the proposed sanction(s) during the procedural review. If an accused student(s), student organization, or fraternity or sorority (through an authorized student representative) fails to appear at the procedural review, the student, student organization, or fraternity or sorority may be deemed to have committed the violation and the sanction(s) set forth may be imposed or the matter may be scheduled for a hearing at the discretion of the judicial staff member. Procedural reviews may be rescheduled at the discretion of the judicial staff member.

## Selection of Hearing Option (Student Handbook 2.3.C)

An accused student, student organization, fraternity or sorority must, no later than two University working days from the time of the Procedural Review or, if there is no Procedural Review, five days from receipt of the notice, select one of three options and return the Page Two Option Form to the Office of Ethics and Student Conflict Resolution.

The options are:

1. Admit to the violations and agree to accept the recommended sanctions; or
2. Request an administrative hearing officer; or
3. Request a hearing
   A. before Student Court if suspension or dismissal is not a potential sanction; or
   B. before the Disciplinary Board if suspension or dismissal is a potential sanction.

*Note: In all cases of an alleged violation of Section 2.1.C .1 Sexual Misconduct, or 2.1.C.2 Dating Violence, Domestic Violence or Stalking, the hearing will be held before a trained, three-person, Administrative Hearing Panel. In cases of an alleged violation by a fraternity, sorority or student organization the hearing will be held before an Administrative Hearing Officer except those involving an alleged violation of 2.1.C.1or 2.1.C.2, in which case the hearing will be held before an Administrative Hearing Panel.*

The Office of Ethics and Student Conflict Resolution encourages students charged in the same incident and who have chosen the same hearing venue to have their cases consolidated for hearing. The Office of Ethics and Student Conflict Resolution reserves the right to require consolidation for a hearing.

If an accused student, student organization, fraternity or sorority fails to timely notify the judicial staff member of the option selected, the Office of Ethics and Student Conflict Resolution will select and schedule the hearing.

## Hearing (Student Handbook 2.3.D)

### Hearings (Student Handbook 2.3.D.1)

1. The hearing shall commence not sooner than three University working days after the receipt of the complaint.
2. The hearing is closed to the public. The complainant (and the alleged victim if different from the complainant) and the accused student(s) are entitled to bring, in addition to an advisor of their choice, two persons for support to the hearing. The University will accommodate concerns for personal safety, well-being, and/or concerns regarding confrontation among the complainant (and the alleged victim if different from the

complainant), the accused student(s), and other witnesses during the hearing by providing separate facilities, by using a visual screen or by permitting participation by videophone, closed circuit television, video conferencing, written statement or other means.

3. Present at each university Disciplinary Board hearing and Administrative Panel Hearing, for sexual misconduct, dating, domestic violence or stalking case, is a process coordinator from the Office of Ethics and Student Conflict Resolution. The role of the process coordinator is to ensure that due process procedures and the recommended hearing guidelines are being heeded. It is appropriate for the process coordinator to answer to procedural questions asked by the board, panel, complainant or accused. The process coordinator will <u>not</u> be present during the board or panel's deliberations to determine finding or sanction. However, the process coordinator can be summoned by the deliberating board to answer questions regarding the process.

4. The complainant (and the alleged victim if different from the complainant) and accused student(s) have the right to file a written statement or a written response to the complaint. The Office of Ethics and Student Conflict Resolution will establish deadlines for submission of the written statement and response. Copies will be provided to others. The Administrative Hearing Officer/Chair of the Disciplinary Board/Chair of the Administrative Hearing Panel have the right to determine the acceptability of testimony and other information during the hearing and may place time limitations on testimony and on closing statements.

5. The accused student(s) and the complainant (and the alleged victim if different from the complainant) have the right to submit information and question witnesses who testify in the matter. If the University elects to accept a witness's written statement in lieu of live testimony, the identity of the witness and his or her statements shall be fully disclosed to the other parties, and they shall be given the opportunity to respond to such statements. Witnesses other than the complainant (and the alleged victim if different from the complainant) and the accused student(s) shall be present only when they are giving testimony. The Administrative Hearing Officer/Chair of the Disciplinary Board/Chair of the Administrative Hearing Panel has the right to control all questioning of witnesses and require that all questions be conducted by the Administrative Hearing Officer/Disciplinary Board/Administrative Hearing Panel.

6. In a hearing alleging a violation of Section 2.1.C.1 Sexual Misconduct or 2.1.C.2 Dating Violence, Domestic Violence or Stalking, the questioning of the alleged victim and the accused student(s) will be conducted through the Administrative Hearing Panel. Alleged victims cannot be asked about prior sexual history with anyone other than the accused student(s). The complainant (and the alleged victim if different from the complainant) and the accused student(s) will both be given access to any information that will be used during the hearing at least three University working days prior to the hearing.

7. The hearing will be recorded on equipment supplied by the University. Either the complainant (and the alleged victim if different from the complainant) or accused student(s) may make provisions for a record of the hearing, subject to their own payment of the cost; or as the parties may agree, in advance in writing, to share the expense of the record. If a record is made, a copy shall be supplied to the University at no cost.The University may elect to present the case on behalf of the complainant (and the alleged victim if different from the complainant). If the Office of Ethics and Student Conflict Resolution elects to present the case using a licensed attorney, the accused student(s) will be given notice and an opportunity to be represented by an attorney at the student's, student organization's, fraternity's or sorority's own expense.The University may elect to present the case on behalf of the complainant (and the alleged victim if different from the complainant). If the Office of Ethics and Student Conflict Resolution elects to present the case using a licensed attorney, the accused student(s) will be given notice and an opportunity to be represented by an attorney at the student's, student organization's, fraternity's or sorority's own expense.

8. The complainant (and the alleged victim if different from the complainant) and the accused student(s) will be given the opportunity to present a closing statement.

At the close of the hearing, the Administrative Hearing Officer/Disciplinary Board/Administrative Hearing Panel shall deliberate privately as to whether the accused student(s) violated the Student Code of Conduct. Disciplinary Boards and Administrative Hearing Panels will seek to reach consensus in adjudicating cases. In the event there is no consensus, a majority vote (the Chair voting) will determine the outcome. In the event of tie votes, the report will be

that no violation occurred. Within five calendar days after the close of the hearing, the Administrative Hearing Officer/Disciplinary/Board/Administrative Hearing Panel will report the findings.

If the Administrative Hearing Officer/Disciplinary Board/Administrative Hearing Panel determines that a violation of the Student Code of Conduct has occurred, sanction(s) will be imposed. If an accused student(s), student organization, or fraternity or sorority fails to appear at a scheduled hearing, and the absence is not excused, the hearing may proceed without the presence of the accused student(s). Hearings may be rescheduled at the discretion of the Office of Ethics and Student Conflict Resolution.

## Disciplinary Board *(Student Handbook 2.3.D.2)*

The University Disciplinary Board will be composed of ten faculty members, endorsed by the chair or co-chairs of the Board and appointed by the President; eight undergraduate students, who are juniors or seniors, nominated by Associated Student Government and appointed by the President; and two graduate students, nominated by the Dean of the Graduate School and appointed by the President. The chair or co-chairs of the Disciplinary Board will be members of the faculty and will be appointed by the President. Except for the chair or co-chairs, who will serve three-year terms, all members will serve one-year terms. Quorum for University Disciplinary Board hearings is defined as at least three faculty members and two students. If the accused student(s) is a graduate student, one of the student members shall be a graduate student.

## Administrative Hearing Panel *(Student Handbook 2.3.D.3)*

Hearings before the Administrative Hearing Panel shall follow the same procedures as are followed by the Disciplinary Board.  The Administrative Hearing Panel Pool will be composed of six faculty members appointed by the President, and four staff members appointed by the Office of Ethics & Student Conflict Resolution.  An Administrative Hearing Panel will be comprised of two faculty members and one staff member who shall serve as chair.

## Student Court *(Student Handbook 2.3.D.4)*

The Student Court will consist of 15 undergraduate students and up to two alternate undergraduates. Student Senate confirms the Student Court appointments. The term of office will be for one calendar year beginning on the last day of second semester or until resignation or removal. Quorum for Student Court hearings is defined as at least five students. If the accused student(s) is a graduate student, one of the student members shall be a graduate student. The Student Court will handle all cases referred to it by the Office of Ethics and Student Conflict Resolution.

## Notification *(Student Handbook 2.3.D.5)*

The Office of Ethics and Student Conflict Resolution will notify the student, student organization, fraternity or sorority of the decision (in writing) of the outcome of the hearing and will also notify the student, student organization, fraternity or sorority, if responsible, of the sanction(s) imposed. In cases of an alleged sexual misconduct, domestic violence, dating violence, or stalking, both the complainant (and the alleged victim if different from the complainant) and the accused student(s) will be simultaneously notified, in writing, of the outcome of the disciplinary proceedings including the result of any initial, interim and final decision, the institutions procedures for appeal and any change to the results. The notification includes whether the accused was found responsible, if so the sanction imposed, and the reason(s) for the result. Upon request, the alleged victim of an accused student(s) of an alleged crime of violence will be advised of the final results (whether the accused was found responsible and if so the sanction[s] imposed) of the disciplinary proceeding.

## Administrative Fee *(Student Handbook 2.3.D.6)*

Any student, student organization, fraternity or sorority that is found responsible for violating the Student Code of Conduct will be assessed an administrative fee of $50 per incident.

Revised 2015

## Search Policies

| SEARCH | OK |
|---|---|

## Notice

How to use the new Miami University Policy Library

## New/Revised Policies

2016-2017

Drug-Free Workplace

Minors on Campus

Nursing Mothers

Tuition Promise Appeals Committee

2015-2016

Electronic Records and Signatures

Infectious Disease

Miami University's Tuition Promise Guarantee

©2015 Miami University. All rights reserved.

POWERED BY PARABOLA & WORDPRESS.

# Miami University Policy Library

Official administrative policies and procedures for Miami University

# Appeals

(Student Handbook 2.4)

 

## University Appeals Board (Student Handbook 2.4.A)

When the suspension or dismissal of a student or the revocation of recognition of a student organization is proposed by the Office of Ethics and Student Conflict Resolution or imposed by any hearing authority, the accused student(s), the complainant (and the alleged victim if different from the complainant), student organization, and the Office of Ethics and Student Conflict Resolution have the right to file a written appeal with the University Appeals Board within five University working days of the written notification of the disposition of the matter by the Office of Ethics and Student Conflict Resolution*. The appeal should be addressed to the chair of the University Appeals Board and should state the basis for the appeal and should include all supporting documents *(Student Handbook 2.4.A.1)*.



*All parties will be notified if an appeal is filed and will have five University working days to submit a written response to the appeal. Copies of the statements of appeal and any responses will be made available to all involved parties.*

Regardless of campus origin, all appeals should be submitted to the Office of Ethics and Student Conflict Resolution on the Oxford campus.

1. The University Appeals Boardshall be composed of five faculty, four undergraduate students, and one graduate student, all of whom shall be appointed by the President. Quorum for the University Appeals Board is defined as three faculty members and two students.
2. The function of the University Appeals Board shall be as follows: to hear appeals of student disciplinary cases, in accordance with the Student Conduct Regulations published in *The Student Handbook*.

Appeals may be filed for the following reasons *(Student Handbook 2.4.A.2)*:

1. Inappropriate sanction.
2. Procedural defect in the adjudication of the case. In considering appeals based on a procedural defect, a new hearing will be ordered only if the defect is found to be substantial enough to have changed the outcome of the original hearing.
3. New evidence. In considering appeals based on new evidence, a new hearing will be ordered only if the new evidence is found to be substantial enough to change the outcome of the original hearing.

The Appeals Board will meet in closed session(s). The Appeals Board, in considering an appeal, shall find the appeal to have merit or not have merit by majority vote, within the parameters set forth below *(Student Handbook 2.4.A.3)*:

1. If the appeal alleges that the sanction was inappropriate and the Appeals Board finds the sanction to be inappropriate, the Appeals Board may increase or reduce the sanction.

2. If the appeal alleges that there was a defect in procedure or new evidence is presented and the Appeals Board finds that there was a defect in the procedure or new evidence was presented which was sufficiently substantial to have affected the outcome, the Appeals Board will order a new hearing.

The Appeals Board will notify (in writing) the complainant (and the alleged victim if different from the complainant), the accused student(s), and the Office of Ethics and Student Conflict Resolution of its decision within ten working days of its receipt of the appeal from the Office of Ethics and Student Conflict Resolution. If the Appeals Board requires additional time, the Vice President for Student Affairs or the Dean of Students may extend the time limit. The extension shall be in writing and shall include the reason for the extension, and copies shall be forwarded to both the complainant (and the alleged victim if different from the complainant), the accused student(s), and the Office of Ethics and Student Conflict Resolution. If a new hearing is ordered, the new hearing will be held before the original hearing authority.

# Vice Presidential Review (Student Handbook 2.4.B)

In the event the original hearing authority or the appeals board proposed or imposed a sanction of suspension or dismissal during the procedural review, judicial hearing, or appeals hearing, the accused student(s), complainant (and the alleged victim if different from the complainant), the accused student(s) organization, or fraternity or sorority, or the Office of Ethics and Student Conflict Resolution* may request the Vice President for Student Affairs or designee to review a decision. A request for review must be presented to the Office of the Vice President for Student Affairs in writing within three University working days of the receipt of the written notification of the decision of the Appeals Board. The request should state the basis for the request and include all supporting documents.

*All parties will be notified if an appeal is filed and will have three University working days to submit a written response to the appeal. Copies of the statements of appeal and any responses will be made available to all involved parties.*

Requests for a Vice Presidential review may be filed for the following reasons (*Student Handbook 2.4.B.1*):

1. Inappropriate sanction.
2. Procedural defect in the adjudication of the case. In considering appeals based on a procedural defect, a new hearing will be ordered only if the defect is found to be substantial enough to have changed the outcome of the original hearing.
3. New evidence. In considering appeals based on new evidence, a new hearing will be ordered only if the new evidence is found to be substantial enough to change the outcome of the original hearing.

The Vice President or designee may elect to review or not review a decision. In cases where the Vice President or designee elects to review a decision, the Vice President or designee shall find the appeal to have merit or not have merit within the parameters set forth below (*Student Handbook 2.4.B.2*):

1. If the appeal alleges that the sanction was inappropriate and the Vice President or designee finds the sanction to be inappropriate, the Vice President or designee may increase or reduce the sanction.
2. If the appeal alleges that there was a defect in procedure or new evidence is presented and the Vice President or designee finds that there was a defect in the procedure or new evidence was presented which was sufficiently substantial to have affected the outcome, the Vice President or designee will order a new hearing.

The Vice President or designee will notify the parties in writing of either the decision not to review or to review the matter and, if reviewed, the Vice President's or designee's disposition of the matter on review.

The decision of the Vice President or designee to change a sanction or sustain the finding of the Appeals Board is final. The result of any new hearing ordered by the Vice President or designee may be appealed only as detailed in Section 2.4.A. If a new hearing is ordered, the new hearing will be held before the original hearing authority (*Student Handbook 2.4.B.3*).

## Search Policies

| SEARCH | OK |

## Notice

How to use the new Miami University Policy Library

## New/Revised Policies

2016-2017

Drug-Free Workplace

Minors on Campus

Nursing Mothers

Tuition Promise Appeals Committee

2015-2016

Electronic Records and Signatures

Infectious Disease

Miami University's Tuition Promise Guarantee

©2015 Miami University. All rights reserved.

POWERED BY PARABOLA & WORDPRESS.

# Miami University Policy Library

Official administrative policies and procedures for Miami University

---

# Miscellaneous

(Student Handbook 2.5)

 

## Withdrawal (Student Handbook 2.5.A)

Should an accused student be academically dismissed or withdraw from Miami University before a "1219" or disciplinary action has been resolved, the matter may proceed in the absence of the student and/or a disciplinary hold note may be placed on the student's official transcript indicating "disciplinary action is pending or disciplinary sanctions are incomplete at Miami University." Academic credit earned elsewhere during a period of disciplinary hold will not be accepted in transfer. A disciplinary hold will not permit a student to register for a subsequent semester, change a current class schedule, or receive an official transcript. Students are able to drop and withdraw from a course(s) per University policy as noted in Section 1.2.C. of The Student Handbook.  If a hold is placed subsequent to a student registering for classes, the classes will be cancelled prior to the start of the semester.



## Release of Disciplinary Information (Student Handbook 2.5.B)

The Clery Act and the Family Educational Rights and Privacy Act (FERPA), permit universities to disclose certain disciplinary information.

In cases of an alleged sex offense, domestic violence, dating violence, or stalking, in accordance with the Clery Act, both the complainant (and the alleged victim if different from the complainant) and the accused student(s) will be simultaneously notified, in writing, of the outcome of the disciplinary proceedings, the institution's procedures for appeal and any change to the result. The notification includes whether the accused was found responsible and if so the sanction imposed. Upon request, the alleged victim of an accused student(s) of an alleged crime of violence will be advised of the final results (whether the accused was found responsible and if so the sanction imposed) of the disciplinary proceeding.  If the student is an alleged perpetrator of a crime of violence or nonforcible sex offense as defined by FERPA, and is found responsible for violating the Code of Student Conduct, the University may disclose to any person the final results of University disciplinary proceedings (name of the student, section violated of the Code of Student Conduct, and sanction imposed).

The University will notify by email or regular U.S. mail the parents of students under the age of 21 who have been found responsible for violating the Code of Student Conduct regarding the use or possession of alcohol or drugs.

## Disciplinary Records (Student Handbook 2.5.C)

The Office of Ethics and Student Conflict Resolution is responsible for maintaining student disciplinary records. Disciplinary records are kept confidential to the extent permitted by law (see Section 2.5.B above).

1. Records of disciplinary actions resulting in a finding of not responsible are maintained by the Office of Ethics and Student Conflict Resolution until the end of the academic year in which the finding is made.

2. Records of disciplinary actions resulting in a finding of responsible and sanctions other than suspension or dismissal are maintained by the Office of Ethics and Student Conflict Resolution for seven years following the date the finding is made.

3. Records of disciplinary actions resulting in a finding of responsible and a sanction of suspension or dismissal are maintained indefinitely by the Office of Ethics and Student Conflict Resolution. A notation of suspension or dismissal is reflected on the student's official University academic record (transcript) maintained by the Office of the University Registrar.

4. A request to expunge a record may be made in accordance with Section 2.5.D below.

## Requests to Expunge Disciplinary Records (Student Handbook 2.5.D)

At any time after seven years from the date of the finding in which a sanction of suspension was imposed, a student or former student may petition the Dean of Students or designee to have his or her disciplinary record expunged. The decision to expunge will be based on the severity of the violation(s), the person's disciplinary record as a whole, and evidence of good behavior since the violation(s). If the record is expunged any notation of a disciplinary suspension will be removed from the official academic record maintained by the Office of the University Registrar.

A student who has been dismissed from the University may not request to have his or her record expunged. However, the Vice President for Student Affairs has authority to expunge the record and remove the notation in extraordinary circumstances, seven academic years following the date the finding was made.

## Refund Policy (Student Handbook 2.5.E)

In the event of a suspension or dismissal, the University will follow the regular refund schedule available via the Office of the Bursar website at http://www.units.MiamiOH.edu/bur/. Housing fees are normally prorated, forfeiting the deposit, in the event of a suspension or dismissal from University housing.

## Graduation (Student Handbook 2.5.F)

All Miami University disciplinary complaints against a student must be resolved and sanctions completed before a student is eligible to graduate.

## Interpretation of the Code of Student Conduct (Student Handbook 2.5.G)

Any question of interpretation or application of the Code of Student Conduct shall be referred to the Vice President for Student Affairs or designee for final determination.29B

Revised 2017

Search Policies

SEARCH | OK

Notice

How to use the new Miami University Policy Library

## New/Revised Policies

2016-2017

Drug-Free Workplace

Minors on Campus

Nursing Mothers

Tuition Promise Appeals Committee

2015-2016

Electronic Records and Signatures

Infectious Disease

Miami University's Tuition Promise Guarantee

©2015 Miami University. All rights reserved.

POWERED BY PARABOLA & WORDPRESS.

# Miami University Policy Library

Official administrative policies and procedures for Miami University

---

# Appendix – Supplementary Disciplinary Procedures

(Student Handbook 2.6)

 

## APPENDIX A. Title IX Offenses (Student Handbook 2.6.A)

**Definitions**

1. **Sex Offenses:** Any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent.

   A. *Rape* — the penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

   B. *Fondling* — the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental incapacity.

   C. *Incest* – nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

   D. *Statutory Rape* – nonforcible sexual intercourse with a person who is under the statutory age of consent.

2. **Domestic Violence:** A felony or misdemeanor crime of violence committed –

   A. By a current or former spouse or intimate partner of the victim

   B. By a person with whom the victim shares a child in common

   C. By a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner

   D. By a person similarly situated to a spouse of the victim under the domestic or family violence laws occurred, or

   E. By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

3. **Dating Violence:** Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

   A. The existence of such a relationship shall be determine based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

   B. For the purpose of this definition-

      i. Dating violence includes, but is not limited to, sexual or physical abuse or threat of such abuse.

      ii. Dating violence does not include acts covered under the definition of domestic violence.

C. **Stalking:**

    i. Engaging in a course of conduct directed at a specific person that would cause a reasonable person to –

        a. Fear for the person's safety or the safety of others**; or**

        b. Suffer substantial emotional distress

    ii. For the purpose of this definition

        a. Course of conduct means two or more acts, including but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, or interferes with a person's property.

        b. Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

        c. Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim.

# APPENDIX B. The Miami University John E. Dolibois European Center (MUDEC) Discipline Policies (Student Handbook 2.6.B)

## Student Conduct (Student Handbook 2.6.B.1)

The Code of Student Conduct in The Student Handbook shall apply to all students at MUDEC. This includes the policies regarding the use and abuse of alcohol or other drugs, with recognition that the laws abroad may vary from those in the United States. When there is evidence or an allegation of a violation of the Code of Student Conduct and/or of MUDEC regulations, disciplinary proceedings may be initiated. Specifics of the conduct policy are spelled out below and on the waiver form students must sign before leaving the U.S. All provisions of the Code of Student Conduct regarding procedures shall apply to students at MUDEC with the following exceptions:

1. Disciplinary action will be initiated by the Dean of MUDEC. Prior to the procedural review, the Dean will consult with the Oxford campus Office of Ethics and Student Conflict Resolution to determine whether the case should be adjudged in full at MUDEC or whether some aspect of the disciplinary process should be undertaken after the student's return to the U.S. The student shall be notified of this decision as part of the procedural review.

2. In addition to the sanctions listed in Chapter 2 of the Code of Student Conduct, it shall be understood that "Termination of Enrollment at the Dolibois European Center (MUDEC)" may be among the sanctions imposed. The decision made by the Luxembourg Disciplinary Board does not preclude the possibility of further disciplinary action upon the student's return to the Oxford campus.

3. All references to University officials are deemed references to the most closely analogous officials at MUDEC.

4. The MUDEC Disciplinary Board shall be composed of five members: one fulltime faculty member of MUDEC (who shall serve as chair and arrange for minutes of the proceedings to be kept); the Student Activities Coordinator; one European instructor familiar with MUDEC; and two students.

    A. The Dean shall appoint the faculty and staff members at the beginning of each academic year. The two student members plus one alternate shall be appointed by the Dean of MUDEC at the beginning of each semester or at other times if a vacancy should occur.

    B. The Dean shall attend the meeting of the Disciplinary Board in order to explain the reasons for instituting disciplinary proceedings against the student.

5. The University Appeals Board of Miami University, Oxford, Ohio, will adjudicate any appeals of the findings of the MUDEC Disciplinary Board.

6. There will be no Vice Presidential review of these decisions.

*Following suspension and/or dismissal from MUDEC, the student will be required to leave University-provided housing in Luxembourg immediately. No refund of fees paid will be made.*

## Waivers (Student Handbook 2.6.B.2)

Before leaving for Luxembourg, all students are required to sign a waiver indicating: (a) that they have read and understood the MUDEC attendance and discipline policies, and (b) that they understand and accept the possible sanctions in case of any violation of one or the other (or both) of these policies.

## APPENDIX C 1219 Offenses (Student Handbook 2.6.C)

**The Ohio Revised Code enumerates the following offenses of violence:**

2903.01 – *Aggravated Murder*

2903.02 – *Murder*

2903.03 – *Voluntary Manslaughter*

2903.04 – *Involuntary Manslaughter*

2903.11 – *Felonious Assault*

2903.12 – *Aggravated Assault*

2903.13 – *Assault*

2903.15 – *Permitting Child Abuse*

2903.21 – *Aggravated Menacing*

2903.211 – *Menacing by Stalking*

2903.22 – *Menacing*

2905.01 – *Kidnapping*

2905.02 – *Abduction*

2905.11 – *Extortion*

2907.02 – *Rape*

2907.03 – *Sexual Battery*

2907.05 – *Gross Sexual Imposition*

2909.02 – *Aggravated Arson*

2909.03 – *Arson*

2909.24 – *Terrorism*

2911.01 – *Aggravated Robbery*

2911.02 – *Robbery*

2911.11 – *Aggravated Burglary*

2917.01 – *Inciting to Violence*

2917.02 – *Aggravated Riot*

2917.03 – *Riot*

2917.31 – *Inducing Panic*

2919.25 – *Domestic Violence*

2921.03 – *Intimidation*

2921.04 – *Intimidation of Crime Victim or Witness*

2921.34 – *Escape*

2923.161 – *Improperly Discharging Firearm at or into Habitation or School Safety Zone*

Division (A)(1), (2), or (3) of Section 2911.12 – *Burglary*

Division (B)(1), (2), (3), or (4) of Section 2919.22 of the Revised Code – *Endangering Children*

# APPENDIX D. Hazing (Student Handbook 2.6.D)

## Definition (Student Handbook 2.6.D.1)

In the University context, the term "hazing" typically refers to actions directed toward or required of individuals new to a group or community by those who are established within the group. Hazing is a broad term encompassing a multiplicity of actions and activities which do not contribute to the positive development of a person; or which inflict or intend to cause mental or bodily harm or anxiety; or which demean, degrade, or disgrace a person.

Hazing is based on the premise that some members are less equal than other members and, therefore, less deserving of respect. It is rationalized by the philosophy that membership is earned, not learned. Hazing especially undermines new member education programs by eroding the atmosphere of mutual respect and trust necessary for groups to contribute to the positive personal growth of all members.

**Hazing is strictly prohibited by University policy and state law.**

## Examples of Hazing (Student Handbook 2.6.D.2)

Examples of activities or situations that meet the definition of hazing include, *but are not limited to*, the following:

1. Forcing, requiring, authorizing, or encouraging any person to ingest alcohol, other drugs, food, or any other substance that is spoiled, undesirable, unsafe, or unhealthy.
2. Any form of paddling, physical abuse, psychological abuse, deception, or shocks.
3. Morally degrading or humiliating activities, games, or stunts including, *but not limited to*, the following:
   A. Throwing anything (whipped cream, water, garbage, paint, etc.) at an individual.
   B. Chairings and "polings."
   C. Deliberately creating a mess and requiring any person to clean up the mess.
   D. Requiring or encouraging a person to yell when entering or leaving the chapter house or any other location.
   E. Audible harassment such as yelling and screaming at a person, calling him or her demeaning names.

F. Playing extremely loud music or music which is repeated over and over.

4. Any activity that interferes with an individual's scholastic pursuits (class attendance, preparation, study time, etc.).

5. Causing excessive fatigue by any means including calisthenics, or not permitting six (6) hours of continuous sleep each night.

6. Conducting a new member-related activity between the hours of midnight and 7:00 a.m., or awakening individuals during these hours.

7. Compelling an individual or group to remain at a certain place or to be transported within or beyond the Oxford City limits (road trips, kidnaps).

8. Requiring or compelling any person to conduct or participate in quests, treasure hunts, scavenger hunts, paddle hunts, big and little brother or sister hunts.

9. Requiring any person to "march" in formation or dress like others.

10. Requiring a person to carry items that might be cumbersome or embarrassing.

11. Not permitting a person to talk during an extended period of time.

12. Requiring nudity at any time.

13. Requiring an individual to perform personal errands (servitude).

14. Preventing any person from practicing personal hygiene.

15. Endorsing or encouraging any person's participation in any activity that could be considered hazing. Note: The laws of the State of Ohio hold accountable not only the perpetrator of the activity but **those present and able to prevent a hazing incident from occurring**.

## *Questions to Ask* *(Student Handbook 2.6.D.3)*

While this appendix is by no means all-encompassing, it should present a clearer view of what hazing is. If you are planning an activity, you may wish to use the following questions, adapted from the *Adelphian*, as guidelines:

1. Will the activity achieve one or more of the predetermined goals of your new member program?

2. Would you be willing to tell your advisor about the activity in advance?

3. Would you be willing to perform it in front of a University faculty or staff member?

4. Would you be willing to send a snapshot of the activity to your parents and the parents of the students involved?

5. Would you be willing to go to court to defend the merit of the activity?

If you are able to answer yes to these questions, then it is likely that the activity is appropriate for your organization or fraternity or sorority. The Office of Student Activities and Leadership should be consulted if questions arise about the appropriateness of an activity.

## Search Policies

| SEARCH | OK |





Notice

[...w to use the new Miami University Policy Library](#)

## New/Revised Policies

2016-2017

[Drug-Free Workplace](#)

[Minors on Campus](#)

[Nursing Mothers](#)

[Tuition Promise Appeals Committee](#)

2015-2016

[Electronic Records and Signatures](#)

[Infectious Disease](#)

[Miami University's Tuition Promise Guarantee](#)

©2015 Miami University. All rights reserved.