IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, | Case No. 1:17-cv-00482-MRB |
| Plaintiff, | Judge Barrett |
| v. | MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| MIAMI UNIVERSITY, ET AL. | |
| Defendants | |

Pursuant to Federal R. Civil Rule 65, Plaintiff John Doe seeks a temporary restraining order and, following a hearing, a preliminary injunction prohibiting Defendants Miami University, *et al.*, (collectively, unless indicated otherwise, "Miami") from suspending him in violation of his constitutional due process rights. This Motion is accompanied by the Affidavit of John Doe.

This case is one of many cases arising amidst a growing national controversy stemming from the Federal Department of Education, Office of Civil Rights' ("OCR") threats to withhold federal education funds to compel colleges and universities to address "sexual violence" on their campuses. While the Complaint raises a number of claims, including violation of John Doe's rights under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ *1681 et seq.*, this Motion focuses on two unconstitutional aspect of the discipline process faced by John Doe:  the failure of Miami to permit John Doe to confront witnesses who provided contrary information; and the failure of Miami to provide John Doe with adequate Notice.

A preliminary injunction is necessary to preserve the *status quo* by allowing John Doe to remain a student at Miami pending the resolution of this matter. John Doe is facing a suspension through May 2019. This two year delay in John Doe's education will cause irreparable harm to John Doe's education and career.

1

**MEMORANDUM**

**FACTS**

John Doe brought this action for a declaratory judgment, violation of 42 U.S.C. §1983, violation of Title IX, and injunctive relief. This case arises out of the decision of Miami to impose disciplinary sanctions against John Doe in violation of his Constitutional due process and federal statutory rights.

John Doe is an undergraduate student at Miami. He has completed four semesters of coursework and is on schedule to graduate in 2019. Miami has suspended John Doe for two years for allegedly engaging in sexual conduct with another student, Jane Roe, without her consent. Miami took this action because Miami, like schools throughout the nation, is fearful or recent efforts by the Federal Government, through the Department of Education, Officer of Civil Rights ("OCR"), to use Title IX to pressure colleges and universities to aggressively pursue investigations of sexual assaults on campuses. *See* Gertner, Nancy, *Sex, Lies and Justice*, The American Prospect, Winter 2015 (available at http://prospect.org/article/sex-lies-and-justice)(former federal judge noting that "The new standard of proof, coupled with the media pressure, effectively creates a presumption in favor of the woman complainant. If you find against her, you will see yourself on 60 Minutes or in an OCR investigation where your funding is at risk. If you find for her, no one is likely to complain.")

**A.     Miami's Response to The Growing Problem of Sexual Assaults on Campus**

After years of criticism for being too lax on campus sexual assault, on April 11, 2011, OCR sent a "Dear Colleague" to colleges and universities. The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and Universities must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct. Most notably, the Dear Colleague Letter required schools to adopt a relatively low burden of proof—"more likely than not"—in cases involving

sexual misconduct, including assault.[1] On November 3, 2016, OCR notified Miami that it was investigating a complaint that the school failed to promptly and equitably respond to complaints of sexual violence. OCR Docket #15-16-2200. On June 9, 2017 OCR notified Miami that it was investigating one or two additional complaints that the school failed to promptly and equitably respond to complaints of sexual violence. OCR Docket TBD.

The Miami Sexual Misconduct Policy and the Code of Student Conduct governs student behavior and provides for sanctions for violations. A copy of the Sexual Misconduct Policy is attached to the Complaint as Exhibit A. A copy of the Code of Student Conduct is attached to the Complaint as Exhibit B. In general, a Miami student accused of sexual misconduct is entitled to a hearing prior to the imposition of disciplinary sanctions. While the Miami process gives the appearance of due process, the ability of students to present a meaningful defense is limited in a number of significant ways: an accused student may have an "advisor" present during the hearing; an accused student may present witnesses and other evidence, although there is no provision to compel the attendance of witnesses; cross-examination of witnesses is strictly limited to questions submitted through the hearing panel chair; and rules governing the admissibility of evidence and the unreliable hearsay evidence is not only permissible, but encouraged.

The Code of Student Conduct specifically provides that an accused student has the right to "question witnesses who testify in the matter." The questioning of the alleged victim and the accused student is conducted through the Hearing Panel. Written statements are permitted under the Code of Student Conduct in lieu of live testimony. The Code of Student Conduct provides: "If the University elects to accept a witness's written statement in lieu of live testimony, the identity of the

---

[1] In 2015, another Miami student filed a case in this Court, *Doe v. Miami*, 1:15-cv-00605-MRB. This case was dismissed by the Court and is currently on appeal. However, this case was filed before OCR began an investigation of Miami.

witness and his or her statements shall be fully disclosed to the other parties, and they shall be given the opportunity to respond to such statements."

**B.     John Doe's Alleged Misconduct And The Miami Disciplinary Process**

John Doe is facing a two-year suspension from Miami for events that allegedly occurred beginning on the evening of November 17, 2016 (the "Incident"). On the night of the Incident, John Doe, Jane Roe, and some of there friends made plans to meet at a bar in Oxford, Ohio. They were there, in part, to celebrate a friend's birthday. They arrived at the bar about 10:00 pm and started drinking and talking. They then proceeded to a second bar.

John Doe left the bar a little after midnight. Jane Roe and another friend accompanied him on the walk home; the other friend went a different direction about half-way during the walk home. John Doe and Jane Roe then engaged in consensual sexual activity. Prior to any physical contact, they spoke about "hooking up." Jane Roe said to John Doe that she did not "want to have sex." She added, "But we can do other things." John Doe and Jane Roe slipped inside some bushes and started kissing. John Doe then performed oral sex on Jane Roe. John Doe and Jane Roe then decided to walk towards a bathroom near John Doe's room. The two discussed having sex. They decided to not have sex because they did not have a condom available. Jane Doe voluntarily performed oral sex on John Doe.

Jane Roe never reported any alleged sexual misconduct to the police. Instead, almost five months later, on or about April 4, 2017 2017, Jane Roe reported to Miami that she had been sexually assaulted by John Doe. Upon receipt of Jane Roe's complaint, Miami obtained statements and information directly from John Doe and Jane Roe, but did not otherwise conduct any investigation. In particular, the 'investigator' did not make any effort to determine what, if any accommodations Jane Roe had received from Miami as a result of her claim to have been a victim of sexual assault.

A Summary Suspension Hearing was held to determine whether John Doe posed a direct threat to the student body. The Dean of Students presided over the hearing and determined that John Doe presented no threat to the student body and was permitted to remain on campus during the disciplinary process.

On April 28, 2017, Miami held a hearing to determine if John Doe had violated the Sexual Misconduct Policy and the Code of Student Conduct. John Doe and Jane Roe appeared for the hearing. The Hearing Panel was provided a copy of the written submissions from John Doe and Jane Roe prior to the hearing. This document is referred to as the "Hearing Packet."

John Doe told the Hearing Panel that all of the sexual activity during the Incident was consensual and that Jane Roe was not severely intoxicated. John Doe presented a number of witnesses who testified that Jane Roe was not severely intoxicated and otherwise contradicted her allegations. One witness testified that Jane Roe and was not severely intoxicated:

> [Q]: And it didn't look like there was any indication that anybody needed help or anybody was intoxicated?
> [A]: No. I thought everybody was still in charge, like able to make their own actions, decisions.

Another witness, who walked out of the bar with John Doe and Jane Roe, testified that Jane Roe was not stumbling or slurring her words:

> [Q]: Did you observe her stumbling or slurring her words at any point . . . ?
> [A]: No.

Jane Roe told the Hearing Panel that she was "extremely drunk" and that, as a result, the sexual activity was not consensual. The Hearing Panel gave Jane Roe the opportunity to call witnesses. She did not call any witnesses but, instead, relied on the written statements in the Hearing Packet. The chair of the Hearing Panel remarked at the inability for John Doe to question the witnesses who provided information in support of Jane Roe's claim.

> There are no witnesses that are going to show in person. So let's go to the material that you submitted which is the last section here of the packet. The panel obviously

5

> cannot ask questions of the witnesses, so everyone that's read these I don't know if everyone is familiar. Okay. Everyone had the packet so was able to have read everything that was in here.

The focus of the hearing was on whether Jane Roe was, in fact, severely intoxicated. However, the Hearing Panel appeared to be confused about the standard to be applied. At one point, the chair of the Hearing Panel suggested that *any* use of alcohol meant that a person could not consent to sexual activity.

On May 1, 2017, John Doe received a letter from Vaughn indicating that the Hearing Panel had found him responsible for committing sexual assault in violation of Section 103A of the Code of Student Conduct. The letter indicates that the Hearing Panel had concluded, by the preponderance of the evidence, that John Doe had "engaged in sexual conduct with [Jane Roe] on two occasions that evening without her knowingly being able to consent." The Hearing Panel reached tis conclusion while acknowledging that Jane Roe's "recollection of the reported assaults was less clear." John Doe was informed that he was suspended from Miami from April 6, 2017 through May 15, 2019.

John Doe submitted an appeal. After two layers of review, the appeal was denied. On June 16, 2017 his discipline was final. This litigation followed.

**ARGUMENT**

**A.    The Standard For Resolution Of This Motion**

The purpose of a preliminary injunction is to preserve the *status quo. Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). In considering a preliminary injunction, the court considers four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *City of Pontiac Retired Employees Ass'n v. Schimmel,* 751 F.3d 427, 430 (6th Cir. 2014); *Ohio State Conf. of the NAACP v. Husted,* 768 F.3d 524, 532-533 (6th Cir. 2014).

6

**B.     Recent Cases Granting Preliminary Injunctions To Students**

In a number of recent cases federal courts have granted injunctive relief prohibiting schools from implementing discipline against students accused of sexual assault.

- In *Doe v. University of Cincinnati* 223 F. Supp. 3d 704 (S.D. Ohio 2016), a Court in this District grated a preliminary injunction prohibiting a pubic university from suspending a student who had alleged that the school had acted in violation of his constitutional due process rights

- In *Doe v. Brown Univ.,* 210 F. Supp. 3d 310, 313 (D.R.I. 2016), the court concluded that school breached its contract with a student by the manner in which it conducted his disciplinary hearing on an allegation of sexual misconduct.  The school was ordered to vacate its finding and sanction against the student and expunge his record.

- In *Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645 (May 8, 2017), the court concluded that a student facing discipline for an allegation of sexual misconduct has demonstrated "at least some likelihood of success on the merits of his breach of contract claim and of irreparable harm."  The school was ordered to stay it discipline of the student and permit him to sit for final examinations.

- In *Ritter v. Oklahoma*, W.D.Okla. No. CIV-16-043 8-HE, 2016 U.S. Dist. LEXIS 60193 (May 6, 2016), the court observed that "universities must ensure that the rights of both the accused and the accuser are protected."  The school was ordered to stay any discipline and to permit a student facing discipline for an allegation of misconduct to attempt to complete all remaining graduation requirements.

- In *Doe v. Middlebury College,* D.Vt. No. 1:15-cv-192-jgm, 2015 U.S. Dist. LEXIS 124540 (Sep. 16, 2015), the court found that a student accused of sexual misconduct had "demonstrated a sufficiently serious question regarding whether [the school] violated its policies."  The court ordered the school to not expel the student and allow him to remain enrolled in his courses.

- In *King v. DePauw Univ.*, No. 2:14-cv-70, 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014), the court found that a student accused of sexual misconduct had demonstrated likely success on breach of contract claims against the school. The court prohibited the school from enforcing a suspension and ordered that the student be permitted to enroll in and attend the school without restriction.

These cases all represent situations where students who had credible evidence that a school employed an unfair disciplinary process has demonstrated sufficient facts to warrant the issuance of equitable relief on either a preliminary or permanent basis.

7

**C.     The Plaintiff Has A Substantial Likelihood of Success.**

Miami students facing discipline must be afforded the opportunity to defend, enforce or protect their rights through presentation of their own evidence, confrontation of adverse witnesses, and oral argument. *Goldberg v. Kelly*, 397 U.S. 254 (1970).  In determining whether Miami provided constitutionally adequate due process, the competing interests of the governmental institution and the individual must be balanced.[2]  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 355 *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

**1.     Liberty Interest**

It is well established that John Doe is entitled to due process in the disciplinary proceedings held at Miami.  Numerous federal courts have held that the Due Process Clause is implicated by higher education disciplinary decisions. *See Richards v. McDavis,* 2013 U.S. Dist. LEXIS 134348, 16-20 (S.D. Ohio Sept. 19, 2013), *citing, inter alia, Flaim v. Med. College of Ohio*, 418 F.3d 629 (6th Cir. Ohio 2005) ("In this Circuit we have held that the Due Process Clause is implicated by higher education disciplinary decisions."); *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245 (E.D. Mich. 1984), aff'd, 787 F.2d 590 (6th Cir. 1986) (due process clause implicated in suspension from university for cheating).

---

[2] The three factors set forth in *Mathews v. Eldridge*: "(1) the nature of the private interest affected -- that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." *See Ingraham v. Wright*, 430 U.S. 651, 676 (1977) (applying *Mathews*). The amount of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews*.

### 2. Lack of Cross-Examination

The Miami Hearing Panel relied on three witness statements provided by the alleged victim. John Doe's constitutional rights were violated because he did not have the opportunity to cross-examine the persons who provided those witness statements.

### a. The Law on Cross-Examination In Student Disciplinary Hearings

John Doe had the right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse action and there is a question of credibility to be resolved by the finder of facts.³ *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970); *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005).⁴

In *Goldberg*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires an evidentiary hearing before a recipient of certain government welfare benefits could be deprived of such benefits. Of relevance to the issue in this case, the Court held that while there is no right to a formal trial, due process requires an opportunity for the aggrieved person to confront and cross-examine adverse witnesses. 397 U.S. at 269-270. The Court said, "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."

---

³ Important:  John Doe is *not* claiming an unlimited right to cross-examination in school disciplinary proceedings.  Rather, the right claimed in limited to cases where there are disputed facts and the witnesses relied upon provide the evidence for the decision resolving the dispute.

⁴ In *Flaim* the student was convicted of a felony, which was enough to justify an adverse action by the school.  As a result, as the Sixth Circuit observed, additional process from confrontation of the accuser would have provided "no benefit to Flaim or any reduced risk of error." 418 F.3d at 639-640.

The Sixth Circuit recently reaffirmed the viability of the language in *Flaim* and *Winnick* supporting the right to cross-examination where issues of credibility are raised.  *Doe v. Cummins*, 6th Cir. No. 16-3334, 2016 U.S. App. LEXIS 21790, at *26 (Dec. 6, 2016) ("Although due process may require a limited ability to cross-examine witnesses in school disciplinary hearings where, like here, credibility is at issue, *see Flaim*, 418 F.3d at 641 *citing Winnick*[*, 460 F.2d at 549-50].").

9

Consistent with *Goldberg*, the Sixth Circuit has observed that in certain school disciplinary cases the due process guarantees of the constitution require some ability of accused students to confront their accusers. In *Flaim*, the court explained, "[s]ome circumstances may require the opportunity to cross-examine witnesses, though this right might exist only in the most serious of cases." 418 F.3d at 636.[5] The *Flaim* court relied upon the Second Circuit's decision in *Winnick*. *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972). In *Winnick*, the Second Circuit held that there was no requirement that a student be able to cross-examine a witness whose testimony is not determinative to the outcome of the case. 460 F.2d at 549. But, significantly, the *Winnick* court noted, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." *Id.* at 550.

The *Winnick-Flaim* formulation is an accurate description of the law. The Sixth Circuit,[6] in *Cummins,* recently cited to both recently cited to both *Flaim* and *Winnick* for the proposition that "due process may require a limited ability to cross-examine witnesses in school disciplinary hearings where . . . credibility is at issue." 2016 U.S. App. LEXIS 21790 at *26. In two recent cases, this has reaffirmed the *Winnick-Flaim* approach. *Doe v. Ohio State Univ.*, No. 2:15-CV-2830, 2016 U.S. Dist. LEXIS 154179, (S.D. Ohio Nov. 7, 2016); *Doe v. University of Cincinnati*, *supra.* In *Doe v. Ohio State*, this Court (Graham, J.) observed that while the Due Process Clause generally does not guarantee the right to cross-

---

[5] *Flaim* illustrates that there is no need for cross-examination unless credibility of the witnesses is important to the determination of a violation of school rules. In *Flaim* the student was convicted of a felony, which was enough to justify an adverse action by the school. As a result, additional process from confrontation of the accuser would have provided "no benefit to Flaim or any reduced risk of error." 418 F.3d at 639-640.

[6] The First Circuit has, consistent with the Sixth Circuit, observed that a school had complied with constitutional requirements by providing a student "the opportunity to cross-examine his accusers as to the incidents and events in question." *Gorman v. University of Rhode Island*, 837 F.2d 7, 16 (1st Cir.1988). The *Gorman* court further observed that while there is no right to "unlimited" cross-examination, due process requires that some cross-examination to permit an accused to "elicit[] the truth about the facts and events in issue."

examination in school disciplinary proceedings, where a disciplinary proceeding depends on a choice between believing an accuser and an accused cross-examination is not only beneficial, but essential to due process. 2016 U.S. Dist. LEXIS 154179 at *10.  More recently, in *Doe v. University of Cincinnati*, this Court (Barrett, J.) found that the Due Process rights of a student was violated when the complainant was not present and, as a result, could not be questioned.  This Court noted that the witnesses did not have to be present, but "at the very least, [the student] should have had the opportunity to submit written cross-examination questions." 223 F. Supp. 3d 704 at *15.

      **c.**      **John's Doe's Due Process Rights To Cross-Examination Was Violated**

John Doe was never provided any opportunity to confront the three witnesses who supplied statements relied upon by the panel.[7] There is no doubt the panel relied on these statements and that John Doe's inability to cross-examine the persons who provided these statements had an impact on the hearing process. In this context, the chair of the Miami Hearing Panel made a stunning admission: she said that if there was no opportunity to cross-examine the witnesses who provided written statements, then the Hearing Panel would simply accept the statements as true.  She said:

> . . . when [Jane Roe] had three witness statements, it truly disadvantages everyone if you can't ask questions. *So if we can't ask questions, I have to take this as fact. That all is true.* (Emphasis supplied.)

This admission underscores precisely why cross-examination is necessary in this type of case.

---

[7] Hearsay evidence is generally admissible in informal administrative proceedings. *See Richardson v. Perales*, 402 U.S. 389, 407-08, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, while some hearsay evidence can be admissible at administrative hearings, it is improper for a hearing to rely on hearsay evidence and not provide any opportunity for an accused student to compel the attendance of the declarants so that, if desired, the veracity of the hearsay statements can be attacked.  *Cf. United States v. Inadi,* 475 U.S. 387, 398 (1986) (suggesting that a defendant is protected from prejudicial hearsay when the defense may subpoena an available declarant); *Ortiz v. Eichler*, 616 F.Supp. 1066, 1068 (D.Del.1985) (an administrative hearing could admit hearsay as long as the party could compel the attendance of the witnesses "because claimants would then have the power to compel confrontation with, and cross-examination of, hearsay declarants"); *Basco v. Machin*, 514 F.3d 1177, 1182-83 (11th Cir. 2008)(administrative decision relying solely on hearsay could violate due process guarantees when the plaintiffs could not subpoena the declarants).

The exclusion of John Doe's ability to cross-examine these witnesses is a clear due process violation As one court explained: the Constitution requires some opportunity for cross-examination in cases like this: "the opportunity to confront and cross-examine witnesses is essential when the information supplied by those witnesses is the reason for the" adverse actions. *Edgecomb v. Hous. Auth. of Vernon*, 824 F. Supp. 312, 315-16 (D. Conn.1993), *citing Goldberg, supra*, 397 U.S. at 269-70. *See also Gorman*, 837 F.2d at 16 (noting while there is no right to "unlimited" cross-examination, due process requires that some cross-examination is required to permit an accused to "elicit[] the truth about the facts and events in issue"). In terms of the *Mathews* factors:

- The Plaintiff's interest avoiding unfair or mistaken exclusion from the benefits of the educational system has been recognized as significant. This interest includes the loss of education, potential damage to the plaintiff's reputation, and potential interference with later opportunities for education and employment. *Goss*, 419 U.S. at 579; *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 247 (E.D.Pa. 2012).
- The risk of erroneous deprivation when no cross-examination is permitted is high. The purpose of cross-examination is to help find the truth.[8] In *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 251-252 (E.D.Pa. 2012), the court cited to both *Winnick* and *Flaim* to support the idea that cross-examination was only unnecessary where the relevant facts were undisputed. The court held that cross-examination was required in a case of student discipline where the facts were in dispute: "The purpose of cross-examination is to ensure that issues of credibility and truthfulness are made clear to the decision makers. Given the importance of credibility in this Hearing . . . the Court considers this an important safeguard." 884 F.Supp.2d at 251.

---

[8] *Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 923-24 (6th Cir.1988)("the value of cross-examination to the discovery of truth cannot be overemphasized." 842 F.2d at 924 *citing Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.")

12

- Miami's interest in not requiring some form of confrontation of an adverse witness is limited. The rules already contemplate that witnesses will appear before the Hearing Panel and that parties may confront those witnesses through indirect questions. At best, Miami may have an interest protecting an alleged victim from traumatic or intimidating questioning. However, as the *Brandeis* court recently observed, "While protection of victims of sexual assault from unnecessary harassment is a laudable goal, the elimination of such a basic protection for the rights of the accused [cross-examination] raises profound concerns." 2016 U.S. Dist. LEXIS 43499, at *101

### 3. John Doe's Right to Notice Was Violated.

Notice is one of the "essential requirements of due process." *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 546 (1985). In this case, John Doe was given improper notice of the nature of the allegations against him. The Miami hearing focused on the claim by Jane Roe alleged that she could not have consented to sexual activity because she was severely intoxicated. However, the issue of intoxication was never provided in the notice given to John Doe. The Notice of Violation provided to John Doe alleges that John Doe committed sexually assault by the use of force or threat of force:

> 2016, you allegedly penetrated her with your fingers and performed unwanted oral sex of her in an alleyway by Bishop Hall. You allegedly continued even when she showed resistance. Furthermore, [Jane Roe] reported that she had to use the restroom and, as she entered the restroom in Bishop Hall, you allegedly entered with her, holding her head down to perform oral sex on you.

This amounts to no notice at all, as it fails to provide him with notice of what he is alleged to have done wrong.

Limited notice describing that John Doe was merely alleged to have "committed sexual misconduct" was found by courts to be insufficient. In *Brandeis*, the court warned that a student should not be "expected to defend himself against [a] vague and open-ended charge." 177 F. Supp. 3d at 603. The court observed, "There is little practical difference between a school failing to inform

13

the accused of the charge against him or . . . having informed him of the formal charge, refusing to provide him with the specific factual conduct alleged to have given rise to the charge." *Id.* The *Notre Dame* court went further, noting that providing the student with access to the investigative report detailing alleged misconduct still does not constitute adequate notice. In *Doe v. Notre Dame*, *supra*, the court observed that a detailed report including witness statements does "not provide [the student] John with a statement of the particular conduct alleged to have been a violation of particular" policies. 2017 U.S. Dist. LEXIS 69645, at *29.

    **4.**    **Miami Is Not Entitled To Deference**

As noted, *supra*, the background of this controversy is the promulgation by OCR of the "Dear Colleague Letter" in 2011. The Dear Colleague Letter, although not regulations adopted according to notice-and-comment rulemaking procedures, spurred schools such as Miami to adopt investigatory and adjudicatory procedures and practices that unfairly disadvantage accused students. As a result, Miami is not entitled to the deference that would traditionally be accorded colleges and universities in disciplinary matters policies because the Miami policies tracked the policies urged by Dear Colleague Letter. As one federal appeals court judge recently observed, "These policies were developed by bureaucrats in the U.S. Department of Education and thrust upon educators with a transparent threat of withholding federal funding." *Plummer v. Univ. of Houston*, 5th Cir. No. 15-20350, 2017 U.S. App. LEXIS 11268, at *24 (June 23, 2017) (Jones, J., dissenting). A number of recent lawsuits challenging these procedures have survived preliminary motions as federal courts expressed concern about the failure of schools to comply with their own procedures. *See e.g, Brown Univ.,* 166 F. Supp. 3d at 181 (denying motion to dismiss breach of contract claim based on alleged "pressure [from OCR] on universities"); *Doe v. Amherst College*, D.Mass. Civil Action No. 15-30097-MGM, 2017 U.S. Dist. LEXIS 28327, at *41 (Feb. 28, 2017) (denying motion for judgment on pleadings for breach of contract for school policies enacted due to OCR pressure); *Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-

14

482, 2017 U.S. Dist. LEXIS 49887, at *29 (Mar. 31, 2017) (rejecting argument that Dear Colleague Letter required breach of college handbook); *Collick v. William Paterson Univ.*, D.N.J. No. 16-471 (KM) (JBC), 2016 U.S. Dist. LEXIS 160359, at *69-70 (Nov. 17, 2016)("the Complaint sufficiently alleges that Defendants did not adhere to [the school's] own rules, that the procedure they followed was unfair, and that the decision was not based on sufficient evidence"); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student); *Doe v. Lynn Univ., Inc.*, S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529, at *17 (Jan. 19, 2017) (plaintiff stated valid claims for of contract and breach of the implied covenant of good faith and fear dealing in connection with sexual assault investigation).

**D.      Irreparable Harm**

The Complaint and Affidavit of John Doe describes the irreparable harm John Doe will suffer if a TRO or preliminary injunction is not granted. Suspension from Miami or the imposition of other discipline would deny John Doe the benefits of education at his chosen school, would damage his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career. This has been found to constitute irreparable harm. *See Doe v. Univ. of Cincinnati,* 223 F. Supp. 3d 704 (rejecting argument by school that suspension is not irreparable and the effect of the suspension on Plaintiff's reputation is speculative); *Boman v. Bluestem Unified Sch. Dist. No. 205,* 2000 U.S. Dist. LEXIS 5389 (D. Kan. Jan. 28, 2000) (noting that suspension of student constitutes irreparable harm); . *Tully v. Orr*, 608 F. Supp. 1222 (E.D.N.Y. 1985) (an Air Force academy cadet who was expelled right before final exams and graduation suffered irreparable harm); *Bhandari v. Trustees of Columbia Univ. in N.Y.,* 2000 U.S. Dist. LEXIS 3720, at *15-16 (S.D.N.Y. 2000) (suspension or expulsion from an academic institution may constitute irreparable harm).

15

In addition, John Doe has established potential constitutional violations. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997).  Courts have similarly held that the denial of an injunction can "cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *McNeilly v. Land*, 684 F.3d 611, 620-21 (6th Cir. 2012)  ("Once a probability of success on the merits was shown, irreparable harm followed . . . ."); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."); *Campbell v. Miller*, 373 F.3d 834, 840 (7th Cir. 2004) (Williams, J., dissenting) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable harm is necessary").  Accordingly, the due process violations in this case are, alone, sufficient to establish irreparable harm.  *See Gordon v. Holder*, 826 F. Supp. 2d 279, 296 (D.D.C. 2011) (violation of plaintiff's procedural due process rights creates irreparable harm); *Goings v. Court Services and Offender Supervision Agency*, 786 F. Supp. 2d 48, 78-79 (D.D.C. 2011) (same).

**E.**     **Harm to Third Parties and Public Interest**

In constitutional cases, an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because "the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility for Reg. Transp.*, 698 F.3d 885, 896 (6th Cir. 2012).  In this case, an injunction will not cause any harm to third parties or Miami. Miami remains able to enforce its rules and regulations in a manner consistent with constitutional and statutory requirements.  Moreover, following a Summary Suspension Hearing, Miami determined that John Doe did not pose a direct threat to the student body and he was permitted to remain on campus during the disciplinary process.  Accordingly, in light of the fact that John Doe remained on campus

16

for months after the Incident without any adverse events or action by Miami, there is no suggestion that Miami should be concerned that John Doe poses a risk to other students on the campus.

Moreover, an injunction is also in the public interest. This Court acts to support a broad public interest in enforcing fundamental constitutional principles. On the other hand, the failure to grant an injunction would harm the public because it would permit Miami to violate the constitutional rights of all current and future students on an ongoing basis while this case is resolved, which necessarily would cause substantial, irreparable harm to those students. *See G&V Lounge, Inc. v. Mich. Liquor Control Common*, 23 F.3d 1071, 1079 (6th Cir. 1994) (noting "it is always in the public interest to prevent the violation of a party's constitutional rights"); *Doe v. Lee*, U.S.D.C., D. Conn. No. NO. 3:99CV314, 2001 U.S. Dist. LEXIS 7282 (May 18, 2001) ("there is a distinct public interest in having this Court discharge its duty to protect and enforce [constitutional] rights").

**F.     Nominal Bond Should Be Imposed**

Federal R. Civ. P. 65(C) provides that "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

Miami is an educational institution. Accordingly, because money is not an issue for the Defendants and the school is not likely to suffer any potential losses if an injunction is granted, this Court should set surety in the nominal amount of $1, the same amount set by this Court recently when granting an accused student a preliminary injunction in *Doe v. Cincinnati.* 223 F. Supp. 3d 704 ("The Court sets a bond in the nominal amount of $1."). *See also Ponce v. Socorro Indep. Sch. Dist.,* 432 F. Supp. 2d 682, 707 (W.D. Tex. 2006) (setting a nominal bond of one hundred dollars because the evidence indicates that Defendant will suffer little, if any, damage by the issuance of the preliminary injunction), *rev'd on other grounds* 508 F.3d 765 (5th Cir. 2007). Courts have declined to require plaintiffs to post a

17

bond in cases involving constitutional rights. S*ee Ogden v. Marendt*, 264 F. Supp. 2d 785, 795 (S.D. Ind. 2003); *Wickersham v. City of Columbia*, 371 F. Supp. 2d 1061 (W.D. Mo. 2005).

## CONCLUSION

Pursuant to Fed. R. Civil P. 65, this Court should, following a hearing, grant a Preliminary Injunction prohibiting Miami from imposing any disciplinary sanctions against John Doe.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL & MARTIN, LLC
4660 Duke Drive, Suite 1010
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com