IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN NOKES, | Case No. 1:17-cv-00482-MRB |
| Plaintiff, | Judge Barrett |
| v. | REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION |
| MIAMI UNIVERSITY, ET AL. | |
| Defendants | |

Pursuant to Federal R. Civil Rule 65, Plaintiff John Nokes respectfully submits this Reply to Defendants Response In Opposition to Plaintiff's Motion for a Preliminary Injunction.

## ARGUMENT

### A.  Note On The Facts

Defendants spill a significant amount of digital 'ink' focusing on the underlying "guilt" or "responsibility" of John Nokes. Def. Memo. at 1-3. This discussion does not assist the Court in a resolution of this matter. The Plaintiff has not asked the Court to determine the facts of what happened between John Nokes and Jane Roe.[1] Nor has the Plaintiff asked this Court to "second guess" a school hearing panel. The court in the *Brown University* case, when confronted by a similar argument by a school, explained:

> It is not the Court's role to . . . decide whether the Court would have, in the panel's position, found John [Doe] responsible for sexual misconduct; to evaluate whether the Court would have made the same judgment calls on evidence and other issues as [the school] did; or to determine whether the procedure John [Doe] received was optimal. This Court is not a super-appeals court for sexual misconduct cases, nor is it an advisor to [the school] on how it should handle these messy and unfortunate situations.

---

[1] John Nokes, of course, denies any misconduct.

1

*Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016)(finding in favor of accused student). Rather, like the plaintiff in the *Brown University* case, John Nokes has asked this Court to determine whether the discipline imposed by Defendants was carried out in line with the obligations of the school.[2]

**B.      Defendants Limited View Of The Due Process Rights Of Students**

Defendants assert an extremely limited and aggressive view of the due process rights of students. In the view of Defendants, a student's due process rights are limited to notice and an opportunity to be heard; Defendants denigrate other due process protections, such as confrontation, as needless components of criminal trials *See e.g.* Def. Memo. at 8 *citing inter alia Doe v. Cummins*, 662 F.App'x 437 (6th Cir. 2016). But there is no reason for this Court to consider comparisons – pro or con – to criminal law. The Sixth Circuit has referred to claims by schools like Miami that "disciplinary hearings against students and faculty are not criminal trials, and therefore need not take on many of those formalities," as "generalized, though unhelpful observation[s]." *Flaim v. Med. College of Ohio*, 418 F.3d 629, 635 (6th Cir.2005).

**C.      Likelihood Of Success**

**1.      Notice**

Defendants acknowledges that Plaintiff had the right to be informed in writing of the specific violation in which the student was allegedly involved. The *Brandeis* and *Notre Dame* courts, cited in Plaintiff's Memorandum, both warn against vague and non-specific charges that merely recount the school code section. *Brandeis*, 177 F. Supp. 3d at 603; *Notre Dame*, 2017 U.S. Dist. LEXIS 69645, at *29. When he met with Defendant Curme on April 6, 2017, Nokes was told merely, "there is an

---

[2] *Cf. Zinermon v. Burch,* 494 U.S. 113, 126 n. 11 (1990) ("a deprivation of procedural due process is actionable . . . without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards"); *Carey v. Piphus*, 435 U.S. 247, 262,(1978) (those deprived of due process "might well recover damages for mental and emotional distress caused by the denial of procedural due process" separate from underlying deprivation).

2

allegation that's been made that there was non-consensual sexual activity between you and another Miami student that occurred on Thursday, November 17th . . . you'll be able to review the details of that [later]." April 6, 2017 Tr. at 6. Defendants cite Vaughn Affidavit, Ex. A, for the claim that John Nokes was provided Notice. Included in Exhibit A is a Notification sent to John Nokes On April 13, 2017. Yet this merely provides notice of a general violation:

> The Office of Ethics and Student Conflict Resolution will be conducting a disciplinary hearing to consider an alleged violation of the Code of Student Conduct, **Section(s) 103A (Sexual Assault) - 2 Counts.** You are named in this matter as the accused. A hearing to

(Vaughn Aff. Ex. A at 2 (PageID#532).)

Nokes, to the extent he was told anything, was told that he was accused on engaging in sexual activity by force or threat of force. The evidence submitted by Defendants actually supports the finding that John Nokes was provided notice of one type of violation, but then 'prosecuted' for a completely different violation. On April 5, 2017, Nokes was provided with notice suggesting that he engaged in sexual activity even though the alleged victim "showed resistance" and that he held "her head down." Vaughn Aff. Ex. A. at 14 (PageID#544).) The Defendants' acknowledge that the focus of the hearing was not on the issue of force, but, instead, on whether that the complainant was too intoxicated to consent to sexual activity. *See* Def. Memo at 9-10 (claiming Nokes was "on notice that her intoxication . . . and therefore her potential inability to consent, was at issue."). Yet, nothing in the April 5, 2017 Notice provided to John Doe suggested that the complainant was unable to consent to sexual activity because she was intoxicated.

Defendants first suggest that Nokes was provided with adequate notice because he was given a copy of the complainant's statement. Def. Memo. at 9. (Vaughn Aff. Ex. A at 16-17 (PageID#546-47).) But, in this statement, the complainant only vaguely suggests that she was "under the influence"

3

or "drunk;" instead she describes a violent sexual assault by force.[3] Notably, she does not suggest that she was "severely intoxicated," the standard under the Miami Sexual misconduct Policy. (*See* Complaint Ex. A (Page ID#40) ("A person cannot legally give consent. . . . when: The person is severely intoxicated . . .").)

Defendants reliance on the "hearing packet" does not address the problem. *See* Def. Memo. at 10. True, the hearing packet does contain a *second* statement from the alleged victim, along with her three witnesses. These statements tell a very different story. In these statements the complainant minimizes the alleged use of force ("I felt pressure on the back of my head") and focuses, instead, on the issue of intoxication. (Vaughn Aff. Ex. A at 70 (PageID#600).) Defendants are, thus, correct in observing that by the time of hearing, Nokes was "aware" that intoxication was an issue (even though the term "severely intoxicated" still was never used.) Def. Memo. at 10-11. But "awareness" is not "adequate notice."[4] The "new" story in the hearing packet failed to provide "adequate notice" for two reasons: (1) the new theory of intoxication was provided to Nokes only one week before the hearing, which was not sufficient time to prepare a defense; and (2) John Nokes received "notice" of this new theory of intoxication only *after* he had been required to submit a statement, other witness statements, and evidence of his own for inclusion in the hearing packet in response to the initial

---

[3] The statement contains alleged comments by John Nokes that the complainant was drunk; however the complainant herself does not explicitly make this claim. Thus, this statement does not provide notice that intoxication was the primary issue in the matter; nor does it come close to the "severely intoxicated" standard of the Miami Sexual Misconduct Policy.

[4] *Cf. Rankin v. Spirit Found., Inc.,* W.D.Mo. Case No. 89-5049-CV-SW-1, 1989 U.S. Dist. LEXIS 13683, at *13 (Nov. 13, 1989) ("awareness" by creditor of a bankruptcy did "not constitute timely, complete and, therefore, adequate, notice"); *Doody v. Town of N. Branford*, 972 F.Supp.2d 281, 289 (D.Conn.2013) ("general awareness . . . is no substitute for adequate notice").

version of events. *Compare Notre Dame*, 2017 U.S. Dist. LEXIS 69645, at *29 (observing that providing a student with access to the investigative report may not constitute adequate notice).

### 2. Cross-Examination

This Court has previously considered almost the precise arguments of the parties in *Doe v. Univ. of Cincinnati*, 223 F. Supp. 3d 704 (S.D.Ohio 2016). In that case, the Court found that while the Due Process Clause generally does not guarantee the right to cross-examination in school disciplinary proceedings, in college and university disciplinary hearings, the Due Process guarantees of the Constitution includes a right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse actions and there is a question of credibility to be resolved by the finder of facts. *Id.* at 709-12, *citing Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645 (S.D. Ohio 2016). In doing so, this Court explicitly and implicitly adopted the approach of the Second Circuit in *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972), and the Sixth Circuit in *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005), and *Doe v. Cummins*, 6th Cir. No. 16-3334, 2016 U.S. App. LEXIS 21790 (Dec. 6, 2016).

This Court, in *Doe v. University of Cincinnati*, also explicitly rejected the application of the cases relied upon by Defendants that concern high school disciplinary hearings. Def. Memo. at 13-14, *citing Newsome v. Batavia Local School Dist.,* 842 F.2d 920, 923-24 (6th Cir.1988); *C.Y. v. Lakeview Pub. Schs*, 557 Fed. Appx. 426 (6th Cir. 2014). This Court observed, "there was a distinction to be made between secondary school disciplinary cases, such as Newsome, and disciplinary cases arising out of a university setting." 223 F. Supp. 3d at 710.[5]

---

[5] Oral argument in the appeal of this Court's Order granting a preliminary injunction in *Doe v. Cincinnati* was heard on August 2, 2017. With the caveat that oral argument is not binding (and sometimes misleading), it appeared from argument that the Sixth Circuit was highly skeptical of the argument that the *Newsome* analysis would be applicable in the college or university setting. Available at: http://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=recent/08-01-2017%20-

Miami further suggests that UC further suggests that "Noke's real gripe is that the University did not force Ms. Roe's witnesses to appear for the disciplinary hearing."[6] Def. Memo. at 15. This is not accurate; John Nokes' "gripe" is that the school relied on hearsay without providing him an opportunity to confront available declarants. The chair of the hearing panel even acknowledged that in the absence of cross-examination, Accepting Defendants' characterization of Plaintiff's claims suggest that Defendant may avoid the obligation to permit cross-examination by relying solely on hearsay statements from witnesses as evidence of misconduct. Allowing Miami to impose discipline based on hearsay statements, without providing any opportunity for a student to cross-examine the person who provides the adverse information, would allow Miami to eviscerate the holding of *Goldberg* that when important governmental decisions are based on determinations of fact, due process usually requires an opportunity to confront and cross-examine adverse witnesses. 397 U.S. 254 at 269.[7]

---

%20Tuesday/16-4693%20John%20Doe%20v%20UC.mp3&name=16-4693%20John%20Doe%20v%20UC

[6] Defendants rely upon *Jaksa v. Regents of University of Michigan*, 597 F. Supp. 1245 (E.D. Mich. 1984), and *Osei v. Univ. of Md. Univ. Coll.*, D.Md. Civil Action No. DKC 15-2502, 2016 U.S. Dist. LEXIS 107376 (Aug. 15, 2016, for the suggestion that the ability to compel the attendance of witnesses is not required. This reliance is misplaced. *Jaksa* involved an issue of academic misconduct, which requires an entirely different form of analysis. *See Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, (1978) ("far less stringent procedural requirements [are necessary] in the case of an academic dismissal"). *Osei* similarly did not involve an issue of credibility requiring cross-examination, as the case involved a student disciplined for submitting false information to the financial aid office. Moreover, the court noted that the student did not attend the hearing, so he did not actually "know whether he would have been given an opportunity to confront his accusers at the hearing." 2016 U.S. Dist. LEXIS 107376, at *22.

[7] In other words, a natural implication of the *Winnick-Flaim* rule is that the Due Process guarantees of the Constitution prohibit the imposition of discipline based on hearsay when there is an issue of credibility and the information supplied by the declarant is the reason for the adverse action. A holding otherwise would allowing school administrators the unlimited discretion to determine in which cases witnesses may be questioned by an accused student. This is certainly inconsistent with fundamental due process guarantees, for it would vest school administration with the final determination of whether or not the sources of information against the accused student might be favorable to the student if they testified. A school could protect from scrutiny witnesses whose memories may be faulty, or, worse, who in fact may be perjurers or persons with improper motives.

Defendants correctly suggest that Plaintiff will attempt to "convince this Court that this case is the same as *Doe v. Univ. of Cincinnati.*" Def. Memo at 16. It is, for the most part. As noted *supra*, in *Doe v. Univ. of Cincinnati* this Court rejected the precise arguments set forth by Defendants recognized an important legal principle: the Due Process guarantees of the Constitution includes a right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse actions and there is a question of credibility to be resolved by the finder of facts. Application of this legal principle to this case should lead to the same result. Defendants, correctly, observe that in this case, unlike in *Doe v. Univ. of Cincinnati*, the complainant testified and was available for cross examination. Def. Memo. at 16. But this does not change the underlying fact that the Miami Hearing Panel also accepted and relied upon statements from other witnesses who were not made available for questioning. *Goldberg*, *Winnick*, and *Flaim* do not draw a distinction between situations where *some* adverse witnesses may be confronted and *all* adverse witnesses may be confronted; they all speak of the right to confront those who provide "adverse" evidence.

**D.      Irreparable Harm**

Defendants do not contest that suspension from Miami or the imposition of other discipline would deny Plaintiff the benefits of education at his chosen school, would damage his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career. Plaintiff has provided the Court with citations to five recent decisions where a federal court granted a preliminary injunction to a students in cases involving allegations of sexual misconduct; these cases all found the possibility of irreparable harm to students from disciplinary actions. Pl. Memo. at 7 (collecting cases). Defendants also make no effort to distinguish the other cases cited by Plaintiff that this has been found to constitute irreparable harm. *See* Pl. Memo. at 15 (collecting cases).

7

This Court found irreparable harm in similar circumstances in *Doe v. Univ. of Cincinnati*. 223 F. Supp. 3d at 712. That decision was consistent with another, prior, decision of this Court from Judge Black finding that "suspension from school can cause irreparable harm" *Doe v. Univ. of Cincinnati*, S.D.Ohio No. 1:15-cv-600, 2015 U.S. Dist. LEXIS 132864, at *7 (Sep. 30, 2015). Shortly after the decision, the Sixth Circuit in *Cummins* observed that a finding of responsibility and a suspension would "have a substantial lasting impact on [students] personal lives, educational and employment opportunities, and reputations in the community." 662 F.App'x at 446. The Sixth Circuit described these interests as "compelling." *Id.*

Defendants argument against irreparable harm relies on cases which essentially hold that embarrassment, humiliation, and damages to Plaintiff's reputation are not irreparable because of the availability of compensatory damages. Def. Memo. at 18 (citations omitted). For example, Defendants' rely on Caiola v. Saddlemire, D.Conn. No. 3:12-CV-00624 (VLB), 2013 U.S. Dist. LEXIS 43208, (Mar. 27, 2013). In that case, the court found no irreparable harm because the plaintiff could not demonstrate that a monetary award would not adequately compensate him for his injuries. Id. at *4. The fatal flaw in this argument is that Defendants are likely to assert a claim of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 4 (2013) (internal quotation marks omitted). The claim of qualified immunity, thus, if successful, would preclude any ability of the Plaintiff to obtain compensatory damages.

**E.      Hardship On Others And Public Interest**

Defendants do not suggest much, if any, harm to this parties will occur in the court issues a preliminary injunction. Instead, Defendants appear to focus on the "public interest" question. In this respect, Defendants correctly observe that colleges and universities "are afforded great latitude in

8

administering their rules and regulations." Def. Memo. at 19. However, Defendants do not dispute the cases cited by Plaintiff holding that the public interest is served by assuring that students are treated fairly and in accordance with the Constitution's requirements.[8] Pl. Memo. at 16-17. Nor do Defendants dispute the observation by Plaintiff that the deference that would traditionally be accorded colleges and universities in disciplinary matters is inapplicable because the Miami policies tracked the policies urged by OCR. Pl. Memo. at 14-15. Plaintiff has provided the Court with citations to five recent decisions where a federal court granted a preliminary injunction to a students in cases involving allegations of sexual misconduct; these cases all found that the public interest was served by prohibiting the imposition of discipline on students. Pl. Memo. at 7 (collecting cases).

The relief sought by Plaintiff would not prohibit Miami from continuing to operate its disciplinary system; this case is not a facial attack on the entire disciplinary system. At most, Defendants would be prohibited from imposing discipline on students based on hearsay in those narrow circumstances where the student could not confront those witnesses. Any suggestion otherwise is speculative, as Defendants have not provided any testimony or evidence suggesting that this would be a significant number of cases or would otherwise disrupt the disciplinary system.

---

[8] Defendants make a strange argument, suggesting that there is no harm because Miami "permits both parties to offer written statements. . ." Def. Memo. at 19 (emphasis in original). This argument is "strange" because Defendants never explain how a policy that is unfair equally to all persons is in the public interest; the opposite would appear to be true.

9

## CONCLUSION

This Court should grant the Motion for a Preliminary Injunction.

                                        Respectfully submitted,

                                        _____/s/ Joshua Adam Engel_____
                                        Joshua Adam Engel (0075769)
                                        Anne Tamashasky (0064393)
                                        ENGEL & MARTIN, LLC
                                        4660 Duke Drive, Suite 1010
                                        Mason, OH 45040
                                        (513) 445-9600
                                        (513) 492-8989 (Fax)
                                        engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system this August 9, 2017 upon all counsel of record.

    Rosemary Doreen Canton    Canton@taftlaw.com

    Evan T Priestle    epriestle@taftlaw.com

                                        _____/s/ Joshua Adam Engel_____
                                        Joshua Adam Engel (0075769)