IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN NOKES, | Case No. 1:17-cv-00482-MRB |
| Plaintiff, | Judge Barrett |
| v. | REPLY TO DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |
| MIAMI UNIVERSITY, ET AL. | |
| Defendants | |

Plaintiff John Nokes respectfully submits this Reply to Defendants Supplemental Response In Opposition to Plaintiff's Motion for a Preliminary Injunction.

A.  **Prejudice Is Not Required**

Defendants suggest that Plaintiff is required to show "prejudice." Def. Supp. Memo. at 1. Defendants rely upon *Jahn v. Farnsworth*, 33 F. Supp. 3d 866, 873 (E.D. Mich. 2014), *aff'd*, 617 F. App'x 453 (6th Cir. 2015). In making this argument, Defendants appear to misunderstand the nature of the procedural due process claim in 42 U.S.C. §1983.[1] Under §1983, a constitutional violation is not complete unless and until the government fails to provide due process; a showing of "prejudice" means only that a plaintiff also must prove he/she in fact has been deprived of a constitutionally protected interest.[2]

---

[1] "[T]he basic purpose of §1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). Preliminary injunctive relief is available to prevent irreparable harm from a continuing or anticipated violation.

[2] Confusion may exist in the caselaw because some courts seem to refer to 'prejudice' in a manner that is not sufficiently distinct from 'damages.' Any 'prejudice' requirement is best understood as akin to standing; a plaintiff claiming a procedural due process violation need only show that he/she was

1

As a matter of law, Defendants' argument has been expressly and repeatedly rejected by the Supreme Court. In the seminal case of *Goldberg v. Kelly*, the Court noted that welfare recipients were entitled to a hearing prior to termination of benefits, notwithstanding that the particular plaintiffs would still be denied benefits if the hearing were granted. 397 U.S. 254, 256 n.2 (1970). In *Carey v. Piphus*, 435 U.S. 247 (1978), the Court considered a suspension of students without due process; no finding was made as to whether the students would have been suspended if they had received adequate procedural due process. The Court rejected the argument put forth by the Defendants that the court should consider whether the suspensions would ultimately have been imposed:

> Even if [the students'] suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. . . . . the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . because of the importance to organized society that procedural due process be observed.

---

deprived of a right or interest protected by the Fourteenth Amendment. *See Sorich v. Terry*, D.Neb. CV No. 86-L-722, 1989 U.S. Dist. LEXIS 9115, at *37-38 (June 29, 1989) (the word 'prejudice' in the [due process] context "means some degree of harm or adversity unique to the plaintiff resulting from the constitutional violation which is clearly distinct from that suffered by the rest of the population, even though it may be slight in nature"). In other words, there is no denial of procedural due process without a constitutionally cognizable deprivation (such as suspension from school).

The "prejudice" inquiry, to the extent it exists as described by Defendants, would apply to damages and not a claim for injunctive relief. In fact, if this Court issues the Preliminary Injunction, then Plaintiff will have suffered little or no actual damage or harm resulting from the insufficient process. *See De Abadia-Peixoto v. United States Dept. of Homeland Sec.*, 277 F.R.D. 572, 575 (N.D.Cal.2011)("The premise that a due process violation is not grounds for *reversal* absent a showing of that degree of prejudice, has no bearing on a plaintiff's right to seek to enjoin due process violations from occurring in the first instance." (Emphasis in priginal)).

2

435 U.S. at 265-66. The Supreme Court later, in *Zinermon v. Burch,* 494 U.S. 113 (1990), removed any doubt the *Carey* decision meant that a reviewing court is *not* to examine the merits of the underlying claim in order to find a due process violation: "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." 494 U.S. at 126. In doing so, The *Zinermon* Court explained that *Carey* explicitly rejected the Defendant's argument that the Plaintiffs must show prejudice in order to establish a procedural due process violation. The Court said:

> The Court in *Carey* explained that a deprivation of procedural due process is actionable *. . . without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards.*

494 U.S. at 126 n. 11 (emphasis supplied). *See also Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991) (stating that, "[c]onceptually, in the case of a procedural due process claim, 'the allegedly infirm process is an injury in itself'"), *quoting Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989); *Caine v. Hardy,* 943 F.2d 1406, 1411 (5th Cir. 1991)("Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected.").[3]

Defendants' reliance on *Jahn v. Farnsworth*, for the contrary position is misplaced.[4] The *Jahn* court appears to have incorrectly extended a line of cases dealing with the due process rights on

---

[3] The demise of any 'prejudice' rule after *Zinermon* is illustrated by the Fifth Circuit's decision in *Keough v. Tate County Bd. of Ed.*, 748 F.2d 1077 (5th Cir. 1984). In that case, the Fifth Circuit had found that a plaintiff must demonstrate "substantial prejudice" in order to mount a successful procedural due process claim. Courts within the Fifth Circuit have recognized the *Carey* and *Zinermon* abrogate this holding. *See Judeh v. La. State Univ. Sys.*, No: 12-1758, 2013 U.S. Dist. LEXIS 146842 (E.D. La. Oct. 10, 2013) ("The Court does not decide this case on the basis of *Keough* and its progeny, because there is an inherent tension between that line of cases and the Supreme Court's holding in *Carey*.").

[4] In *Jahn* the student admitted that he committed a theft of a laptop, subjecting him to suspension or expulsion. 33 F. Supp. 3d at 874. The 'prejudice' observation in that case can, thus, be understood as an acknowledgement that once a student has admitted his guilt, the need for a hearing is substantially lessened. Other courts have recognized that a due process violation is not cognizable where a student had admitted to the misconduct. *See Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608 (5th Cir. 2004) (observing that whether a student admitted the charges leveled against him is relevant); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001) (considering whether a student admitted to

immigrants who entered the United States illegally. 33 F. Supp. 3d at 873, *citing Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008). In *Graham* the court observed that prejudice was necessary in due process hearings because of the special nature of immigration hearings. *Graham* relied on an earlier Sixth Circuit decision dealing with immigration law. *Warner v. Ashcroft,* 381 F.3d 534 (6th Cir.2004) In *Warner,* the Sixth Circuit observed, "proof of prejudice is necessary to establish a due process violation *in an immigration hearing.*" *Warner v. Ashcroft,* 381 F.3d at 539 (emphasis supplied). As a result, this line of cases is inapposite. *See Garner Properties & Mgt. v. Charter Twp. of Redford,* E.D.Mich. No. 15-14100, 2017 U.S. Dist. LEXIS 125403, at *23 (Aug. 8, 2017) (discussing possibility that "*Graham*, as well as the cases on which it relied, relate to determinations regarding deportation of illegal aliens").

**B.     This Court Should Not Accept Defendants' Invitation To Speculate On The Likely Outcome Of a Hearing Without Due Process Violations**

Defendants invite this Court to speculate that, despite the due process violations noted by Plaintiff, he would have lost anyway. This is improper. *See supra.* But, even assuming that this Court should speculate as to outcome if Plaintiff had not provided with sufficient notice or been given the opportunity to confront witnesses who provided adverse information, Defendants have failed to provide a non-speculative reason to doubt the reliability of the outcome.

**1.     Notice**

Defendants acknowledge that Miami's "initial notice discussed force and that Jane Roe's first and second statements also referenced force." Def. Supp. Memo at 3 n. 3. Significantly, Defendants cannot point to anything in the record which suggests that that Plaintiff had *any* notice that the allegations against him were based on the "severely intoxicated" standard contained in the Sexual Misconduct Policy. (*See* Sexual Misconduct Policy (PageID#40.) Instead, Defendants ask this Court

---

misconduct); *Beauchene v. Miss. College*, 986 F. Supp. 2d 755, 773 (S.D. Miss. 2013) (student who had admitted misconduct "may have forfeited his right to due process").

4

to infer that Plaintiff had sufficient notice because he mentioned alcohol use and consumption during his opening statement at the hearing. This argument fails for two reasons.

First, the hearing officer actually referred to the April 5, 2017 Notice (Page ID#544) immediately before Plaintiff provided his opening statement. During the hearing, Defendant Vaughn, acting as the Chair of the Hearing Panel, specifically relied upon the April 5, 2017 Notice and requested Plaintiff to respond to the allegations contained in that Notice:

> MS. VAUGHN: So, [John Nokes], do you understand what the allegations are at this point per all of the explanation that I have just given?
> [JOHN NOKES]: Yes.
> MS. VAUGHN: Okay. So I'm going to ask you to respond to each of the two charges. And the two charges listed again are noted again from the Notice of Complaint that went to you back earlier in April. . . .

(April 28, 2017 Hrg. at 15-16.) As noted numerous times, the April 5, 2017 Notice does not mention intoxication.

Second, the content of the opening statement actually hardly supports the claim that Plaintiff was expecting a hearing focused on intoxication. In granting the Motion for a Temporary Restraining Order, this Court observed:

> While it is true that Plaintiff discusses alcohol consumption, it is not clear whether he does so to defend against the university's consent theory, to provide a sequential account of the night, to enlighten the panel on the ability of eye witnesses' to recount the events of the night, or for some other reason. Regardless, the Court is not willing to accept Defendants' characterization that alcohol consumption was the "focus" of the opening statement, especially when Plaintiff also extensively discussed matters that can only relate to his alleged use of force . . .

Aug. 9, 2017 Entry at 12. Nothing submitted by Defendants or in Plaintiff's testimony should change this initial conclusion. As the Court observed, Plaintiff mentions alcohol use in the context of describing the evening and describes the complainant in a conclusory manner, but generally focuses on the statements and actions of the complainant which would indicated consent. (*See* April 28, 2017 Hrg. at 20-26.) What is perhaps more important is what the Plaintiff does not say. The opening

5

statement does not contain the types of observations that a person focused on intoxication would mention, specifically whether she: was walking straight; slurring her words; had glassy eyes, etc. . . .

Finally, Defendants argue that Plaintiff "has not identified any action he would have taken which would have led to a substantially different outcome had he received sufficient notice." Def. Supp. Memo. at 3. This, as noted *supra*, is not the correct legal standard. Moreover, Defendants acknowledge that Plaintiff had, in fact, identified in his internal appeal additional evidence and testimony he might have submitted. *Id.* The fact that a University official did not accept this evidence on appeal should hardly be conclusive of the issue.

### 2. Cross-Examination

Defendants argue that Plaintiff was able to raise issues and concerns about the hearsay statements at the hearing, so cross-examination was not necessary. Def. Supp. Memo. at 4-5. This argument inappropriately minimizes the role of cross-examination in the truth finding process. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."). To deny the value of cross-examination is to deny hundreds of years of tradition recognizing the fundamental role of cross-examination in the truth finding process. The Sixth Circuit has long observed that "cross-examination is 'the great and permanent contribution of the Anglo-American system of law . . .'" *Brown v. United States*, 234 F.2d 140, 144 (6th Cir. 1956), *quoting Wigmore on Evidence*, Vol. 5, 3rd Ed., §1367. It is only by subjecting the adverse witnesses to cross-examination that an accused student, and eventually the hearing panel or factfinder, "can assess the credibility of those who disclaim any improper motivations." *Hart v. Lew*, 973 F.Supp.2d 561, 574 (D.Md. 2013) (referring to cross-examination as the "greatest legal engine ever invented for the discovery of truth.").

The above-cited cases do not contain ay suggestion that being able to point out deficiencies in adverse information "though [a] statement to the Hearing Panel" is the equivalent of cross-

examination. *See* Def. Supp. Memo. at 4. Indeed, presumably the plaintiffs in every cases cited by Plaintiff in previous memoranda had that opportunity. Defendants do not refer the Court to any contrary authority. In fact, courts in the school disciplinary context have suggested the opposite: that truth is served by allowing actual cross-examination. *See e.g. Gorman v. University of Rhode Island*, 837 F.2d 7, 16 (1st Cir.1988) (cross-examination would permit an accused to "elicit[] the truth about the facts and events in issue"); *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 251-252 (E.D.Pa. 2012) ("The purpose of cross-examination is to ensure that issues of credibility and truthfulness are made clear to the decision makers.").

Finally, as with the notice issue, the fact that a University official did not accept this evidence should hardly be conclusive of the issue. And, perhaps more importantly, this argument is severely undercut by the statement of the Chair of the Hearing Panel: "So if we can't ask questions, I have to take this as fact. That all is true." (April 28, 2017 Hrg. at 97.)

### 3. The Text Messages

Defendants argue that Plaintiff's text messages constitute an admission of responsibility. Def. Supp. Memo. at 5-6. The text messages may have been relevant to the hearing, but they hardly constitute an admission of a violation of the Miami Policy. The so-called admissions contained in the text messages are, at best, factual claims subject to the explanation offered by Plaintiff and context from other witnesses. But, significantly, they do not constitute admissions that any Miami policy was violated. More importantly, they certainly do not constitute an admission that Plaintiff engaged in the conduct described in the April 5, 2017 Notice. This should be easy to see: the simple fact that Plaintiff never admitted that his conduct constituted a violation of the sexual misconduct policy is shown by the contested nature of the hearing.

## CONCLUSION

Pursuant to Fed. R. Civil P. 65, this Court should grant the Motion for a Preliminary Injunction.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL & MARTIN, LLC
4660 Duke Drive, Suite 1010
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system this August 13, 2017 upon all counsel of record.

Rosemary Doreen Canton    Canton@taftlaw.com
Evan T Priestle    epriestle@taftlaw.com

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)